## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:

      FEDERAL MOGUL ET AL.,


            Debtors.

---

COOPER INDUSTRIES,

          Appellant,

v.

FEDERAL MOGUL GLOBAL ET AL.,

          Appellees.

CIVIL ACTION NO. 05-41 JHR

Bankruptcy Case 01-10578

---

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
HONORABLE RAYMOND T. LYONS

---

### REPLY BRIEF OF APPELLANT COOPER INDUSTRIES, LLC

---

Stephen M. Miller (DE Bar No. 2610)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue
Wilmington, DE 19801
Telephone: (302) 888-6853
Telecopy: (302) 571-1750

Michael A. Rosenthal
Aaron G. York
GIBSON DUNN & CRUTCHER LLP
2100 McKinney Ave., Suite 1100
Dallas, TX 75201
Telephone: (214) 698-3100
Telecopy: (214) 698-3400

ATTORNEYS FOR APPELLANT
COOPER INDUSTRIES, LLC

DATED: March 7, 2005

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................1

ARGUMENT ..................................................................................................2

    A.  This Court Will Review The Issues *De Novo* ...............................2

    B.  Cooper Was Entitled To Subrogate Itself To
        The Asbestos Claimants' Votes .....................................................3

            1.  Allowing Cooper To Subrogate Itself To the Asbestos
               Claimants' Vote Will Not Result in Cooper Having
               Duplicative Claims...........................................................3

            2.  Cooper's Subrogation Election Is Consistent With
               Cooper's Conduct ...........................................................5

            3.  Pneumo's Proof of Claim Asserts Entirely Different Claims
               And is Irrelevant to Cooper's Voting Rights ...................7

    C.  Cooper Complied With All Requirements In Filing Its Claims and,
        Further, Should Not Be Denied Its Voting Rights on the Basis of
        Technicalities ...........................................................................10

            1.  Cooper Complied With Federal Rule of Bankruptcy
               Procedure 3005 .............................................................11

            2.  Cooper's Proof of Claim Complied With the Bar Date Order........14

            3.  Cooper Should Not Be Denied Its Vote Due To A
               Technicality...................................................................16

    D.  Equity Dictates that Cooper Must Be Allowed To Vote On Behalf
        Of The 47,774 Claimants It Has Paid On Behalf of FM Products ...........17

# TABLE AUTHORITIES

## *Cases*

*Adair v. Bartholow (In re Great Western Cities, Inc. of N.M.),*
107 B.R. 116 (N.D. Tex. 1989)..................................................................14

*American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines),*
152 B.R. 420 (D. Del. 1993) ..................................................................... 2

*Fisher v. Outlet Co. (In re Denby Stores, Inc.),* 86 B.R. 768
(Bankr. S.D.N.Y. 1988)................................................................ 7, 8, 10, 16

*Gaudio v. Stamford Color Photo, Inc. (In re Stamford Color Photo, Inc.),*
105 B.R. 204 (Bankr. D. Conn. 1989) .........................................................17

*In re Brandt,* 1989 WL 109696 (Bankr. D. Minn. Sept. 22, 1989) .....................13

*In re Dow Corning Corp.,* 244 B.R. 705 (Bankr. E.D. Mich. 1999) .........................14

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.,*
314 B.R. 354 (S.D. Tex. 2004) ..................................................................18

*In re Medicine Shoppe,* 210 B.R. 310 (Bankr. N.D. Ill. 1997)......................17, 19

*In re Richardson,* 193 B.R. 378 (D.D.C. 1995)) & p. 35 ...................................... 4

*In re WPRV-TV, Inc.,* 102 B.R. 234 (Bankr. E.D. Okla. 1989)..........................13

*Int'l Union v. Mack Trucks, Inc.,* 820 F.2d 91, 95 (3d Cir. 1987) ......................... 2

*Lazar v. Sullivan (In re Sullivan),* 36 B.R. 771 (Bankr. E.D.N.Y. 1984) .................17

*Pandora Indus. v. Paramount Communications, Inc.*
*(In re Wingspread Corp.),* 145 B.R. 784 (S.D.N.Y. 1992).........................................19

*Pepper v. Litton,* 308 U.S. 295 (1939) .................................................... 16

*Zolfo, Cooper & Co. v. Sunbeam-Oster Co.,* 50 F.3d 253 (3d Cir. 1995)............. 2

## *Statutes*

11 U.S.C. § 502(d)............................................................................. 7, 15

11 U.S.C. § 507(d)................................................................................ 19

11 U.S.C. § 509(a)............................................................................. 4, 17

Fed. R. Bankr. P. 3005 ....................................................................... passim

### Other Authorities

4 *Collier on Bankruptcy* ¶ 509.07[1], at 509-12
(Lawrence P. King ed., 15th ed. 2004)................................................................. 18

9 *Collier on Bankruptcy* ¶ 3005.01, at 3005-2
(Lawrence P. King ed., 15th ed. 2003)................................................................. 17

9 *Collier on Bankruptcy* ¶ 3005.02
(Lawrence P. King ed., 15th ed. 2000)................................................................. 12

## INTRODUCTION

The Bankruptcy Court misapplied the law to the facts presented to it below by Appellant Cooper Industries, LLC (successor by merger to Cooper Industries, Inc.) ("Cooper"). So this Court will review the Bankruptcy Court's legal conclusions *de novo*. And as demonstrated in the Opening Brief of Appellant Cooper Industries, LLC (the "Opening Brief") (D.I. No. 7) , the Bankruptcy Court erred in determining that Cooper could not subrogate itself to the rights of Pneumo Abex Corporation ("Pneumo"), including Pneumo's own subrogation rights against debtor Federal-Mogul Products, Inc. ("FM Products"). Even so, the Appellees do not address the issues actually presented to or addressed by the Bankruptcy Court below, and instead offer entirely new arguments concerning Cooper's subrogation rights. Such new arguments are impermissible, and without merit in any event. There is no possibility that Cooper will end up with duplicative allowed claims if it is allowed to exercise its subrogation rights. Further, Cooper has consistently advised the Appellees, and the Bankruptcy Court, of its ability to exercise subrogation rights, so that election is perfectly consistent with Cooper's conduct. Finally, the newly-offered Pneumo proof of claim is irrelevant because it does not assert the same claims that form the basis of Cooper's voting rights.

In addition, Cooper complied with all of the "technical" requirements for filing its claims in this case. Regardless, the Bankruptcy Court made clear in its bench ruling  that "this result shouldn't turn on procedural deficiencies because it's too important." (A-206 – A-207.) Thus, if this Court were to agree that Cooper was somehow in "technical noncompliance" with any procedural rule, but that Cooper was otherwise entitled to subrogate itself to Pneumo's subrogation rights, then the Court should still remand this matter to the Bankruptcy Court to permit Cooper to correct any such procedural deficiency so that its votes may be counted.

1

## ARGUMENT[1]

**A.    This Court Will Review The Issues *De Novo*.**

Below, the Bankruptcy Court made no factual findings adverse to Cooper. Instead, the Bankruptcy Court accepted the facts contained in Cooper's undisputed proofs of claim, and the other documents that Cooper presented to it for review,[2] and made its legal determinations based on those facts. This calls for *de novo* review. *See American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines)*, 152 B.R. 420, 423 (D. Del. 1993).

The Appellees try to avoid *de novo* review by invoking the abuse of discretion standard with respect to a bankruptcy court's decision to temporarily allow claims for voting purposes. *See* Appellees' Brief at p. 2 (D.I. No. 9). However, abuse of discretion exists when a "judge fails to apply the proper legal standard or to follow proper procedures in making the determination . . . ." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 257 (3d Cir. 1995); *see also Int'l Union v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987) (finding abuse of discretion exists when "the court's decision rests upon . . . an errant conclusion of law . . . ."). Because the Bankruptcy Court misapplied the law to the facts Cooper presented

---

1   "A-___" refers to the page number of the appendix filed with Cooper's Opening Brief. Items not contained in the appendix will be denominated as "Appellant Ex. ___" or "Appellee Ex. ___," which refers to the exhibits accompanying the respective parties' designation of items to be included in the record on appeal.

2   Indeed, although the Appellees have continued to try to contest the direct liability of FM Products to the Pneumo asbestos claimants, the Bankruptcy Court ruled in favor of Cooper on that issue at the hearing when it stated: "[T]he only debtor that seems to me is directly exposed to personal injury claims from asbestos personal injury claimants relating to the old Wagner business, is Federal Mogul Products, the successor to that company." (A-208.) Furthermore, the Appellees have offered *nothing* that can avoid the undisputed fact that FM Products' predecessor, Wagner Electric Corporation, entered into the 1994 Asset Purchase Agreement pursuant to which it expressly agreed to "assume and become liable for" the asbestos claims at issue. (A-72 - A-73.)

2

at the hearing, this Court will exercise plenary (*i.e.*, *de novo*) review over those legal determinations.

**B.    Cooper Can Subrogate Itself to the Asbestos Claimants' Votes.**

The Bankruptcy Court's ruling that Cooper could not subrogate itself to Pneumo's own subrogation rights is contrary to section 509 of the Bankruptcy Code and the cases Cooper cited in its Opening Brief. Cooper's Opening Brief shows it met the requirements to be subrogated to Pneumo's rights against FM Products. Because Pneumo also met the requirements to be subrogated to the asbestos claimants rights' against FM Products, Cooper was subrogated to Pneumo's own subrogation rights, including its right to file claims and vote on behalf of the 47,774 asbestos claimants that Cooper paid for FM Products and Pneumo.

The Appellees do not seriously address *any* of this in their Appellees' Brief. Instead, the Appellees devote the entire first section of their argument, related to Cooper's subrogation rights, to raising legal and factual contentions that they never raised below. This is impermissible, and Cooper has filed a motion to strike the offending portions of the Appellees' Brief as a result. Nevertheless, the arguments are themselves without merit.[3]

**1.    Allowing Cooper To Subrogate Itself to the Asbestos Claimants'
Vote Will Not Result In Cooper Having Duplicative Claims.**

In their first new argument, the Appellees contend that Cooper "cannot have both an indemnity claim and a right of subrogation." Appellees' Brief at p. 19. But the Appellees utterly fail to show that allowing Cooper to exercise its subrogation rights will result in Cooper having an overlapping allowed indemnity claim with respect to those same claims. Indeed, as the Appellees note, by electing to exercise its subrogation remedy, Cooper cannot

---

[3]  By responding to the new arguments, Cooper does not waive its request that the Court strike them. Appellate deadlines required Cooper to file this reply before the Court could act on Cooper's motion to strike portions of the Appellees' Brief. *See* Fed. R. Bankr. P. 8009(a)(3).

have an allowed indemnification claim with respect to the asbestos claims that it is voting. *See* 11 U.S.C. § 509(a). The Debtors can still object to Cooper's claims for purposes of distribution, so there is no risk that Cooper will have both an allowed indemnification claim and allowed subrogation claims with respect to the asbestos claimants. (*See* A-215 – 216.)

Further, the Appellees protest that a creditor "cannot have an allowed claim in both categories because that would permit it to effectuate a double recovery." *See* Appellees' Brief at p. 20 (*quoting In re Richardson*, 193 B.R. 378, 389 (D.D.C. 1995)) & p. 35. But there is no possibility that Cooper will obtain a double recovery here; in fact, the Appellees have designed the Plan to prevent Cooper from obtaining even a *single* recovery.

Instead of placing Cooper's contractual indemnity claim in with other general unsecured creditors (who are projected to receive a 35% recovery on their claims[4]), the Debtors' Plan has defined Cooper's indemnity claim as an "Indirect Asbestos Personal Injury Claim." (*See* Plan § 1.1.94; Appellant Ex. E at p. 14 (specifically referencing Cooper by name).) Indirect Asbestos Personal Injury Claims are placed into Class J under the Plan along with tens of thousands of Asbestos Personal Injury Claims held by individual claimants. (*See* Plan § 3.5.9; Appellant Ex. E at p. 50.) These claims will only be paid by a separate trust to be established under the Plan. (*See id.*) Because Cooper's contractual indemnity claim is already placed (improperly[5]) into the same class as the direct asbestos

---

[4] (*See* Appellant Ex. F at p. 11.)

[5] In Cooper's view, its contractual indemnity claim has been lumped into a class with tens of thousands of other creditors to improperly dilute Cooper's vote. As Cooper explained in its Disclosure Statement objection: "If the Plan created a separate class for Cooper and the few others holding contractual claims for asbestos personal injury indemnification, the members of that class would have significantly stronger voting power. In contrast, by lumping indemnification claimants in with the hundreds of thousands of individual asbestos claimants, their voting power is significantly diluted." (Appellant Ex. D at p. 22.)

personal injury claimants to which Cooper has elected to be subrogated, there is no possibility that Cooper will get paid twice on the same claim.

Moreover, counsel for the Asbestos Claimants Committee, Mr. Lockwood, has already acknowledged to the Bankruptcy Court that the proposed section 524(g) channeling trust will contain "no money" with which to satisfy Cooper's particular claims.  (*See* A – 191.)  So the Appellees' contention that if Cooper is allowed to exercise its right to be subrogated to the asbestos claimants' vote it will somehow have allowable claims in both categories, and enjoy a double recovery, is utterly meritless.  Indeed, Cooper elected to exercise its subrogation rights precisely because the Plan unfairly proposes to pay Cooper's claims, which are already in excess of $130 million, absolutely nothing while other creditors receive substantial distributions.

### 2.    Cooper's Subrogation Election Is Consistent With Cooper's Conduct.

The Appellees' second new appellate argument, made without citing a single case, is that Cooper has allegedly "consistently chosen to pursue its claim for indemnification" and that "seeking subrogation is inconsistent with Cooper's conduct in these cases."  Appellees' Brief at p. 22.  This is false.

Cooper has repeatedly stated in various pleadings that it had subrogation rights.[6] First, Cooper stated in each proof of claim that, pursuant to Federal Rule of Bankruptcy Procedure 3005, Cooper was filing in its own name and in the name of each of the plaintiffs reflected on the claim exhibits as well as in the name of Pneumo. (A-11; A-57; A-79.) Immediately thereafter, Cooper expressly reserved its rights to elect a remedy under section 509 of the Bankruptcy Code.[7] (*See, e.g.*, A-11). These provisions relate directly to subrogation. So Cooper certainly did not forego its subrogation rights in its proofs of claim.

In addition, Cooper asserted its subrogation entitlement in other pleadings in the Bankruptcy Court. In Cooper's May 6, 2004 objection to the Debtors' disclosure statement, Cooper stated: "In addition, to the extent Cooper pays an underlying Asbestos Personal Injury Claimant, Cooper can choose to be completely subrogated to that claimant's rights against the Trust . . . ." (Appellant Ex. D at p. 24)[8] Cooper asserted the same entitlement in

---

[6] The Appellees' argument that *their* Disclosure Statement somehow operated to waive Cooper's subrogation right is equally untenable. *See* Appellees' Brief at p. 23. In fact, the Appellees' own statements make clear that Cooper proposed certain language that the Appellees "strongly objected to." *See* Appellees' Brief at p. 24. Cooper could not force the Appellees to include language in their Disclosure Statement, so Cooper worked with them to arrive at more neutral wording. But contrary to the Appellees' statement, the language that the Appellees quote from the Disclosure Statement certainly does not "specif[y] only [Cooper's] indemnification claim, but not any subrogation claim." Instead, the language merely stated: "Cooper may assert claims against the Debtors arising out of the 1994 and 1998 transaction agreements with respect to asbestos-related claims against Pneumo Abex. Cooper contends that Federal-Mogul agreed to indemnify it against asbestos-related claims against Wagner and thus may assert claims against the Debtors with respect to these claims." *See* Appellees' Brief at p. 25. Nothing in this language limits Cooper to asserting a particular *type* of claim against FM Products. There is nothing in this vague language upon which any party could reasonably rely, and there is no evidence of any such reliance in the record.

[7] The Appellees incorrectly assert that Cooper "does not mention or assert any right of subrogation" in its proofs of claim. Appellees' Brief p. 11. Cooper's proofs of claim each expressly referenced both Fed. R. Bankr. P. 3005 and section 509 of the Bankruptcy Code, both of which deal solely with subrogation rights. (*See* A-11; A-57; A-79.)

[8] On the same page of the objection, Cooper stated: "Because Cooper itself is subrogated to the rights of Pneumo Abex under section 509 of the Bankruptcy Code, any impairment of

[Footnote continued on next page]

its objection to the proposed voting procedures: "Cooper has already paid thousands of underlying asbestos claimants for which F-M Products has legal liability.  As a result, Cooper has the option of casting a vote on behalf of each such claimant under subrogation principles, including those granted by section 509 of the Bankruptcy Code."  (Appellant Ex. C at p. 6.)  Thus, the Court should flatly reject the Appellees' belated argument that Cooper has done otherwise.

### 3.    Pneumo's Proof of Claim Asserts Entirely Different Claims and is Irrelevant to Cooper's Voting Rights.

For their final new argument concerning Cooper's subrogation rights, the Appellees claim that Cooper cannot subrogate itself to Pneumo because Pneumo filed its own proof of claim (the "Pneumo POC").  *See* Appellees' Brief at pp. 25-27.  If the Appellees really believed that, they should have objected to Cooper's proofs of claim and allowed the Bankruptcy Court to sort out the factual issues involved.  Because they did not do so, as explained in Cooper's Opening Brief, Cooper's claims are "deemed allowed" for voting purposes under 11 U.S.C. § 502(d).  The Bankruptcy Court said as much with respect to another issue at the hearing, and the Appellees did not file a cross-appeal.  (*See* A-216 (THE COURT: "Well, it seems to me, I mean, they filed proofs of claim against those companies back in March of 2003.  If you didn't think there was any liability you should have objected to them.  So I think the votes should count anyway.  Distribution is something else.").)  Regardless, the Pneumo POC asserts different claims than those upon which Cooper is basing its votes, and the Pneumo POC is in a far lesser amount than Cooper's claims.  As such, the

[Footnote continued from previous page]
    Pneumo Abex to assert claims against the Trust directly impacts Cooper."  (*Id*.)  And later in the same pleading, Cooper stated:  "Cooper is perhaps the largest single unsecured creditor in these cases, and it has substantial Unsecured Claims in Class H as well as Indirect Asbestos Personal Injury Claims or, at its election, numerous direct Asbestos Personal Injury Claims due to its section 509 subrogation rights."  (*Id*. at p. 26.)

Pneumo POC is irrelevant to Cooper's ability to exercise subrogation rights with respect to the claims that Cooper has paid on behalf of Pneumo.

"The thrust of the rule [3005] is salutary; it is meant to ameliorate the harsh effect on a codebtor where a creditor decides to forego participation in the debtor's estate in favor of simply pursuing the solvent codebtor." *See Fisher v. Outlet Co. (In re Denby Stores, Inc.)*, 86 B.R. 768, 773 (Bankr. S.D.N.Y. 1988). As a result, a proof of claim filed by an underlying creditor does not foreclose that underlying creditor's guarantor from filing a proof of claim under Rule 3005 if the underlying creditor's proof of claim asserts different or lesser claims than the claims asserted by the guarantor. *See id.* at 774.

In *Denby*, a guarantor filed a proof of claim for amounts it might have to pay to an underlying creditor on behalf of the debtor. *Id.* at 773. The chapter 7 trustee objected, and argued that the underlying creditor had filed its own claim. The court found that the guarantor's claim was not superseded because the underlying creditor settled its claim with the debtor, accepted less than a full distribution and continued to pursue the guarantor on the remainder of the claim:

> [W]here the creditor settles with the debtor, accepting less than the full distribution to which it might be adjudged entitled, *and additionally receives payment on the debtor's liability to it from the codebtor*, the codebtor's earlier filed subrogation claim should not be disallowed merely because the creditor had filed a proof of claim. Thus, [the guarantor] should not be prohibited from asserting [the underlying creditor's] claim *to the extent of the payment which [the guarantor] made in partial satisfaction of [the debtor's] liability*.

*Id.* at 774 (emphasis added).

Cooper is in precisely the same situation as the guarantor in *Denby*. The 47,774 votes that Cooper cast are based on "the number of asbestos claims that [Cooper] had satisfied on behalf of FM Products, as well as Pneumo . . . ." *See* Opening Brief at p. 14. Because Cooper has been paying asbestos claims on behalf of Pneumo, the Pneumo POC necessarily asserts entirely different claims in a far lesser amount than Cooper has asserted.

8

The Pneumo POC first asserts a claim for $1,242,843.03 against FM Products for "expenses incurred in connection with providing to the Debtor insurance benefits associated with Asbestos Claims." (*See* Pneumo POC, annexed to Appellees' Motion For Leave to Supplement Record on Appeal Instanter as Exhibit A, at ¶ 13.) Unlike Cooper's claims, this claim is not based on paying asbestos claimants. Next, the Pneumo POC asserts a claim for $947,772.36 "in order to secure Cooper's compliance "under the Cooper guaranty." (*Id*. at ¶ 14.) Again, this claim is not based on paying asbestos claimants. Thus, the total liquidated amount of the Pneumo POC is $2,190,615.39. In contrast, Cooper's total liquidated claim exceeds $130,000,000, which amply demonstrates that these claims are not identical. *See* Opening Brief at p. 13.[9]

Indeed, the fact that the Pneumo POC does not assert that Pneumo actually paid or incurred any losses directly to asbestos claimants is made explicit in category F of the Pneumo POC, which is set out in its entirety below. In that category, Pneumo states that it has not incurred any costs to pay any asbestos claimants *because Cooper has done so on its behalf*:

> As noted above, the Debtor stopped performing its APA obligations with respect to the Asbestos Claims on the Petition Date. Since that time, either

---

[9] In addition to these liquidated claims, the Pneumo POC asserts unliquidated (i.e., unpaid) claims in the following categories: (1) "Reimbursement of Legal Fees and Expenses Associated with Abex Corporation v. Maryland Casualty Company, et al." (*Id*. at category C [sic] on p. 7); (2) "Reimbursement of Legal Fees and Expenses Related to the Arbitration Between Claimant and PepsiAmericas styled as: Whitman Corporation v. Pneumo Abex Corporation, pursuant to Demand for Arbitration, dated October 22, 1999" (*Id*. at category B on p. 8); (3) "Reimbursement of Legal Fees and Expenses Related to the Pursuit of Excess Insurance Coverage" (*Id*. at category C on p. 9); (4) "Reimbursement of Legal Fees and Expenses Related to an Arbitration Against Cooper styled as: Mafco Consolidated Group Inc. and Pneumo Abex Corporation v. Cooper Industries, Inc., pursuant to Demand for Arbitration, dated November 20, 2001" (*Id*. at category D on p. 10); and (5) "Contingent Claim Related to Potential Environmental Clean-Up Liability at the Cambridge, Ontario Site of Federal-Mogul Canada" (*Id*. at category E on p. 11). None of these claims represent funds paid to asbestos claimants.

> (a) *Cooper has performed under its Guaranty in a way that has caused Claimant not to advance any of its own funds with respect to the defense or settlement of Asbestos Claims* or (b) Cooper or insurance has reimbursed the funds that Claimant has advanced. Nonetheless, Claimant asserts a *contingent* claim for the indemnification of any and all expenses that *may* be incurred and would be attributable to the Debtor with respect to the Asbestos Claims. The amount of such contingent claim cannot be reasonably calculated or estimated, but Claimant does not waive its right to seek such indemnification by not stating a specific amount at this time.

(*Id*. at ¶ 25 (emphasis added).)

Pneumo's contingent claim for any potential *future* losses it may incur to asbestos claimants does not overlap with Cooper's claims with respect to asbestos claimants that Cooper has *already paid*. Moreover, there is no evidence in the record concerning whether the Pneumo POC was already resolved or disposed of in some manner. Thus, the Pneumo POC cannot impact Cooper's right to subrogate itself to Pneumo's rights with respect to claims that Pneumo did not assert against FM Products in the Pneumo POC. *See Denby*, 86 B.R. at 774.

## C.    Cooper Complied With All Requirements In Filing Its Claims and, Further, Should Not Be Denied Its Voting Rights on the Basis of Technicalities.

The fundamental basis for the Bankruptcy Court's decision to not allow Cooper to vote for the 47,774 asbestos claimants was the erroneous legal conclusion that Cooper could not subrogate itself to Pneumo's own subrogation rights. This Court should reverse that legal conclusion for the reasons articulated above and in Cooper's Opening Brief. In its December 2, 2004 bench ruling, the Bankruptcy Court also stated, in a single sentence: "I do believe there was technical noncompliance with Rule 3005." (A-207.)[10] Although Cooper in fact

_____

[10] The Appellees contention that "Judge Lyons found that Cooper failed to comply with *several* technical requirements for voting on FM Products' Plan" is a mischaracterization. *See* Appellees' Brief at p. 28 (emphasis added). First, the Appellees are incorrect in suggesting

[Footnote continued on next page]

complied with those technical requirements, it is also clear that Judge Lyons did not and would not disallow Cooper's voting rights on a mere technicality even if this Court disagrees that Cooper did comply. Specifically, Judge Lyons made clear, in his bench ruling, that "*this result shouldn't turn on procedural deficiencies because it's too important.*" (A-206 – A-207) (emphasis added). Thus, if this Court were to agree that Cooper was somehow in "technical noncompliance" with Rule 3005, but that Cooper was otherwise entitled to subrogate itself to Pneumo's subrogation rights, then the Court should still remand this matter to the Bankruptcy Court to allow Cooper to correct the deficiencies so its votes can be counted. Technicalities standing alone were not the basis for the Bankruptcy Court's ruling, and should not be the basis for this Court's ruling.

---

[Footnote continued from previous page]

that Judge Lyons "found" that "it was Cooper's responsibility to come forward immediately if it discovered its ballots were incorrect." *See* Appellees' Brief at p. 28. While Judge Lyons suggested that it would have been better if Cooper had done so "if [Cooper] saw the ballots", what he actually "found" was that there was no deadline for Cooper to bring its voting motion: "If I were to employ the deadlines in the voting procedures, I would probably say it's too late, *but I don't find any specific deadline that actually addresses this situation.*" (A-210.) (emphasis added).

Moreover, the Appellees completely miss the mark in stating that Judge Lyons "found that rather than simply filing an amended proof of claim during the vote solicitation period, if Cooper intended to increase the amount of its claim for voting purposes during that period it should have filed a Claimant's Voting Motion." *See* Appellees' Brief at p. 28. This is incorrect because Cooper obviously *did* file a voting motion—that motion is what started these proceedings. (*See* A-102 – A-131.)

Finally, in pointing out Cooper's purported missteps, the Appellees conveniently omit that the Bankruptcy Court stated that the Appellees should have objected to Cooper's proofs of claim if they wanted to challenge Cooper's ability to vote, and that there were omissions on both sides: "Now the circumstances of the negotiations . . . probably left everyone in a position where they weren't going to do, or they either neglected to or assumed that they wouldn't have to do certain things, like increasing the amount of their vote for Cooper's point of view, or objecting to the proofs of claim that was filed from the plan proponents point of view. So I think there's enough blame to go around and the question is, should we get to the right amount of voting and the right number of votes." (A-204.) However, as noted above, the Bankruptcy Court ultimately determined that the result should not turn on procedural issues: "It's a very knotty problem, and there are procedural deficiencies, I think, that can be ascribed to both sides. And this result shouldn't turn on procedural deficiencies because it's too important." (A-206 – A-207.)

11

### 1.    Cooper Complied With Bankruptcy Rule 3005.

Cooper complied with the technical requirements of Rule 3005. Cooper filed its claim on Official Claim Form No. 10 and it included a lengthy statement setting out the facts giving rise to FM Products' liability. Cooper specifically invoked Rule 3005 and stated that, pursuant to that rule, "Cooper and its Affiliates submit this amended proof of claim in their own names, and in the names of each of the 47,774 plaintiffs reflected or represented on Exhibit A1 and/or Exhibit B, as well as in the name of Pneumo Abex." (A-79.). Cooper then attached exhibits listing the known names of those asbestos plaintiffs. (*See, e.g.*, A – 83 -- A -- 93.)

The Appellees open their argument that Cooper failed to comply with Rule 3005 by citing authorities that provide that a co-debtor must file its claim "in the name of the creditor." *See* Appellees' Brief at p. 29. But Cooper obviously did that because Cooper expressly stated that the claim was filed "in the names of each of the 47,774 plaintiffs reflected on Exhibit A1 and/or Exhibit B, as well as in the name of Pneumo Abex." (A-79).

The best the Appellees can do to try to sidestep this issue is argue that Cooper did not state on its proof of claim cover page that it was filing in the names of the asbestos claimants and then cite to a bankruptcy treatise that says that a claim filed under Rule 3005 "*should reflect on its face . . . that it is filed pursuant to [Bankruptcy] Rule 3005.*" *See* Appellees' Brief at p. 30 (*quoting* 9 *Collier on Bankruptcy* ¶ 3005.02 (Lawrence P. King ed., 15th ed. 2000) (emphasis added)). First, the bankruptcy treatise, which is obviously not binding authority, did not say that a proof of claim "must" reflect on its face that it is filed pursuant to Rule 3005, it merely states that it "should" do so. *See id*. Second, the Appellees are obviously assuming that the "face" of the proof of claim means only its "cover page," and there is no basis for that assumption. Indeed, Cooper contends that its proofs of claim reflect

on their face that they are filed pursuant to Rule 3005 because Cooper expressly stated as much within the claim.

Further, the Appellees cite no case in which a court disallowed a claim, that states in an attachment that it is filed pursuant to Rule 3005, on the ground that the creditor did not include a reference to Rule 3005 on the claim's cover page. Indeed, the cases Appellees do cite show just how loosely courts apply the technical procedural requirements of the Federal Rules of Bankruptcy Procedure. *See, e.g., In re WPRV-TV, Inc.*, 102 B.R. 234 (Bankr. E.D. Okla. 1989).

In *WPRV-TV*, a co-debtor filed a claim in its own name only. *Id.* at 238. Unlike Cooper's claim, there is no mention that the co-debtor mentioned *anywhere* in its proof of claim that it was filing the claim on behalf of anybody other than itself. Even so, the co-debtor later sought to assert a claim on behalf of another entity. *Id.* As the Appellees note, the "court in *WPRV-TV* found that the claimant had not satisfied the requirements of Bankruptcy Rule 3005 because the claimant had not filed a claim in the name of the creditor on whose behalf it was asserting a claim." *See* Appellees' Brief at p. 30. But the Appellees omit that the bankruptcy court then went on to consider whether to allow the claim on behalf of the other entity *anyway*, under the "informal" proof of claim doctrine.

This doctrine gives the creditor an allowed claim, *even if it did not file a proof of claim*, as long as it put the parties on notice. *See id.* at 238; *see also In re Brandt*, 1989 WL 109696 (Bankr. D. Minn. Sept. 22, 1989) ("An informal Proof of Claim must communicate to the trustee that a claim is being made against the assets of the bankruptcy estate . . . ..").[11]

---

[11]    *In re Brandt* was the only other case the Appellees cited in support of their argument that Cooper did not comply with the requirements of Rule 3005. *Brandt* also involved a situation where the co-debtor sought to assert a claim on behalf of another party after failing to name

[Footnote continued on next page]

13

Although the court was somewhat troubled by expanding the doctrine to include claims on behalf of other parties, it found that "it is not abhorrent to the process provided the creditor attempting such assertion strictly meets the requirements for the establishment of an informal Proof of Claim." *In re WPRV-TV*, 102 B.R. at 238.  Thus, the court entertained allowing the co-debtor's claim on behalf of another entity even though the co-debtor never mentioned that entity in the proof of claim, but instead mentioned the other creditor in *completely separate* documents it sent to the debtor. *See id.*  Cooper's official proof of claim, in which it actually stated that it was filing on behalf of 47,774 asbestos claimants named on attached exhibits, obviously deserves no less.

### 2.    Cooper's Proof of Claim Complied With the Bar Date Order.

The Appellees originally argued that *Rule 3005* required Cooper to file 47,774 separate proofs of claim in order to vote on behalf of the asbestos claimants.  (*See* Appellant Ex. N at p. 15.)  Apparently realizing the folly of that argument in the face of the numerous cases Cooper cited in its Opening Brief that allow group and class proofs of claim,[12] the

---

[Footnote continued from previous page]
the other party in its proof of claim. *See* 1989 WL 109696 at * 3.  As in *WPRV-TV*, however, the court in *Brandt* still went on to consider whether to allow the claim under the informal proof of claim doctrine. *Id.* at *3-4.

[12]  The Appellees feebly attempt to distinguish these cases.  First they try to attach significance to the fact that, in *In re Dow Corning Corp.*, 244 B.R. 705 (Bankr. E.D. Mich. 1999), the United States only voted four claims even though it sought recovery for approximately 15,048 federal beneficiaries. *See* Appellees' Brief at p. 33.  The important point about *Dow Corning* is that it obliterates the Appellees' argument that Cooper needed to file 44,774 proofs of claim in order to comply with Bankruptcy Rule 3005.  In any event, the United States had no need to cast 15,048 votes because just voting four claims was enough to cause its class to reject the plan. *See id.* at 709 ("Class 15 was a rejecting class, however, because the United States, which holds four claims, voted to reject the Plan.").  If Cooper's claim had been properly classified, Cooper likely would not have need to vote all its claims either.  Next, the Appellees essentially ignore *Adair v. Bartholow (In re Great Western Cities, Inc. of N.M.)*, 107 B.R. 116, 119 (N.D. Tex. 1989), a case Cooper cited in its Opening Brief in which the court allowed a *group* proof of claim and found that a contrary rule would be "absurd."  Instead, the Appellees focus on the cases Cooper cited in which courts allowed *class action*

[Footnote continued on next page]

Appellees now argue that the Bankruptcy Court's *Bar Date Order* required Cooper to file 47,774 proofs of claim. *See* Appellees' Brief at p. 32. Although the Appellees made a similar contention in a two sentence footnote in their Voting Motion Objection,[13] the Appellees did not mention this argument at the December 2, 2004 hearing and the Bankruptcy Court did not discuss it. As a result, the Appellees have forfeited the point and Cooper has requested the Court to strike it in its contemporaneously-filed motion. But the reason the Appellees abandoned this argument seems clear enough: The Bar Date Order expressly excludes "Asbestos-Related Personal Injury Claims" from its reach. (*See* Appellee Ex. C. at p. 3 n. 3.)

The Bar Date Order's requirement for "a separate, completed and executed proof of claim" only applies to creditors wishing to assert "General Claims," which is a defined term in the Bar Date Order. Specifically, the paragraph upon which the Appellees rely states, in relevant part, as follows:

> ORDERED, that pursuant to Federal Rule of Bankruptcy Procedure 3002(c)(3), all persons and entities . . . holding or wishing to assert *General Claims*[fn] any [sic] of the U.S. Debtors (*other than those claims specifically excepted by this order*) are required to file . . . a separate, completed and executed proof of claim form, conforming substantially to that filed with the Court at the hearing on the Motion (or, alternatively, Official Claim Form No. 10) (the "Proof of Claim Form") on account of each claim such Creditor wishes to assert, *subject to those exceptions to such requirement enumerated in this Order . . . .*

---

[Footnote continued from previous page]
proofs of claim by arguing "that courts, which have permitted class proofs of claim, require parties to comply with certain requirements." *See* Appellees Brief at p. 33. This misses the point completely. Cooper's claim is a *group* claim, not a class action claim. Cooper cited the class action cases, along with the group proof of claim cases, to show that courts have not required creditors to file separate proof of claim forms for each claim asserted.

[13] (*See* Appellant Ex. N, p. 15 n. 9.)

(Appellee Ex. C, at p. 3.). Footnote 3 to the Bar Date Order defines the term "General Claim" as follows: "For purposes of this Order, the term 'General Claim' shall mean any claim against the U.S. Debtors arising prior to October 1, 2001 other than . . . (ii) an Asbestos-Related Personal Injury Claim . . ." (*Id.*) Clearly, the 47,774 asbestos claimants on behalf of whom Cooper filed claims were excluded from the Bar Date Order and its requirement that each claimant file a separate claim. Because Cooper was subrogated to those claimants' rights, Cooper was likewise not required by the Bar Date Order to submit 47,774 separate proofs of claim to file on their behalf. If the Appellees seriously contended otherwise, they should have objected to Cooper's claims on this basis and resolved this dispute in the Bankruptcy Court. They did not do so, and Cooper's claims are therefore "deemed allowed" for voting purposes pursuant to section 502(d) of the Bankruptcy Code.

### 3.     Cooper Should Not Be Denied Its Votes Due To a Technicality.

Equity demands "that substance will not give way to form [and] that technical considerations will not prevent substantial justice from being done." *Pepper v. Litton*, 308 U.S. 295, 305 (1939). The Bankruptcy Court expressly recognized this principle when it stated that "in order to do substantial justice, I think we'll have to give Cooper the opportunity to show that its claims should be increased." (A-210.) In addition, the Bankruptcy Court stated that Cooper's votes "shouldn't turn on procedural deficiencies because it's too important." (A-206 – A-207.) Thus, if the Court agrees that Cooper had the substantive right to subrogate itself through Pneumo to the asbestos claimants, but that Cooper was somehow in "technical noncompliance" with any procedural rule, it should still remand the matter back to the Bankruptcy Court to permit Cooper to cure the procedural deficiency and vote its claims. *See In re Denby*, 86 B.R. at 774.

In *Denby*, discussed *supra*, a guarantor filed a proof of claim, in the guarantor's own name, with respect to amounts it might have to pay to an underlying creditor on behalf of the

debtor.  In addition to the grounds discussed above, the chapter 7 trustee objected because the claim was filed only in the name of the guarantor and not in the name of the underlying creditor.  *See Denby*, 86 B.R. at 773-74.  The court refused to allow such technical arguments to prevail:

> While it may have been bad form for [the guarantor] not to file in [the underlying creditor's name], [the debtor] was on notice by the plain language in claim # 576 that [the guarantor] sought subrogation.  There can be no valid claim of surprise or prejudice.  As the Trustee himself acknowledges, *the defect is a technical one which is curable by amendment.*

*Id*. at 774 (citations omitted and emphasis added).[14]

Cooper's proof of claim, including attachments, exceeded 500 pages and was exhaustively detailed.  Therein, Cooper expressly stated that it was filing pursuant to Rule 3005 on behalf of 47,774 asbestos claimants that Cooper had paid, as well as Pneumo.  (A-79.)  Cooper believes its proof of claim met all applicable requirements.  If, however, the Court were to agree for some reason that Cooper was required to reference Rule 3005 on the cover page of the proof of claim or to file 47,774 separate pieces of paper, the Court should still remand this matter to permit Cooper to correct any such "technical" issues so its votes may be counted.

**D.    Equity Dictates that Cooper Must Be Allowed to Vote On Behalf of the 47,774 Claimants It Has Paid On Behalf of FM Products.**

Subrogation is designed to protect parties, such as Cooper, that are forced to answer for the debts of another.  Thus, if a guarantor has paid a debtor's obligations, "failure to allow

---

[14]  Other courts have reached similar results.  *See, e.g., Gaudio v. Stamford Color Photo, Inc. (In re Stamford Color Photo, Inc.)*, 105 B.R. 204, 207 (Bankr. D. Conn. 1989) ("[A] document need not be styled a proof of claim or filed in the form of a claim if it fulfills the purposes for which the filing of a proof of claim is required, i.e. a demand which shows the nature and amount of the claim against the estate."); *Lazar v. Sullivan (In re Sullivan)*, 36 B.R. 771, 773 (Bankr. E.D.N.Y. 1984) ("[A] bankruptcy court is empowered to treat [a document] as a proof of claim notwithstanding its formal defects.").

§ 509(a) subrogation would result in a windfall to Debtor and its unsecured creditors and would thereby disrupt the Code's priority scheme." *In re Medicine Shoppe*, 210 B.R. 310, 314 (Bankr. N.D. Ill. 1997). Indeed, "[s]ection 509 serves the purpose of preventing such inequity." *Id.*; *see also* 9 *Collier on Bankruptcy* ¶ 3005.01, at 3005-2 (Lawrence P. King ed., 15th ed. 2003) ("Federal Rule of Bankruptcy Procedure 3005 permits one who is liable with the debtor to assure that the debtor's estate bears its share of the debt involved.").

In this case, nobody can dispute that Cooper has paid over *one hundred million dollars* in claims that rightfully belong to FM Products. As a result, 47,774 asbestos claimants no longer need to assert a claim against FM Products on account of FM Products' assumption of Pneumo asbestos liabilities,[15] and Pneumo had no need to assert a claim against FM Products on account of the claims that Cooper paid on its behalf. But that does not mean that FM Products should get a free pass. Instead, it should still have to answer for each claim via Cooper's subrogation rights. That includes facing the 47,774 votes that would have been filed with respect to the FM Products' Plan had Cooper not paid these asbestos claimants. This Plan is patently unfair to such Pneumo-related asbestos claimants—and to Cooper—because, as one of the lawyers for the Appellees has admitted, the insurance that

---

[15] The Appellees state that one policy behind Rule 3005 "is to allow a co-debtor to protect itself by filing a proof of claim where the creditor has failed to do so." *See* Appellees' Brief at p. 35 (*quoting In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 314 B.R. 354, 358 (S.D. Tex. 2004)). They then suggest that this policy does not support Cooper "because Cooper cannot show that any of the 47,774 asbestos personal injury claimants would be barred for not filing a proof of claim by the Bar Date because no Bar Date has been established for Direct Asbestos Personal Injury Claims." *See* Appellees' Brief at p. 35. This argument is so far off-base it is incredible. These 47,774 claimants should never file a claim against FM Products *because Cooper already paid them*. That is precisely why Cooper needed to protect itself by filing a claim in their names. *See* 4 Collier on Bankruptcy ¶ 509.07[1], at 509-12 (Lawrence P. King ed., 15th ed. 2004) ("Rule 3005 also protects the codebtor against the danger that the principal creditor, faced with the bankruptcy of the debtor, might decide to rely on the solvency of the codebtor and, therefore, abstain from filing a proof of claim in the bankruptcy case.").

18

will be made available to the proposed section 524(g) trust to which all of these claims will be channeled via a permanent injunction "doesn't cover these claims. And therefore there's no money." (A-191.)

Thus, FM Products will pay nothing and Cooper will be left holding the bag for the FM Products' Pneumo-related assumed asbestos claims. This is a windfall to FM Products and all the Debtors' other asbestos claimants who will share in funds that should rightfully go to Cooper for being forced to shoulder FM Products' burden.[16] Further, this lack of funds to pay these claims is no accident. Cooper has been complaining about it to the Appellees for months. (*See* Appellant Ex. D at p. 23-25.) Instead of correcting the deficiency, however, the Appellees strong-armed Cooper into agreeing to give up its rights to object to confirmation of the Plan in exchange for the hope of negotiating a deal to resolve these claims by contributing assets to the proposed section 524(g) trust. But that deal never materialized. (A-102 – A-103.) The equities in this situation lie solely with Cooper, and

---

[16] This fact highlights the irrelevancy of the Appellees' arguments concerning "the unique statutory rights that are given to the individual asbestos personal injury claimants pursuant to section 524(g) of the Bankruptcy Code." *See* Appellees' Brief at p. 36. Because the proposed Plan forces Cooper to pay the Pneumo Abex-related asbestos claims against FM Products without any recompense, both FM Products and its other asbestos claimants (that arise from sources other than FM Products' assumption of the Pneumo liabilities) will get a windfall. There is obviously only so much money in the pot, so by improperly leaving Cooper out, there is more for everyone else. Just because asbestos claimants are given special voting rights does not mean they are entitled to a windfall at Cooper's expense. "Section 509 serves the purpose of preventing such inequity." *In re Medicine Shoppe*, 210 B.R. at 314. Further, the argument that a party should not be able to subrogate itself to section 524(g) voting rights fails by virtue of section 507(d) of the Bankruptcy Code. That section expressly lists the rights to which an entity cannot subrogate itself. *See* 11 U.S.C. § 507(d). Because it does not include a section 524(g) voting right among its exclusions, that is a right to which a co-debtor can be subrogated. *See Pandora Indus. v. Paramount Communications, Inc. (In re Wingspread Corp.)*, 145 B.R. 784 (S.D.N.Y. 1992) (holding that "Congress' provision of subrogation rights in § 509 eliminated any need to provide for subrogation in specific contexts" and rejecting argument that a particular subrogation right could not be exercised because "§ 507(d), which specifically sets forth those claims for which the subrogee is not" subrogated did not list it).

Cooper's remaining voice in these proceedings—its ability to vote on the Plan—should not be diluted from 47,774 votes to 1.

Dated:  March 7, 2005.

Respectfully submitted,

**MORRIS, JAMES, HITCHENS
& WILLIAMS LLP**

Stephen M. Miller (Bar No. 2610)
222 Delaware Avenue
Wilmington, DE  19801
Telephone:  (302) 888-6853
Telecopy:  (302) 571-1750
Email:  smiller@morrisjames.com

AND

**GIBSON, DUNN & CRUTCHER LLP**
Michael A. Rosenthal
Aaron G. York
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone:  (214) 698-3100
Telecopy:  (214) 698-3400
Email:  mrosenthal@gibsondunn.com
Email:  ayork@gibsondunn.com

Attorneys for Cooper Industries, LLC

50203213_3.DOC