# EXHIBIT B



2005 WL 453125            Page 1
--- B.R. ---
(Cite as: 2005 WL 453125 (Bankr.D.Minn.))

Only the Westlaw citation is currently available.

United States Bankruptcy Court,
D. Minnesota.
In re: SENIOR COTTAGES OF AMERICA, LLC, Debtor.
Timothy D. MORATZKA, Trustee of The Bankruptcy Estate of Senior Cottages of America, LLC and Senior Cottage Management, LLC, Plaintiff,
v.
Richard MORRIS, Morris, Carlson, Hoelsher, P.A., and Michael Cohen, Defendants.
No. 00-32012, 03-3132.

Feb. 18, 2005.

**Background:** Chapter 7 trustee brought adversary proceeding against attorneys and law firm alleging negligence, fraud, and aiding and abetting fraud. Defendants brought motion to dismiss.

**Holdings:** The Bankruptcy Court, Kishel, Chief Judge, held that:
(1) trustee lacked standing under complaint that only nominally referred to bankruptcy estate as vehicle to recover losses suffered by creditors, and
(2) absence of proof of claim on behalf of attorneys against Chapter 7 estate did not preclude, for lack of ripeness, trustee's request for equitable subordination against attorneys.
Motion granted in part and denied in part.

[1] Bankruptcy ⚖═2704

51k2704 Most Cited Cases
Chapter 7 trustee lacked standing under complaint that only nominally referred to bankruptcy estate as vehicle to recover losses suffered by creditors from alleged fraudulent transfers prior to liquidation of debtor in bankruptcy; trustee did not succeed to status of any creditor and he could not maintain suit on any claim that creditors may have had in their individual capacity, and trustee did not allege that transfers deprived debtor of viable ongoing enterprise that had value in excess of total of creditors' claims against it or that deprivation otherwise would have given debtor legal claim to damages, in its own right, outside of bankruptcy. Bankr.Code, 11 U.S.C.A. § 541.

[2] Bankruptcy ⚖═2154.1
51k2154.1 Most Cited Cases
Whenever a cause of action belongs to the debtor corporation, the trustee has the authority to pursue it in bankruptcy proceedings.

[3] Bankruptcy ⚖═2531
51k2531 Most Cited Cases

[3] Bankruptcy ⚖═2553
51k2553 Most Cited Cases
Property rights that enter the bankruptcy estate come in subject to all of the limitations they had in the ownership of the debtor; causes of action are no exception to this rule. Bankr.Code, 11 U.S.C.A. § 541.

[4] Bankruptcy ⚖═2154.1
51k2154.1 Most Cited Cases
As a general rule, the principle of in pari delicto lies in a case where a bankrupt corporation has joined with a third party in defrauding its creditors, and this bars the trustee as successor to the corporation from suing the third party.

[5] Bankruptcy ⚖═2892.1
51k2892.1 Most Cited Cases

[5] Bankruptcy ⚖═2902
51k2902 Most Cited Cases
Absence of proof of claim on behalf of attorneys against Chapter 7 estate did not preclude, for lack of ripeness, trustee's request for equitable subordination against attorneys, since attorneys submitted bill to debtor post-petition for pre-petition services rendered and there was nothing to prevent attorneys from subsequently asserting informal proof of claim. Bankr.Code, 11 U.S.C.A. §§ 501, 502(a), 510(c).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 453125                                                                 Page 2
--- B.R. ---
(Cite as: 2005 WL 453125 (Bankr.D.Minn.))

[6] Bankruptcy ⚖2163
51k2163 Most Cited Cases
A court can take judicial notice of the status of its own claims register.

[7] Bankruptcy ⚖2162
51k2162 Most Cited Cases
On a motion to dismiss for failure to state a claim, a court can consider those extrinsic matters of which it can take judicial notice. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.
Robert C. Black, III, Black Law Office, Edina, MN, for Debtor.

ORDER RE: MOTION OF DEFENDANTS
RICHARD MORRIS AND MORRIS, CARLSON, HOELSHER,
P.A. FOR DISMISSAL

KISHEL, Chief Bankruptcy J.

*1 This adversary proceeding came on before the Court for hearing on the motion of Defendants Richard Morris and Morris, Carlson, Hoelsher, P.A. ("MCH") for dismissal of the Plaintiff's complaint. The movants appeared by their attorney, Charles E. Lundberg (Thomas F. Miller, on the brief). The Plaintiff appeared in opposition to the motion. Upon the moving and responsive documents, the text of the Plaintiff's complaint, and the arguments of counsel, the Court makes the following order.

*The Parties.*
This adversary proceeding arose out of the bankruptcy cases of Debtors Senior Cottages of America, LLC ("Senior Cottages") and Senior Cottage Management, LLC ("Cottage Management"). The Plaintiff is the trustee of the bankruptcy estates in both cases. [FN1] Defendants Morris and Cohen are attorneys at law. Defendant MCH is a law firm in which Defendant Morris is a principal.

*Relevant Portions of Plaintiff's Complaint.*
The Plaintiff commenced this adversary proceeding in his capacity as trustee. In the first and second paragraphs of the "Introduction" to his complaint, he announced:
1. This Complaint seeks to recover for the estates [sic] of [Senior] Cottages more than $7,000,000.00 in damages caused by a fraudulent transaction scheme in which Defendants substantially assisted the transferor and its principals. The scheme caused secured creditors to be deprived of collateral and unsecured creditors to be left without a payment source.
2. The scheme was devised by Murray R. Klane ("Klane"), a Chapter 7 Debtor, and the Defendants. Klane and Morris were friends and business partners. Cohen was in-house counsel for [Senior] Cottages.

In the remainder of the "Introduction," the Plaintiff goes on to identify one Murray R. Klane as an attorney-at-law, since disbarred in the State of Minnesota. He states that Klane invested in Senior Cottages and then became increasingly involved in its operations and governance, eventually becoming "the CEO or Chief Manager" of Senior Cottages and ultimately gaining "at all relevant points in time, ... complete control of the daily operations of both" Senior Cottages and Cottage Management. He alleges that, by the spring of 1998, Senior "Cottages was unable to meet its obligations as they became due," though "many [of its] transactions and projects were midstream with high profit potential." After that, he states:
8. Sometime in the Summer of 1998, the Defendants advised Klane, [Senior] Cottages and others that a scheme to transfer [Senior] Cottages' assets to a newentity, MPLLC, would free assets from claims of creditors.
9. Using this scheme, with the knowledge and assistance of the Defendants as counsel for several parties, [Senior] Cottages knowingly transferred the assets of [Senior] Cottages to MPLLC.
11. Eventually MPLLC could not find private investors or institutional financing. [Senior] Cottages, MPLLC, Klane and other related companies filed a Chapter 11[sic] on May 2, 2000, which cases were later converted to a Chapter 7. [FN2]

*2 In a later section entitled "Background Facts," the Plaintiff fleshes out the summary of transactional history in his "Introduction" with more detailed fact allegations. In pertinent part, he pleads:
26. [Senior] Cottages were [sic] insolvent in 1998.... Klane and Defendants knew of the insolvency. Klane recognized the potential value

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 453125                                                                  Page 3
--- B.R. ---
(Cite as: 2005 WL 453125 (Bankr.D.Minn.))

in the development fees, management fees and transferable tax credits.

27. In 1998, up to and including the time of the transfer complained of, Defendants were attorneys for and represented [Senior] Cottages and MPLLC. Defendants Morris and MCH were also attorneys for Klane. Klane needed time and money to preserve the potential value. Creditors were in the way of that goal and were demanding payment.

28. In August or September of 1998, [Senior] Cottages transferred all of its assets to MPLLC. The purported consideration was the assumption of secured debt.

29. MPLLC, [Senior] Cottages and Klane were all represented by Morris and MCH at the time of and during the transfer to MPLLC of all of [Senior] Cottages' assets. MPLLC and [Senior] Cottages were also represented by Cohen at that time.

30. [Senior] Cottages and MPLLC were advised by Morris, MCH, and Cohen to conclude the transfer of assets and assumption of debt, and Morris, MCH, and Cohen substantially assisted the transfer.

The Plaintiff then alleges that the Senior Cottages-MPLLC transfer "hindered and delayed creditors of [Senior] Cottages because the main purpose of the transfer was to avoid unsecured creditors," that "the transfer was in bad faith" and "was fraudulent," and that

> ... Klane breached his fiduciary duties in his various capacities as attorney, certified public accountant, member, governor, chief manager and partner in planning and completing the fraudulent transfer. Defendants knew these facts.

In the final fact allegations relevant to the motion at bar, the Plaintiff asserts that "[t]he total value of the ongoing projects of [Senior] Cottages was therefore ... not less than $4,845,284.00," and that the amount of damages he may recover from the Defendants "has been established" accordingly.

The Plaintiff goes on to identify his causes of action in three separate counts of the complaint. In Count I, "Breach of Duty of Due Care and Negligence," he pleads:

> 41. Defendants had a duty to advise [Senior] Cottages of any proposed transactions that may adversely, or illegally, affect the rights of creditors of their clients.
> 42. Defendants' conduct in failing to advise [Senior] Cottages that the transactions were to an insider, were to be concealed, were by an insolvent entity and were therefore fraudulent, was a breach of reasonable duty to exercise due care and diligence.
> 43. As a direct result of Defendants' conduct, Plaintiff estate is subject to creditors' claims, interest and attorney fees to administer the estate in an amount of at least $7,000,000.

In Count II, "Aiding and Abetting Fraudulent Transfer," the Plaintiff states:

> *3 ... Defendants provided substantial assistance to [Senior] Cottages, Klane and MPLLC in effecting the fraudulent transfer of [Senior] Cottages assets and the control of MPLLC.

He states that the Defendants knew of the financial effect of the transfers as well as Klane's "several conflicts of interest and ... breach[ of] his fiduciary duties," and that

> 48. Defendants' conduct in failing to advise [Senior] Cottages of the breach of duties and in not refusing to aid and abet the fraudulent transfer was a breach of duty to exercise reasonable care and diligence.
> 49. Defendants, by breaching that duty, enabled Klane to conceal his actions and are liable to the beneficiaries of the fiduciary duty owed.

Finally, in Count III, "Equitable Subordination," the Plaintiff requests that the "Defendants' claims, if any, in [Senior] Cottages' or the bankruptcy case of any affiliate of [Senior] Cottages, ... be equitably subordinated to all other claims and interests holders [sic]."

*Motion at Bar.*

Defendants Morris and MCH elected to respond to the Plaintiff's complaint by making the motion at bar, rather than by serving an answer. The motion sounds under Fed.R.Civ.P. 12(b)(1) and (6), which are made applicable to this adversary proceeding by Fed. R. Bankr.P. 7012(b). [FN3] The movants advanced three different theories for their request for dismissal. The first two both go to Counts I and II of the Plaintiff's complaint; the third goes to Count III.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 453125
--- B.R. ---
(Cite as: 2005 WL 453125 (Bankr.D.Minn.))

Page 4

*Discussion.*
*1. Counts I and II: Standing.*

[1] The centerpiece of the motion is the argument that Counts I and II do not recite facts that would establish the Plaintiff's standing to sue the movants under the legal theories of those counts. This argument is properly raised through a motion under Rule 12(b)(6). When it is, the focus is on the adequacy of the facts pled in the complaint, which are to be assumed as true. *Pennell v. City of San Jose*, 485 U.S. 1, 7, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988) (citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). The movants argue that binding precedent conclusively denies the Plaintiff standing to maintain these causes of action, even assuming the truth of those facts that the Plaintiff has pled.

In the Eighth Circuit, the principal case on this issue is *In re Ozark Restaurant Equip. Co., Inc.*, 816 F.2d 1222 (8th Cir.1987), *cert. denied*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987). *Ozark* arose out of an adversary proceeding brought by a trustee against the individual and corporate principals of the debtor-corporation. In that adversary proceeding, the trustee invoked the "alter ego" doctrine under state law, seeking a judgment piercing the corporate veil of the debtor. His goal was to have the principals held individually liable for the debtor's debts. In so suing, the trustee purported to act "on behalf of all of [Ozark's] creditors," 816 F.2d at 1223, and to use a right of action available under Arkansas state law to individual creditors of a corporation when its "corporate structure [was] illegally or fraudulently abused to the detriment of a third person," 816 F.2d at 1224 (citation and added emphasis omitted).

*4 The bankruptcy court ordered judgment against the *Ozark* principals on the trustee's alter ego cause of action. [FN4] On their appeal, the district court reversed. [FN5] On the trustee's appeal from the district court, the Eighth Circuit focused on the issue of standing. It rejected all three statutory bases that the trustee argued for his standing, and affirmed the district court.

This adversary proceeding implicates only one of the *Ozark* trustee's theories. [FN6] That one, however, is the hingepin of the Plaintiff's argument and the movants' reply.

[2] As the Eighth Circuit noted in *Ozark*, "causes of action belonging to the *debtor* at the commencement of the case are included within the definition of property of the estate." 816 F.2d at 1225 (emphasis in original). *See also United States ex rel. Gebert v. Transport Admin. Servs.*, 260 F.3d 909, 913 (8th Cir.2001); *Whetzal v. Alderson*, 32 F.3d 1302, 1303 (8th Cir.1994); *Carlock v. Pillsbury Co.*, 719 F.Supp. 791, 856 n. 31 (D.Minn.1989); *In re Harrison*, 314 B.R. 751, 753 (B.A.P. 8th Cir.2004); *In re Forbes*, 215 B.R. 183, 190 (B.A.P. 8th Cir.1997). "Accordingly, whenever a cause of action 'belongs' to the debtor corporation, the trustee has the authority to pursue it in bankruptcy proceedings." *In re Ozark Restaurant Equip. Co., Inc.*, 816 F.2d at 1225. *See also Appletree Sq. 1 Ltd. P'ship v. O'Connor & Hannan*, 575 N.W.2d 102, 104 and n. 3 (Minn.1998).

[3] This proposition is deceptively simple, however. It is greatly qualified by two corollaries, also longstanding in Eighth Circuit bankruptcy jurisprudence. First, property rights that enter the bankruptcy estate under 11 U.S.C. § 541(a) come in subject to all of the limitations they had in the ownership of the debtor. *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir.1987). See also *In re Central Ark. Broadcasting Co.*, 68 F.3d 213, 214 (8th Cir.1995); *In re N.S. Garrott & Sons*, 772 F.2d 462, 466 (8th Cir.1985) (broad definition of property of estate under 11 U.S.C. § 541(a) does not "enlarge the debtor's rights against others beyond those existing at the commencement of the [bankruptcy] case"). Causes of action are no exception to this rule. E.g., *Stumpf v. Albracht*, 982 F.2d 275, 277-278 (8th Cir.1992) (debtor's cause of action for legal malpractice that passed into bankruptcy estate is subject to same statute of limitations as applied before debtor's bankruptcy filing).

Second, not all causes of action that arose out of the pre-petition operations of a debtor-corporation follow the conduit of § 541(a) into the estate. As to the obligations of third parties on account of "alter ego" liability centering around a debtor corporation,

> ... [w]here ... the applicable state law makes such obligations or liabilities run to the corporate creditors personally, rather than to the corporation, such rights of action are not assets of the estate under Section 541(a) that are enforceable by the trustee [under Section 704(1)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 453125                                                                                                                        Page 5
--- B.R. ---
(Cite as: 2005 WL 453125 (Bankr.D.Minn.))

].

*5 *In re Ozark Restaurant Equip. Co., Inc.*, 816 F.2d at 1225 (quoting 4 Collier on Bankruptcy, ¶ 541.10[8], at 541-69 to 541-70 (15th ed.1986) (interior quotation marks omitted). *See also In re B.J. McAdams, Inc.*, 66 F.3d 931, 935 (8th Cir.1995); *Stumpf v. Albracht*, 982 F.2d at 277.

The texts of the complaint and the Plaintiff's response to the present motion set forth his position, so far as an *Ozark* analysis would go: he asserts his standing under § 541, and he sues as successor to Senior Cottages on a cause of action that he says Senior Cottages held when it filed for Chapter 11. [FN7] Under the Eighth Circuit precedent, and in the context of a motion under Rule 12(b)(6), the issue is whether the Plaintiff has pleaded sufficiently that Senior Cottages, *in its own right*, suffered an injury that may be redressed under the legal theories of Counts I and II. It matters not that particular unsecured creditors of Senior Cottages, or even individual shareholders, can identify such an injury to their own interests. The Plaintiff did not succeed to the status of any of them, and he cannot maintain suit on any claim that they may have had in their individual capacity. Once the movants raised the issue of standing, it was incumbent on the Plaintiff to point out where, in the complaint, he had pleaded a specific injury to Senior Cottages itself, a harm to that debtor's own interests as a legal person, that would have given it a right to recover from the Defendants on a viable legal theory. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (to establish standing, plaintiff must have suffered concrete, particularized injury, either actual or imminent, traceable to defendant's challenged action, and must show likelihood that favorable decision would redress injury).

The Plaintiff has not done so. In his complaint, the Plaintiff views his status as a sort of dually-derived standing: "Trustee stands in the shoes of [Senior] Cottages and in the shoes of creditors of [Senior] Cottages as the estate." [FN8] However, the full text of the complaint cuts entirely to the wrong end of this duality. The Plaintiff repeatedly refers to the harmful results of the transfer of assets; however, he identifies *the creditors of Senior Cottages* as the intended target of the transfer, and those creditors as the parties who were "hindered and delayed" and deprived of recourse against the net worth of Senior Cottages. [FN9]

[4] As to both counts, the gravamen of the complaint goes exclusively to the impact of the transfer *on the creditors* who held claims against Senior Cottages: "as a direct result of Defendants' conduct, Plaintiff estate *is subject to creditors' claims*, interest and attorney fees to administer the estate in an amount of at least $7,000,000." [FN10] Though it nominally refers to the bankruptcy estate, this allegation clearly envisions that entity as no more than a vehicle for a recovery to benefit creditors for the losses they had incurred prior to the liquidation of Senior Cottages in bankruptcy. Nowhere, for instance, is there an allegation that the transfer deprived Senior Cottages of a viable ongoing enterprise that had a value in excess of the total of creditors' claims against it. [FN11] Certainly there is no allegation that such a deprivation would have given Senior Cottages a legal claim to damages from the Defendants, *in its own right*, outside of bankruptcy. [FN12]

*6 Under the complaint as pled, and even after the movants made their challenge, the Plaintiff structured the pleaded cause of action only with reference to an injury to the individual interests of creditors of Senior Cottages, as the basis for suit on both Counts I and II. The conclusion, then, is inescapable: the Plaintiff lacks standing to maintain a claim for such redress. *In re Ozark Restaurant Equip. Co., Inc.*, 816 F.2d at 1225-1226. *See also In re Petroleum Corp.*, 417 F.2d 929, 934 (8th Cir.1969) ("Generally, the trustee of a bankrupt has no power to press the general claims of the bankrupt's creditors against third parties."). He has not pleaded an injury to Senior Cottages itself, inflicted before the bankruptcy filing, such as would give standing to the bankruptcy estate as a successor-in-interest under § 541(a). *In re Ozark Restaurant Equip. Co., Inc.*, 816 F.2d at 1225.

Because of the Plaintiff's lack of standing on the facts he pleaded, he has not stated a claim upon which relief may be granted to the bankruptcy estate. *In re Stoll*, 252 B.R. 492, 495 (B.A.P. 9th Cir.2000). This failure to meet the hurdle of Rule 12(b)(6) implicates Rule 12(b)(1) as well. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir.2002). "If a plaintiff lacks standing, a court is without

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 453125            Page 6
--- B.R. ---
(Cite as: 2005 WL 453125 (Bankr.D.Minn.))

subject matter jurisdiction." *South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 591 (8th Cir.2003).

The movants, therefore, are entitled to have Counts I and II dismissed, as to them. *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir.2002) (to avoid dismissal, complaint must recite sufficient facts, as opposed to mere conclusions, to justify legal requirements of claim asserted); *Briehl v. General Motors Corp.*, 172 F.3d 623, 627 (8th Cir.1999).

### 2. Counts I and II: Substantive Content of Plaintiff's Pleading.

In the argument briefed to support their motion in the first instance, the movants concentrated on the issue of standing. They made only one argument going to the substantive dimension of the Plaintiff's pleading: the Minnesota enactment of the Uniform Fraudulent Transfer Act did not create a private right of action against a professional person who had advised the transferor in a transaction challenged as avoidable under that statute.

In a reply to the Plaintiff's response, the movants stacked on an argument that they structured with the traditional understanding of Rule 12(b)(6): Counts I and II did not contain enough fact averments to make out prima facie cases under their pleaded substantive theories.

Because the movants' challenge to these two counts is resolved at the more fundamental level of standing, it is not necessary to address the facial adequacy of these counts' pleading on its legal merits; that issue is moot.

### 3. Count III: Ripeness.

[5] The movants request dismissal of Count III on a different theory. They do not dispute that the Plaintiff has adequately pleaded facts that could satisfy the prerequisites for equitable subordination under 11 U.S.C. § 510(c). [FN13] Rather, they rely on the fact that they have not filed proofs of claim in the underlying case. Hence, the movants maintain, they do not have "allowed" claims as § 510(c)(1) contemplates by its terms, and Count III "is therefore unripe and premature."

*7 In response, the Plaintiff states that, after Senior Cottages filed for Chapter 11, MCH sent Senior Cottages and Klane invoices for attorney fees totaling over $43,000.00, for legal services rendered in defending those parties in pre-petition state court litigation by certain shareholders of Senior Cottages. Without speaking directly to the ripeness issue, the Plaintiff posits:

> The mutual liabilities of all of the bankrupt entities, including [Senior] Cottages, and [MCH] will not be untangled without substantial additional discovery. The full extent of the claims are unknown at this time.

[6][7] The movants were not out of line in pointing to the fact that there are no proofs of claim from them on file, even though this reference was to a circumstance evidenced outside the four corners of the Plaintiff's complaint. First, the court can take judicial notice of the status of its own claims register. *In re Gervich*, 570 F.2d 247, 253 (8th Cir.1976) (bankruptcy court properly took judicial notice of content of bankrupt's verified schedule of creditors). *See also In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 205 (3d Cir.1995) (allowing the taking of judicial notice of content of bankruptcy case file and docket for purpose of ascertaining timing and status of events in case). Second, on a motion under Rule 12(b)(6) the court can consider those extrinsic matters of which it can take judicial notice. *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). Since the Code specifies the filing of a proof of claim as the means to obtain an *allowed* claim, 11 U.S.C. §§ 502(a) and 501, and since subordination under § 510(c) works only on *allowed* claims by the very terms of that statute, the movants' argument is colorable. *See In re N. Parent, Inc.*, 221 B.R. 609, 630 (Bankr.D.Mass.1998).

In rejoinder, the Plaintiff relies on his own recitation of an extrinsic fact. However, this was his own conclusory allegation about an event in which he did not participate, and in any event an allegation made without foundation, unsworn, and in the text of a reply brief. This muddies the water considerably. In passing on a motion for dismissal under Rule 12(b)(6), the court need not ignore references to material outside the text of the complaint. Fed.R.Civ.P. 12(b). [FN14] However, the court can exclude such material from its consideration. *Id.* Where the recognition of such material would "convert" the motion to one for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 453125                                                                 Page 7
--- B.R. ---
(Cite as: 2005 WL 453125 (Bankr.D.Minn.))

summary judgment, the extrinsic material really should be presented in a format acceptable under Rule 56. The Plaintiff's skeletal, unverified references to hearsay do not qualify. *E.g., Mays v. Rhodes,* 255 F.3d 644, 648 (8th Cir.2001); *Duluth News-Tribune v. Mesabi Publ. Co.,* 84 F.3d 1093, 1098 (8th Cir.1996); *JRT, Inc. v. TCBY Sys., Inc.,* 52 F.3d 734, 737 (8th Cir.1995); *Firemen's Fund Ins. Co. v. Thien,* 8 F.3d 1307, 1310 (8th Cir.1993); *Walker v. Wayne County, Iowa,* 850 F.2d 433, 434 (8th Cir.1988); In *re Northgate Computer Sys., Inc.,* 240 B.R. 328, 337-339 (Bankr.D.Minn.1999).

*8 However, the Plaintiff's reference to the post-petition demand for payment by the movants can be properly construed as a "suggestion" that MCH may indeed hold a claim to be recognized as allowed, under the theory of "informal proof of claim." The Eighth Circuit has long recognized this principle. *See In re Haugen Const. Servs., Inc.,* 876 F.2d 681, 682 (8th Cir.1989); *In re Donovan Wire & Iron Co.,* 822 F.2d 38, 39 (8th Cir.1987); *Tarbell v. Crex Carpet Co.,* 90 F.2d 683, 685-686 (8th Cir.1937); *In re Faulkner,* 161 F. 900, 903 (8th Cir.1908); *In re Irvine,* 105 B.R. 502, 503 (D.Minn.1989); *In re Michels,* 286 B.R. 684, 690 (B.A.P. 8th Cir.2002); *In re Clapp,* 57 B.R. 921, 924 (Bankr.D.Minn.1986); *In re Hart Ski Mfg. Co., Inc.,* 5 B.R. 326, 327 (Bankr.D.Minn.1980). Under these cases, the basic issues are ones of fact. *Tarbell v. Crex Carpet Co.,* 90 F.2d at 685-686, as quoted in *In re Haugen Const. Servs., Inc.,* 876 F.2d at 682 and *In re Donovan Wire & Iron Co.,* 822 F.2d at 40 (qualification of informal communication to trustee as informal proof of claim turns on whether claimant was asserting claim against estate and was evidencing "an intention by the claimant to share in its assets"). *Cf. In re Hart Ski Mfg. Co., Inc.,* 5 B.R. at 327-328 (issue is whether informal communication constituted "adequate notice of the claim against the estate").

Here, the movants may say they do not wish to assert claims against the estate of Senior Cottages. However, there is nothing to prevent them from popping up later to assert the informal-proof-of-claim theory. An adjudication on that theory would relate back to the original informal assertion. The upshot of this is that the Plaintiff's request for equitable subordination does not lack ripeness, as a matter of law. There may be an allowed claim out there in favor of the movants right now, or at least one to be recognized as allowed and timely "filed," via future adjudication. Thus, the movants are not entitled to the dismissal of Count III, on the theory they argued.

ORDER
On the foregoing memorandum of decision,

IT IS HEREBY ORDERED:

1. Counts I and II of the Plaintiff's complaint are dismissed, as to Defendants Richard Morris and Morris, Carlson, Hoelsher, P.A.

2. Those Defendants' motion for dismissal of Count III is denied.

> FN1. The Debtors' cases were commenced as ones for reorganization under Chapter 11. They were converted to cases for liquidation under Chapter 7 on July 18, 2000.
>
> FN2. The Plaintiff does not recite anything more about the identity of "MPLLC" in the text of his complaint. However, it is clear that the reference is to an entity called Millennium Properties, LLC, which is the debtor in BKY 00-32002, a related case.
>
> FN3. Fed.R.Civ.P. 12(b) provides, in pertinent part, that
> ... the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, ... (6) failure to state a claim upon which relief can be granted ...
>
> FN4. The bankruptcy court's decision was published at 41 B.R. 476 (Bankr.W.D.Ark.1984).
>
> FN5. The district court's decision was published at 61 B.R. 750 (W.D.Ark.1986).
>
> FN6. The *Ozark* trustee's other two theories were premised on 11 U.S.C. §§ 544 and 105. The Eighth Circuit rejected his invocation of the "strong-arm" powers of § 544 to support an alter ego action, on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 453125                                                                                          Page 8
--- B.R. ---
(Cite as: 2005 WL 453125 (Bankr.D.Minn.))

several different bases. 816 F.2d at 1226-1228. The Plaintiff here did not even argue § 544 in his response, undoubtedly because 11 U.S.C. § 546(a)(1) would have barred him from doing so by the time he commenced this adversary proceeding. The Eighth Circuit made very short shrift of the *Ozark* trustee's third argument, a call to the bankruptcy court's "equity powers" under § 105(a); it reprised its longstanding refusal to consider that "all-writs" provision as a source of substantive law or structured remedies. 816 F.2d at 1230. Commendably enough, the Plaintiff here did not take a run at this much-cited but unsuited theory.

FN7. See ¶¶ 17, 41, 48, and 50 of the Plaintiff's complaint, and his *Response to Defendants' Motion to Dismiss*, at 4 ("Here, [the Plaintiff] is asserting two separate causes of action, one for a direct breach of the duty of care and the other for aiding and abetting the breach of a fiduciary duty. Both causes of action could have been brought by [Senior] Cottages prior to the bankruptcy petition and thus became property of the estates [sic].").

FN8. See paragraph 17 of the Plaintiff's "Adversary Complaint."

FN9. See ¶¶ 8, 27, 31, 41, and 47 of the Plaintiff's complaint.

FN10. The quotation is from paragraph 43 of the Plaintiff's "Adversary Complaint," with emphasis added. This paragraph appears in Count I. The corollary provision in Count II is paragraph 50: "as a direct result of Defendants' conduct, Plaintiff estate lost all of its assets of a value of at least $7,000,000.00."

FN11. This gap in fact averment goes also to the movants' alternate argument in their reply: even assuming standing in the Plaintiff, the complaint is facially deficient because it does not allege "but for" causation, a connection in historical fact from the Defendants' alleged negligence and intent to the total loss of viability in the operations of Senior Cottages. *Ross v. Briggs & Morgan*, 540 N.W.2d 843, 847 (Minn.1995); *See, e.g., Blue Water Corp., Inc. v. O'Toole*, 336 N.W.2d 279, 282 (Minn.1983); *Rampy v. Messerli*, 224 B.R. 701, 704 (D.Minn.1997). *See also Yusefzadeh v. Ross*, 932 F.2d 1262, 1264 (8th Cir.1991) (applying Minnesota law).

FN12. The inclusion of such an allegation might not have saved the cause of action, anyway. As a general rule, the principle of *in pari delicto* lies in a case where "a bankrupt corporation has joined with a third party in defrauding its creditors." This bars the trustee as successor to the corporation from suing the third party. *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991). *See also Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 350 (3d Cir.2001); *In re Hampton Hotel Investors, L.P.*, 289 B.R. 563, 575-576 (Bankr.S.D.N.Y.2003) (summarizing cases applying *Wagoner* to deny standing to trustees on claims against third parties). The claim against the third party "accrue[s] to the creditors, not to the guilty corporation." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d at 118. This rule applies to malpractice claims. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094 (2d Cir.1995). *See also In re Mediators, Inc.*, 190 B.R. 515, 528 (S.D.N.Y.1995). There is no allegation in the Plaintiff's complaint that the transfers of the assets of Senior Cottages were effected against the will of its management, officers, or directors, or in a fashion *ultra vires* or illegal under the law of corporate governance.

FN13. In pertinent part, this statute provides:
(c) ... after notice and a hearing, the court may--
(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim ...

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 453125                                                                                                          Page 9
--- B.R. ---
(Cite as: 2005 WL 453125 (Bankr.D.Minn.))

In *In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1282 (8th Cir.1988), the Eighth Circuit identified the elements that must be proved to merit this remedy. *But see United States v. Noland*, 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996).

FN14. The relevant text appears at the end of this rule:
If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

2005 WL 453125 (Bankr.D.Minn.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.