IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FEDERAL-MOGUL GLOBAL INC., | ) | Case No. 01-10578 (RTL) |
| T&N LIMITED, et al.,[1] | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | |
| COOPER INDUSTRIES, INC., | ) | |
| | ) | Related to Docket No. 6713 |
| Appellant, | ) | |
| | ) | Appeal No. 04-142 |
| v. | ) | Civ. Action No. 05-41 |
| | ) | |
| OFFICIAL COMMITTEE OF ASBESTOS | ) | |
| CLAIMANTS, OFFICIAL COMMITTEE OF | ) | |
| UNSECURED CREDITORS, LEGAL | ) | |
| REPRESENTATIVE FOR FUTURE | ) | |
| ASBESTOS CLAIMANTS, JPMORGAN | ) | |
| CHASE BANK, as Administrative Agent, | ) | |
| OFFICIAL COMMITTEE OF EQUITY | ) | |
| SECURITY HOLDERS, FEDERAL-MOGUL | ) | |
| GLOBAL INC., T&N LIMITED, et al., | ) | |
| | ) | |
| Appellees. | ) | |

### APPELLEES' RESPONSE TO COOPER'S
### MOTION TO STRIKE PORTIONS OF APPELLEES' BRIEF

Federal-Mogul Global Inc., T&N Limited et al. (collectively and as identified in footnote 1 hereto, the "Debtors"), the Official Committee of Asbestos Claimants, the Legal Representative for Future Asbestos Claimants, the Official Committee of Unsecured Creditors, JPMorgan Chase Bank, as Administrative Agent, and the Official Committee of Equity Security Holders (collectively, the "Appellees") hereby respond to Cooper Industries, LLC's ("Appellant" or "Cooper") motion to strike portions

---

[1] The Debtors are listed in the Appellees' Designation of Record on Appeal.

of the Appellees' brief (the "Motion to Strike"). The Motion to Strike should be denied because the Appellees were compelled to raise certain arguments and factual contentions *to respond to* the numerous new arguments that Cooper itself has made on Appeal for the first time and were never presented to the Bankruptcy Court.[2]

## ARGUMENT

### I. THE APPELLEES MAY MAKE NEW ARGUMENTS ON APPEAL IN RESPONSE TO THE APPELLANT'S NEW ARGUMENTS PRESENTED IN THE OPENING BRIEF.

In its Motion to Strike, Cooper contends that certain portions of the Appellees' brief should be stricken because they either (1) make reference to factual contentions that are not supported by the appellate record, or (2) assert arguments not raised in the Bankruptcy Court. For its position, Cooper cites the general rules that all cited facts should be accompanied by references to the appellate record, see Motion to Strike at 2, and that parties may not assert on appeal arguments that were not raised in the Bankruptcy Court, see Motion to Strike at 5-6. The Appellees do not dispute that these rules hold true in most cases. The rules, however, do not hold true in every case and are subject to exceptions, as even some of Cooper's own citations reveal. See, e.g., Barrett v. Commonwealth Fed. Savings & Loan Assoc., 939 F.2d 20, 26 (3d Cir. 1991) (explaining that reviewing court has discretion as to whether to consider new issue raised on appeal); Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 531 (3d Cir. 1999) (addressing on appeal issue not considered by lower court); Ichinose v. Homer Nat'l Bank (In re Ichinose), 946 F.2d 1169, 1174 (5th Cir. 1991)

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms by the Appellees' Brief.

2

(considering motions and orders even though not included in record on appeal); Mendolsohn v. Pappas (In re Pappas), 239 B.R. 448, 454 (E.D.N.Y. 1999) (recognizing exceptions to general rule and considering issue on appeal not addressed by lower court because parties devoted considerable attention to issue and argument was clearly presented by record). The instant Appeal is one such case in which an exception to these general rules applies.

In this case, it was necessary for the Appellees to make arguments not explicitly raised below and to make reference to facts not reflected in the appellate record *in order to respond to new arguments that Cooper made in its opening brief (the "Opening Brief") on appeal but had not raised in the Bankruptcy Court.* See Nghiem v. Ghazvini (In re Nghiem), 264 B.R. 557, 560 n.5 (9th Cir. B.A.P. 2001) (recognizing exception to general rule that reviewing court will not consider argument raised for first time on appeal where issue first raised and briefed by opposing party); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir. 1993) (considering on appeal evidence cited by one party in response to other party's misrepresentation, even though that evidence was not included in record). The Appellees have good reason why they did not raise some of the identified legal arguments and factual contentions in the Bankruptcy Court. They did not anticipate (nor could they have anticipated) that Cooper would make numerous new arguments on Appeal that would require such responses in order to be addressed fully by this Court. See Kane v. Town of Harpswell (In re Kane), 254 F.3d

infra) requires that the Appellees be permitted to raise the arguments set forth in the Appellees' Brief as a matter of fairness.

## II. THE APPELLANT'S OPENING BRIEF MADE NEW ARGUMENTS CONCERNING APPELLANT'S ALLEGED RIGHT OF SUBROGATION THAT WERE NOT MADE IN FRONT OF THE BANKRUPTCY COURT.

The cornerstone of Cooper's argument on Appeal, as presented by the Opening Brief, is that Cooper may subrogate itself to the rights of Pneumo Abex, including Pneumo Abex's alleged right to, in turn, subrogate itself to those asbestos claimants that Cooper has allegedly paid on behalf of Pneumo Abex. This basic contention and the arguments in support thereof were not argued in either the Motion[3] or Cooper's reply to the Plan Proponents' objection to the Motion, which were the principal pleadings before the Bankruptcy Court and the only pleadings addressed by the Appellees in the proceedings below. Rather than focus on or even articulate the basis for Cooper's alleged right of subrogation, the Motion instead argued, in relevant part, that (1) Cooper had complied with the Voting Procedures Order for voting a claim amount of $136,656,807.62 in Class J for certain of the Debtors, (2) Cooper had complied with the Voting Procedures Order for voting a claim number of 47,774 ballots in Class J for those same Debtors, and (3) the Bankruptcy Court, in the alternative, should temporarily allow Cooper's claims for voting purposes under Bankruptcy Rule 3018 in such amount and number.

Thus, not only did Cooper fail to present any subrogation argument in its pleadings before the Bankruptcy Court, but it repeatedly asserted in its pleadings a

---

[3] The term "Motion," as defined in the Brief, refers to Cooper's Motion to Enforce the Voting Procedures Order, which is the subject of the current Appeal.

contractual indemnity right, which is mutually exclusive from a right of subrogation.[4]
See, e.g., Appellant Ex. P at 15-16 (stating that certain of the Debtors "expressly agreed to indemnify Cooper" and that therefore they are liable to Cooper for the "full amount of the *claim*"); id. at 20 (arguing that a "contractual indemnitee" does not need to establish the underlying liability). Thus, while Cooper may assert that it had in other unrelated pleadings before the Bankruptcy Court noted its option to elect pursuit of either its indemnification claim or its subrogation right, Cooper at no point asserted a subrogation argument in connection with the Motion until well into the hearing on the Motion, and then only in response to a question directed to Cooper's counsel regarding whether Cooper had any direct liability to the asbestos claimants. See Appellant Ex. Q at 28-29. After a brief exchange between Cooper's counsel and the Bankruptcy Court on subrogation and its relationship to Cooper's Bankruptcy Rule 3005 argument, the Bankruptcy Court did not seek further discussion of subrogation from any party. Id. Furthermore, any argument at the hearing from the Appellees concerning subrogation would have been unnecessary (and impossible) because the Bankruptcy Court, finding in favor of the Appellees on this point, was unpersuaded by Cooper's subrogation argument as presented at the hearing and ruled that Cooper could vote one claim on each of the relevant Debtors' Plans in respect of Cooper's mutually exclusive indemnification claim. Id. at 54-56

---

[4] Although Cooper's Proofs of Claim noted that Cooper had reserved its rights under section 509, Cooper did not make any such argument in its pleadings on the Motion before the Bankruptcy Court.

Once Cooper brought this Appeal, Cooper made the following arguments in its Opening Brief that were not contained in Cooper's pleadings before the Bankruptcy Court:

(1) That section 509(a) of the Bankruptcy Code and the equitable doctrine of subrogation provided Cooper the right to vote on behalf of the asbestos claimants (see, e.g., Opening Brief at 26);

(2) That Bankruptcy Rule 3005 implements section 509(a) of the Bankruptcy Code and thus provided Cooper the right to file proofs of claim on behalf of and vote the claims of the asbestos claimants (id. at 27);

(3) That Cooper was seeking to subrogate itself to Pneumo Abex's rights, including Pneumo Abex's subrogation rights vis-à-vis the asbestos claimants (id.);

(4) That Cooper's co-liability with FM Products to Pneumo Abex made Cooper eligible for the benefits afforded by section 509(a) (id. at 28);

(5) That it was unnecessary for Pneumo Abex to file a proof of claim on its own behalf because Cooper had satisfied Pneumo Abex's obligations to the asbestos claimants (id. at 29);

(6) That a party may subrogate itself to another party's subrogation rights (id. at 32-33);

(7) That section 507 of the Bankruptcy Code does not preclude Cooper's subrogation rights (id. at 31-33);

(8) That Pneumo Abex meets section 509's requirements, including Pneumo Abex's own right to be subrogated to the rights of the asbestos claimants (id. at 34-35);

(9) That Delaware successor liability principles make FM Products directly liable to the asbestos claimants (id. at 35 n.13);

(10) That pursuant to Bankruptcy Rule 3005(b), Pneumo Abex had the right to vote the claims of the asbestos claimants (id. at 36); and

(11) That the equities and section 509 policy support Cooper's right to vote on behalf of the asbestos claimants (id. at 37-38).

In fact, Cooper's pleadings with respect to the Motion and its oral argument before the Bankruptcy Court did not present any arguments under section 509 of the Bankruptcy Code, which now form the backbone for Cooper's subrogation argument. Indeed,

Cooper's only mention of Pneumo Abex in its Bankruptcy Court pleadings was a passing reference in its explanation of the 1994 asset purchase transaction and was not in any way related to Pneumo Abex's subrogation rights under section 509, Bankruptcy Rule 3005 or any other equitable doctrine with respect to the asbestos claimants.

### III. APPELLEES' ARGUMENTS AND FACTUAL CONTENTIONS IDENTIFIED IN THE MOTION TO STRIKE WERE IN RESPONSE TO APPELLANT'S NEW ARGUMENTS ON APPEAL.

Confronted by this deluge of new arguments in Cooper's Opening Brief, and the Bankruptcy Court's finding that Cooper's subrogation rights would not permit Cooper to cast 47,774 votes, the Appellees were given no choice but to argue the factual and legal contentions with which Cooper finds fault in its Motion to Strike. First, with respect to the factual issues, the Appellees pointed the Court's attention to the Pneumo Abex proof of claim, which is the subject of the Appellees' pending motion to supplement the appellate record, in response to the factual and legal inaccuracies of Cooper's new contentions, briefed for the first time on Appeal, that filing a proof of claim on behalf of Pneumo Abex elevated Cooper to the alleged rights of not just Pneumo Abex but also the alleged rights of 47,774 asbestos claimants.[5] Second, the Appellees' discussion of the parties' practice and intent under the 1994 asset purchase agreement was made to challenge the factual accuracy of Cooper's new arguments alleging that FM Products was directly liable to the asbestos claimants pursuant to the terms of the 1994 asset purchase transaction. In fact, when questioned by the Bankruptcy Court, Cooper produced no evidence requested by the Bankruptcy Court that FM

---

[5] For example, as discussed in Part II, supra, Cooper made at least five new subrogation-related arguments (detailed on pages 5 and 6, paragraphs 3, 4, 5, 8, and 10, herein) that rested upon Pneumo Abex and/or Pneumo Abex's rights.

7

Products had assumed the asbestos liabilities of Pneumo Abex. Appellant Ex. Q at 10 (counsel for Cooper responding under questioning from the Bankruptcy Court that it did not have the assumption agreement in court); id. at 31-32 (counsel for Cooper responding that he was unsure regarding the assumption of liabilities). Third, the references to Cooper's proposed language for the Disclosure Statement were similarly necessary to address Cooper's new contentions concerning whether FM Products had assumed the asbestos liabilities under the 1994 asset purchase transaction and Cooper's new assertions that it elected to pursue its subrogation right rather than an indemnification claim. Finally, the Appellees' references to the preliminary reports concerning the votes cast in favor of the Plan by what appear to be the exact same claimants on whose behalf Cooper is asserting the right to vote was intended to demonstrate to the Court that if it is inclined to accept Cooper's new subrogation arguments (which, for the reasons discussed in the Appellees' Brief, it should not) further factual findings are necessary to determine the extent to which these votes have already been cast.[6]

Cooper's complaints regarding the legal arguments presented by Appellees are also easily disposed of in a similar way. First, as noted above, the Appellees' arguments concerning the impact of the Pneumo Abex proof of claim were necessary to respond to the multitude of arguments presented by Cooper concerning its ability to subrogate itself to Pneumo Abex's rights, as discussed in detail above. Second, Cooper argues that the Appellees should have challenged Cooper's election to pursue its

---

[6] For example, at the hearing on the Motion, the Bankruptcy Court asked Cooper if it had obtained releases from the asbestos claimants for FM Products that would have been consistent with Cooper's alleged right of subrogation. Appellant Ex. Q at 30. Cooper's counsel was unable to provide the Bankruptcy Court with any assurance or evidence that Cooper had obtained such releases of FM Products. Id.

subrogation rights before the Bankruptcy Court. Cooper never asserted such an election, however, before the Bankruptcy Court. Instead, Cooper tried to assert both an indemnification claim and a subrogation right, and had not until this Appeal presented its subrogation arguments for the first time and unequivocally stated that it has elected to pursue its rights of subrogation and not an indemnification claim. Third, the Appellees' related argument that Cooper's conduct was inconsistent with asserting a subrogation right also was necessitated by Cooper's failure to choose between its alleged indemnification claims and its alleged subrogation rights before this Appeal. Finally, Cooper's contention that the Appellees' Bar Date Order argument is a new argument presented on Appeal is baseless. As Cooper concedes, the Appellees made this argument before the Bankruptcy Court. Motion to Strike at 9. This argument was further necessitated on Appeal when Cooper raised new additional arguments regarding the permissibility of group and class proofs of claim. While certain courts (in the cases cited by Cooper in its Opening Brief) may have permitted such proofs of claim that complied with specific requirements in special circumstances, the Bankruptcy Court's Bar Date Order did not contain such provisions and Cooper never sought leave from the Bankruptcy Court to file such a claim.[7]

Given these facts, it is appropriate for this Court to consider the Appellees' arguments and factual contentions identified in Cooper's Motion to Strike because consideration of these issues is necessary for this Court to obtain a full

---

[7] Furthermore, contrary to Cooper's arguments raised in the Motion to Strike, if Cooper was submitting an indirect asbestos personal injury claim, as it has always contended, it was required to comply with the Bar Date Order. On the other hand, if Cooper was asserting direct asbestos personal injury claims on behalf of the asbestos claimants it was required to comply with the Voting Procedures Order when voting their claims. Cooper

9

understanding of the case and to make a correct adjudication of the issues first raised by Cooper on appeal. See Poss v. Morris (In re Morris), 260 F.3d 654, 664 (6th Cir. 2001) (explaining that reviewing court may address issue for first time on appeal if its resolution will materially advance litigation); Comm. Credit Corp. v. Reed, 154 B.R. 471, 474 (E.D. Tex. 1993) (explaining that reviewing court may choose to address issue for first time on appeal "if the argument may determine the outcome of the appeal").

## IV    ALTERNATIVE RELIEF

If, however, this Court does not deem it appropriate to consider the Appellees' arguments and factual contentions at this juncture and decides to strike portions from the Appellees' Brief, then any arguments and references in Cooper's Opening Brief to which the Appellees' challenged arguments and facts were responding should also be stricken on similar grounds.[8] Such relief is necessary to ensure that Cooper is not able to put forth a litany of new allegations and legal arguments on this Appeal while depriving the Appellees of a fair opportunity to respond thereto.

Alternatively, if this Court deems these arguments and factual contentions material but not appropriate for review at this stage, this Court should remand the issues to the Bankruptcy Court for consideration in the first instance. See Baker v. District of Columbia, 365 U.S. App. D.C. 47, 53 (D.C. Cir. 2003) ("The court will generally remand issues of collateral estoppel to the district court when they are raised for the first time on

---

did neither of these.

[8] In the event the Court determines this alternative relief is appropriate, the portions of Cooper's Opening Brief that present Cooper's new arguments are contained on pages 22-23 (new group and class proofs of claim arguments) and 26-38 (new subrogation-related arguments). In addition, the Court should strike from Cooper's Reply Brief pages 3-10 (new subrogation-related arguments), 14-16 (new Bar Date Order arguments), and 17-19

appeal."); Thomas v. Namba (In re Shari), 287 B.R. 782, 786 (9th Cir. B.A.P. 2003) (holding that when "an issue of good faith is raised for the first time on appeal" the appellate court should "remand to the lower court for the purpose of determining the factual question ...."); U.S. v. Greene (In re Greene), 145 B.R. 714, 717-18 (S.D. Ga. 1992)(finding that bankruptcy court should rule on issues raised by party for the first time on appeal).

## CONCLUSION

On this Appeal, Cooper has radically changed the focus and legal theories behind its claims from those put forth in the Bankruptcy Court. That eleventh-hour change has compelled the Appellees to respond appropriately. The Motion to Strike represents Cooper's attempt to benefit from its change of heart while denying the Appellees any effective ability to address Cooper's arguments. Such an attempt to unbalance the playing field should not be countenanced by this Court and the Motion to Strike should be denied.

---

(new equitable arguments).

WHEREFORE, for all of the reasons stated herein, the Appellees respectfully request that the Court deny the Motion to Strike or grant such other relief as requested herein.

Dated: Wilmington, Delaware
March 17, 2005

Respectfully submitted,

SIDLEY AUSTIN BROWN & WOOD LLP
James F. Conlan
Larry J. Nyhan
Kevin T. Lantry
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

-and-

*/s/ James E. O'Neill/*

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Attorneys for Debtors and Debtors-in-Possession

WHEREFORE, for all of the reasons stated herein, the Appellees respectfully request that the Court deny the Motion to Strike or grant such other relief as requested herein.

Dated: Wilmington, Delaware
      March 17, 2005

Respectfully submitted,

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
399 Park Avenue
New York, New York 10022
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

-and-

CAPLIN & DRYSDALE, CHARTERED
Peter Van N. Lockwood
Julie Davis
One Thomas Circle, N.W.
Washington, DC 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

-and-

CAMPBELL & LEVINE, LLC
Marla R. Eskin
Kathleen Campbell
800 North King Street, Suite 300
Wilmington, Delaware 19801
Telephone: (302) 426-1900
Facsimile: (302) 426-9947

Attorneys for Official Committee of
Asbestos Claimants

WHEREFORE, for all of the reasons stated herein, the Appellees respectfully request that the Court deny the Motion to Strike or grant such other relief as requested herein.

Dated: Wilmington, Delaware  
March 17, 2005

Respectfully submitted,

/s/

YOUNG CONAWAY STARGATT & TAYLOR LLP  
James L. Patton, Jr.  
Edwin J. Harron  
Maribeth L. Minella  
1100 North Market Street, 11th Floor  
Wilmington, Delaware 19899-0391  
Telephone: (302) 571-6600  
Facsimile: (302) 571-1253

Attorneys for Legal Representative for Future Asbestos Claimants

WHEREFORE, for all of the reasons stated herein, the Appellees respectfully request that the Court deny the Motion to Strike or grant such other relief as requested herein.

Dated: Wilmington, Delaware
       March 17, 2005

Respectfully submitted,

*/s/ Charlene D. Davis/*

THE BAYARD FIRM
Charlene D. Davis
Eric M. Sutty
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

Attorneys for the Official Committee of Unsecured Creditors

WHEREFORE, for all of the reasons stated herein, the Appellees respectfully request that the Court deny the Motion to Strike or grant such other relief as requested herein.

Dated: Wilmington, Delaware
       March 17, 2005

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP
Steven M. Fuhrman
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

-and-

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 658-6548

Attorneys for JPMorgan Chase Bank, as
Administrative Agent

WHEREFORE, for all of the reasons stated herein, the Appellees respectfully request that the Court deny the Motion to Strike or grant such other relief as requested herein.

Dated: Wilmington, Delaware
       March 17, 2005

Respectfully submitted,

*/s/ Robert V. Shannon*

BELL BOYD & LLOYD, LLC
David F. Heroy
Robert V. Shannon
70 West Madison Street
Three First National Plaza
Suite 3300
Chicago, Illinois 60602
Telephone: (312) 807-4315
Facsimile: (312) 827-8010

Attorneys for Official Committee of Equity Security Holders