## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

In re:

      FEDERAL MOGUL ET AL.,

               Debtors.

COOPER INDUSTRIES,

          Appellant,

v.

FEDERAL MOGUL GLOBAL ET AL.,

          Appellees.

CIVIL ACTION NO. 05-41 JHR

Bankruptcy Case 01-10578

---

### APPELLANT COOPER INDUSTRIES, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF APPELLEES' BRIEF THAT (I) ARE NOT SUPPORTED BY THE APPELLATE RECORD AND/OR (II) ASSERT ARGUMENTS NOT RAISED IN THE BANKRUPTCY COURT BELOW

**MORRIS, JAMES, HITCHENS & WILLIAMS LLP**
Stephen M. Miller (Bar No. 2610)
Carl N. Kunz, III (Bar No. 3201)
Thomas M. Horan (Bar No. 4641)
222 Delaware Avenue
Wilmington, DE 19801
Telephone: (302) 888-6800
Telecopy: (302) 571-1750

**GIBSON, DUNN & CRUTCHER LLP**
Michael A. Rosenthal
Aaron G. York
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone: (214) 698-3100
Telecopy: (214) 698-3400

Attorneys for Cooper Industries, LLC

DATED: March 23, 2005

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ......................................................................................... 1

II.   ARGUMENT ................................................................................................ 3

      A.    Cooper's Subrogation Rights Were Discussed in the Pleadings Below ................ 4

      B.    Cooper's Right To Subrogate Itself To Pneumo's Subrogation Rights Was
            a Central Focus of the Argument Before the Bankruptcy Court at the
            December 2, 2004 Hearing. .............................................................. 9

      C.    The Appellees Have Forever Waived the Arguments that They Did Not
            Adequately Present Below, So Such Issues Should Not Be Remanded. ............. 15

III.  CONCLUSION ............................................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Baker v. District of Columbia*, 326 F.3d 1302 (D.C. Cir. 2003)........................................ 16

*Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999).................................................................................................... 17

*Damian Servs. Corp. v. Freedom Personnel, Inc.*, 188 B.R. 107 (N.D.N.Y. 1995)......... 15

*Energrey Enter., Inc. v. Oak Creek Energy Systems, Inc.*, 119 B.R. 739 (E.D. Cal. 1990) ............................................................................................................................ 16

*In re Allegheny Int'l, Inc.*, 954 F.2d 167 (3d Cir. 1992) ...................................... 15

*Nghiem v. Ghazvini (In re Nghiem)*, 264 B.R. 557 (9th Cir. B.A.P.) ................................. 1

*Official Unsecured Creditors' Comm. v. Stern (In re SPM Mnfg. Corp.)*, 984 F.2d 1305 (1st Cir. 1993) ..................................................................................................... 3

*Thomas v. Namba (In re Shari)*, 287 B.R. 782 (9th Cir. B.A.P. 2002) ........................... 16

*U.S. v. Greene (In re Greene)*, 145 B.R. 714 (S.D. Ga. 1992) ......................................... 16

*Wildflower, Inc. v. Executive Air Servs. Inc. (In re Executive Air Servs.)*, 62 B.R. 474 (D. Utah 1986) ................................................................................................... 16

*Y.J. Sons & Co., Inc. v. Anemone, Inc. (In re Y.J. Sons & Co., Inc.)*, 212 B.R. 793 (D.N.J. 1997) ..................................................................................................... 15

Appellant Cooper Industries, LLC (successor by merger to Cooper Industries, Inc.) ("Cooper") hereby submits this reply to the Appellees' Response to Cooper's Motion To Strike Portions of Appellees' Brief (the "Response") (D.I. # 14) and in further support of Appellant Cooper Industries, LLC's Motion to Strike Portions of Appellees' Brief That (I) Are Not Supported By the Appellate Record and/or (II) Assert Arguments Not Raised In the Bankruptcy Court Below (the "Motion to Strike") (D.I. #12). In support hereof, Cooper states as follows:

## I.
## INTRODUCTION

The Appellees attempt to defend the new appellate arguments they have raised by claiming that "it was necessary for the Appellees to make arguments not explicitly raised below and to make reference to facts not reflected in the appellate record in order to respond to new arguments that Cooper made in its opening brief (the 'Opening Brief') on appeal but had not raised in the Bankruptcy Court." Response, p. 3.[1] This is incorrect. Cooper expressly raised its subrogation rights, and described the transactions giving rise to those rights, in the pleadings and argument below. In particular, as described below,

---

[1] In a parenthetical, the Appellees contend that *Nghiem v. Ghazvini (In re Nghiem)*, 264 B.R. 557, 560 n. 5 (9th Cir. B.A.P.) recognizes an "exception to [the] general rule that [a] reviewing court will not consider [an] argument raised for [the] first time on appeal where [the] issue [is] first raised and briefed by [the] opposing party." *See* Response, p. 3. However, *Nghiem* made clear that the opposing party first raised the issue *in the trial court*, not for the first time during the appeal itself. *See id.* ("Although generally an appellate court will not consider arguments raised for the first time on appeal, an appellate court will address arguments *that were before the trial court* because they were raised and briefed by the opposing party.") (emphasis added and citation omitted).

1

Cooper stated in its Voting Motion[2] that Cooper was relying on Federal Rule of

Bankruptcy Procedure ("Bankruptcy Rule") 3005's subrogation principles as the basis for

its vote.  Indeed, the Appellees devoted an entire section of their Voting Motion

Objection[3] to challenging whether Bankruptcy Rule 3005 would apply because the

Appellees claimed that the 47,774 asbestos claimants for whom Cooper cast votes did not

have direct claims against any of the Debtors.  Cooper directly responded to this

argument in its Voting Motion Reply.[4]

     More significantly, at the December 2, 2004 hearing in the Bankruptcy Court,

Cooper expressly argued that it was subrogated to the subrogation rights of Pneumo Abex

Corporation ("Pneumo"), which is the central issue now on appeal.  The Appellees never

challenged Cooper's ability to assert subrogation rights through Pneumo; instead, the

Bankruptcy Court raised this issue itself at the hearing.  Specifically, the Bankruptcy

_____

[2]  Cooper Industries, Inc.'s Motion (I) To Enforce Voting Procedures Order, Or (II) For
     An Order Pursuant to Fed. R. Bankr. P. 3018(A) Temporarily Allowing Claims For
     Voting Purposes (the "Voting Motion"), included at pages A-102 to A-131 in
     Appendix to Opening Brief of Appellant Cooper Industries, LLC (the "Appendix").

[3]  Objection of Plan Proponents To (A) Motion of Cooper Industries, Inc. (I) To
     Enforce Voting Procedures Order Or (II) For An Order Pursuant to Fed. R. Bankr. P.
     3018(a) Temporarily Allowing Its Claims For Voting Purposes (Docket No. 6268)
     And (B) Claims Asserted By Cooper Industries, Inc. (the "Voting Motion
     Objection"), annexed as Exhibit N to Appellant Cooper Industries, Inc.'s Statement of
     the Issues and Designation of Items To Be Included In the Record on Appeal (D.I.
     #6757).

[4]  Cooper Industries, Inc.'s Reply To Objection of Plan Proponents To (A) Motion of
     Cooper Industries, Inc. (I) To Enforce Voting Procedures Order Or (II) For An Order
     Pursuant to Fed. R. Bankr. P. 3018(a) Temporarily Allowing Its Claim For Voting
     Purposes (Docket No. 6268) and (B) Claims Asserted By Cooper Industries, Inc. (Re:
     Docket Nos. 6268 and 6425) (the "Voting Motion Reply"), included at pages A-133
     to A-153 in the Appendix.

Court questioned Cooper's counsel on whether the asbestos claimants had direct claims

against Cooper.  Cooper's counsel then explained at length the very chain of subrogation

rights that it subsequently presented in its Opening Brief to this Court.  At the conclusion

of the hearing, the Bankruptcy Court denied Cooper's entitlement to vote on behalf of the

47,774 asbestos claimants that Cooper satisfied on behalf of Pneumo and debtor Federal-

Mogul Products, Inc. ("FM Products") and *based its ruling on the very issue that the*

*Appellees claim was not raised*.  Accordingly, the discussion in Cooper's Opening Brief

that demonstrated how the transactions at issue permit it to subrogate itself to Pneumo's

subrogation rights cannot possibly be characterized as "new" arguments.  In contrast, the

Appellees' new defensive theories to those subrogation rights were not presented or

considered in any fashion by the Bankruptcy Court.  Accordingly, the Appellees have

waived those arguments and they should be stricken from the Appellees' Brief as Cooper

requested in its Motion to Strike.

## II.
## ARGUMENT

As Cooper stated in its Motion to Strike, when acting as an appellate court, the

District Court should not consider "a theory not raised before or considered by the

bankruptcy court."  *Official Unsecured Creditors' Comm. v. Stern (In re SPM Mnfg.*

*Corp.)*, 984 F.2d 1305, 1316 (1st Cir. 1993) (citation omitted).  In this case, Cooper

raised its subrogation position in its pleadings in the Bankruptcy Court, and Cooper

expressly argued at the December 2, 2004 hearing that it was subrogated to Pneumo's

subrogation rights, including Pneumo's right to vote on behalf of the 47,774 asbestos

claimants satisfied by Cooper.  The Court, in fact, based a portion of its ruling on this

very issue.  Thus, Cooper's legal position presented in its Opening Brief was both "raised

3

before" and "considered by the bankruptcy court."  In contrast, as the Appellees themselves admit in their Response to Cooper's Motion to Strike, the Appellees never raised in any manner, and the Bankruptcy Court never considered, the various defensive theories they have now presented in their Appellees' Brief.  Accordingly, the Appellees have forever waived those arguments, and they should be stricken from their Appellees' Brief.

**A.      Cooper's Subrogation Rights Were Discussed in the Pleadings Below.**

The Appellees' assertion that Cooper did not "present any subrogation argument in its pleadings before the Bankruptcy Court" is without merit.  *See* Response, p. 4. Cooper did in fact rely on subrogation principles in its pleadings below.  Indeed, the Appellees attempted to counter Cooper's subrogation right by arguing in their response papers that the asbestos claimants did not have claims against the Debtors.  Thus, Cooper plainly asserted its subrogation rights in the Bankruptcy Court.

While Cooper's primary focus in the Voting Motion was that the Bankruptcy Court should allow Cooper to vote the claims as set forth in its uncontested proofs of claim, as required by the Bankruptcy Court's Voting Procedures Order and section 502(a) of the Bankruptcy Code, Cooper opened its Voting Motion by concisely describing the transactions (including those involving Pneumo) creating its subrogation rights.[5]  *See* Voting Motion, pp. 3-5.  These are the very transactions Cooper described again in its Opening Brief.  *See* Opening Brief  pp. 5-7.

---

[5]  Given this description, Cooper cannot understand how the Appellees', in good faith, can contend that Cooper did not "even articulate the basis for Cooper's alleged right of subrogation . . . ."  *See* Response, p. 4.

After laying out the basic transactions in its Voting Motion, Cooper then

explained in several different places in the Voting Motion how it was asserting rights on

behalf of the asbestos claimants that it had paid. As just one example, Cooper explained:

> With respect to the number of votes in the classes, Cooper should be
> allowed one vote in Class H and 47,774 votes in Class J. As it had
> similarly done in its earlier proofs of claim, in its Second Amended Proofs
> of Claim, Cooper specifically stated:
>
>> As reflected on Exhibit A, Cooper has paid numerous asbestos
>> plaintiffs' law firms with respect to asbestos claims for which the
>> [Federal-Mogul Purchasers], FM Products (and potentially other
>> Debtors) are responsible. Attached hereto as Exhibit B is a list of
>> the names of such plaintiffs or, in some instances where numerous
>> claims were settled, the name of the lead plaintiff or law firm
>> representing the claimants. Pursuant to Rule 3005 of the Federal
>> Rules of Bankruptcy Procedure, to the extent necessary to preserve
>> their rights, Cooper and its Affiliates submit this amended proof of
>> claim in their own names, and in the name of each of the 47,774
>> plaintiffs reflected or represented on Exhibit A1 and/or Exhibit B,
>> as well as in the name of Pneumo Abex.
>
>> The total number of plaintiffs reflected on Exhibit A1 and Exhibit B to
>> Cooper's Second Amended Proofs of Claim is 47,774. Because this
>> amount can be determined as of the Voting Deadline in accordance with
>> section VI(a) of the Voting Procedures, and no party objected to Cooper's
>> proofs of claim, this should be the allowed number of Cooper's votes in
>> Class J for voting purposes.

Voting Motion, p. 14 (footnotes omitted); *see also* Voting Motion, p. 6-8 (explaining how

Cooper had filed claims on behalf of the asbestos claimants).

The Appellees understood that subrogation rights formed the basis for the votes

Cooper was asserting in its Voting Motion. Indeed, in their Voting Motion Objection, the

Appellees raised a few select issues in an attempt to counter Cooper's subrogation rights.

*See* Voting Motion Objection, pp. 14-17. However, rather than raise any of the legal and

factual arguments that they now put forth in their Appellees' Brief, the Appellees argued

that Cooper could not subrogate itself to the asbestos claimants because, they claimed,

"[t]he plaintiffs that have allegedly been paid by Cooper . . . have no 'rights to payment' from the Debtors and hence were never 'creditors' of the Debtors with respect to the claims that were allegedly paid by Cooper."[6]  *See* Voting Motion Objection, pp. 16-17. In making this argument, the Appellees even quoted from Bankruptcy Rule 3005, which amply demonstrates that they were aware Cooper was asserting the right to subrogation.

In addition, the Appellees also argued in their Voting Motion Objection that Bankruptcy Rule 3005 required Cooper to file tens of thousands of separate proofs of claim.  *See* Voting Motion Objection, pp. 15-16.  They did not, however, raise any of the new defensive arguments that they have now raised in their Appellees' Brief.  Had they done so, Cooper would have been able to respond and the Bankruptcy Court could have properly considered the factual disputes concerning these new defenses.

Indeed, Cooper directly addressed in its Voting Motion Reply the few defensive arguments that the Appellees did raise in their Voting Motion Objection to Cooper's ability to assert subrogation rights.  However, Cooper had no reason to present its legal argument concerning how it was subrogated to Pneumo's own subrogation rights *because the Appellees had not challenged Cooper's ability to subrogate itself to Pneumo's*

---

[6]  In making this argument, the Appellees acknowledged that Cooper was asserting that the asbestos claimants "have claims against Federal-Mogul Products, Inc. on a successorship theory . . ." Voting Objection, p. 17.  This contradicts the Appellees' claim that Cooper had not previously raised the argument that "successor liability principles make FM Products directly liable to the asbestos claimants."  *See* Response, p. 6.

*subrogation rights.*[7]  Thus, in its Voting Motion Reply, Cooper responded to the

Appellees' limited attack on its subrogation rights as follows:

> Fed. R. Bankr. P. 3005(a) states, in relevant part, that "[i]f a creditor has not filed a proof of claim . . . an entity that is or may be liable with the debtor to that creditor . . ., may, . . . execute and file a proof of claim in the name of the creditor, if known, or if unknown, in the entity's own name. . . ." In its proofs of claim, Cooper specifically alleged that "Cooper has paid numerous asbestos plaintiff's law firms with respect to asbestos claims for which the Buyers [including Federal-Mogul Corporation], FM Products (and potentially other Debtors) are responsible." Cooper further stated that it was attaching "a list of the names of such plaintiffs or, in some instances where numerous claims were settled, the name of the lead plaintiff or law firm representing the claimants." Finally, Cooper stated: "Pursuant to Rule 3005 of the Federal Rules of Bankruptcy Procedure, to the extent necessary to preserve their rights, Cooper and its Affiliates submit this amended proof of claim in their own names, and in the name of each of the plaintiffs reflected or represented on Exhibit A1 and/or Exhibit B, as well as in the name of Pneumo Abex." As stated numerous times, no party timely objected to Cooper doing so.

> Fed. R. Bankr. P. 3005(b) states that "[a]n entity which has filed a claim pursuant to the first sentence of subdivision (a) of this rule [3005] may file an acceptance or rejection of a plan in the name of the creditor, if known, or if unknown, in the entity's own name . . ." Fed. R. Bankr. P. 3005(b). Because Cooper had filed its proofs of claim, pursuant to rule 3005(a), in the names of the plaintiffs it had paid, it exercised its right to also file a rejection of the plan in the names of each of those creditors and its ballots should be counted as such as directed by the Federal Rules of Bankruptcy Procedure.

> The Plan Proponents claim that Cooper's entitlement to vote on behalf of the 47,774 claimants it has paid should be disregarded because it is purportedly based on "a single sentence in its proofs of claim." Objection, p. 15. This is not the case. To the contrary, Cooper's narrative explained in detail how the Buyers had expressly assumed direct liability to the claimants Cooper had paid. In addition, Cooper attached exhibits exceeding 100 pages in which it listed the names of the plaintiffs on whose behalf it was voting.

---

[7]  Instead, as described below, the Bankruptcy Court itself raised that particular issue at the December 2, 2004 hearing and Cooper responded to it at that time.

Next, the Plan Proponents claim that Cooper should have filed 47,774 separate claims in order to meet the requirements of Rule 3005(a). That is patently ridiculous. Rule 3005 does not set out such a requirement and requiring a creditor to file that much paper would be wasteful, especially when Cooper had already attached a voluminous list of the persons in whose name it was submitting its claims. Furthermore, bankruptcy courts in the District of Delaware have recognized that one creditor can file a single proof of claim on behalf of other creditors. *See In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 61 (Bankr. D. Del. 2002) (approving proof of claim filed by a single claimant "in the amount of $7,943,196.70 for a class of claimants comprised of 47 shareholders . . . "); *In re United Cos. Financial Corp.*, 277 B.R. 596, 600 (Bankr. D. Del. 2002) (noting that "[t]he vast majority of courts conclude that class proofs of claim are permissible in a bankruptcy proceeding.").[8]

The Plan Proponents also contend that Cooper has not established that the plaintiffs it has paid are creditors of Debtors. Not so. Cooper specifically alleged in its proofs of claim that it had paid claims for which Debtors were directly responsible and it explained the basis for that direct liability. Under section 502 of the Bankruptcy Code, Cooper's claim in this regard is allowed unless a party in interest has objected. No party did so within the time required by the Voting Procedures, so for voting purposes Cooper has established its claim.

Voting Motion Reply, pp. 17-19.

It is quite plain that Cooper did lay out the foundation for its subrogation rights in the pleadings presented to the Bankruptcy Court.[9] In response, the Appellees chose only to confront a few narrow issues, each of which Cooper answered. They did not, however, raise the factual and legal issues they now attempt to raise in their Appellees' Brief.

_____

[8] This passage, submitted to the Bankruptcy Court in November of last year, demonstrated the fallacy of Appellees' claim in a footnote that Cooper has asserted "new group and class proofs of claim arguments." Response p. 10 n. 8.

[9] Cooper also asserted the equities of its position in the Bankruptcy Court. As just one example, Cooper complained in its Voting Motion that "the Plan proposes to shuttle Cooper's asbestos-related claims against the Debtors to a trust that will not contain *any* financial resources with which to pay them." Voting Motion, p. 2.

**B.    Cooper's Right To Subrogate Itself To Pneumo's Subrogation Rights
Was a Central Focus of the Argument Before the Bankruptcy Court
at the December 2, 2004 Hearing.**

The Appellees did not themselves argue, in either their papers or in argument to

the Bankruptcy Court, that Cooper could not subrogate itself to the rights of asbestos

claimants that did not have direct claims against Cooper.  Instead, the Bankruptcy Court

*itself* raised that possibility at the December 2, 2004 hearing after Cooper's counsel again

described the transactions creating Cooper's subrogation rights.  Thus, the Appellees

would have waived even this issue had the Bankruptcy Court not raised it for them.[10]

Cooper's counsel directly addressed this issue by raising the arguments that Cooper later

presented in its Opening Brief on appeal.  The relevant portions of the lengthy discussion

between Cooper's counsel and the Bankruptcy Court concerning Cooper's subrogation

rights are as follows:

> MR. YORK: . . . . Concerning the number of Cooper's Class J votes, we
> stated in everyone of the proofs of claim we filed that we were filing the
> claim on behalf of ourselves, and on behalf of the asbestos plaintiffs we
> had paid on the case.  That's allowed by Rule 3005A.
>
> Even so, they claim that Cooper should have filed 47,000 separate pieces
> of paper in order to use Rule 3005A.  Number one, they didn't object to
> the proofs of claim where we said we were filing it on behalf of all these

---

[10]  The Appellees contend that "they have good reason why they did not raise some of
the identified legal arguments and factual contentions in the Bankruptcy Court"
because "they did not anticipate (nor could they have anticipated)" Cooper's
arguments.  Response p. 3.  This excuse does not hold water.  Cooper was plainly
asserting subrogation rights.  In response, the Appellees should have raised every
defensive argument that they thought had merit so the trial court could properly
evaluate the matter.  Doing so is not an act of "anticipation."  Instead, it is
fundamental legal analysis.  In fact, the Appellees did raise at least one defensive
argument in their pleadings below by arguing, ineffectively, that the asbestos
claimants did not have direct claims against FM Products.  There is no reason why the
Appellees could not have raised their other defensive arguments at the same time.

creditors.  Number two Rule 3005A doesn't say anything like that about filing a bunch of separate pieces of paper.  And to do that would be wasteful.  Cooper did enough by attaching 100 page exhibit that had all the names of the people that we were filing for.

THE COURT:  Now, why is any of the debtors directly liable to any of these injured asbestos claimants.

MR. YORK:  Your Honor, that goes back, I think, to your earlier question, which was, you know, they claim that these aren't creditors of the debtors.  We said in that proof of claim that they had assumed that liability.  And they, you know, they seem to say, well, you're coming out at us with this out of the blue.  Number one, its been in that proof of claim all along.

Number two, we've discussed this with them several times in this case.  We've said that's, you know, because they assumed the liability, under state successor law that means you're directly liable to claimants.  If they had a problem with it, they should have objected to these claims.  They didn't do that.

THE COURT:  All right, and how does Cooper have any direct liability to any of these injured parties?

MR. YORK:  Your Honor, the direct liability isn't to Cooper.  It's through Pneumo Abex.  But when Cooper pays Pneumo Abex, it gets, it steps into Pneumo Abex's shoes.  So Pneumo Abex is the one that was entitled to assert these claims in the shoes of the creditors, against the debtors.  Once we paid Pneumo Abex for those claims, we got to step into their shoes to pay, to assert the direct rights of the claimants against the debtors.  That's why we filed the proof of claim on behalf of not only the claimants, but Pneumo Abex.

THE COURT:  But Cooper guaranteed Wagner's liability to Pneumo Abex.

MR. YORK:  Right.

THE COURT:  Cooper didn't guarantee anybody's liability to an injured party

. . .

THE COURT:  Well, isn't that crucial for 3005?  It has to be either a party that's liable together with the debtor to a claimant, or someone who is guaranteed liability to a claimant.

MR. YORK:  Yes.  Your Honor, and let me try to work this through.  Because it's a little bit complicated.  *And I didn't expect it to be raised*

*because again, I think if they were going to raise it, I think they should have objected* to the claim in the first place. But, there is a chain here.

What happens is, and let me try to visualize it. Pneumo Abex is getting sued by asbestos plaintiffs. Okay. Now, those asbestos plaintiffs can also sue the debtors because they assumed the liability.

THE COURT: Which debtors?

MR. YORK: Federal Mogul Products. Okay.

THE COURT: Federal Mogul Products is the successor to Wagner?

MR. YORK: Right. Federal Mogul Products, yes, is Wagner. But because—remember, these claims are originally Pneumo Abex claims. So what happened is, [Pneumo Abex] sold the assets that created those claims to Federal Mogul Products. Federal Mogul Products indemnified Pneumo Abex for those claims, but also assumed them. So what that means at that point is, the asbestos plaintiffs can sue Federal Mogul Products or Pneumo Abex. Okay. See, Pneumo Abex is a co-debtor with Federal Mogul Products. That's the first step of the chain.

THE COURT: Right.

MR. YORK: Then you have Cooper standing at the top. Cooper has agreed to indemnify Pneumo Abex for those claims, okay. So once—

THE COURT: Now, what Cooper has done is Cooper has guaranteed Wagner's indemnity and assumption agreement?

MR. YORK: Right. So what happens is, that means is, Cooper then has to pay Pneumo Abex for these claims that Federal Mogul Products should be paying.

THE COURT: Right.

. . .

MR. YORK: So what happens is, Pneumo Abex and Federal Mogul are co-debtors to the asbestos plaintiffs. Okay.

THE COURT. Yes.

MR. YORK: Because Federal Mogul assumed the same liability. So [the asbestos plaintiffs] can sue both. Once Cooper pays Pneumo Abex, because Pneumo Abex can look to either Federal Mogul Products or Cooper, once Cooper pays Pneumo Abex, Cooper then steps into the shoes of Pneumo Abex. Remember, --do you understand that point?

11

THE COURT: Yes.

MR. YORK: It's a subrogation.

THE COURT: Subrogation. Right.

MR. YORK: So once Cooper pays those claims, it is Pneumo Abex. Pneumo Abex is a co-debtor to Federal Mogul Products. That's why again, we filed the proofs of claim in the name of Pneumo Abex so we could step into their shoes, and then on behalf of all the claimants we paid. That's why we were able to use 3005A. Again, they didn't object to it. But that's the reason. There is a legal basis for all of that.

. . .

THE COURT: . . . I understand your argument with regard to Federal Mogul Products because you're saying Federal Mogul Products has primary liability to these injured parties.[11]

MR. YORK: Right.

---

[11] The ellipses above indicate the omission of discussion between Cooper's counsel and the Bankruptcy Court concerning whether debtors **other than FM Products** had assumed direct liability to the Pneumo asbestos claimants. (Dec. 2 Tr. 29:12-33:9; A-182-A-186.). The Appellees attempt to twist this discussion to their own ends when they state, in a parenthetical in page 8 of their Response, that Cooper's counsel was "unsure regarding the assumption of liabilities." Response, p. 8. Cooper's counsel was unsure whether debtors other than FM Products had assumed that liability, but was absolutely positive that FM Products had assumed it. That is why, on appeal, Cooper is only asserting the right to vote the 47,774 asbestos claims against FM Products and not other debtors. Further, the statement that "Cooper produced no evidence requested by the Bankruptcy Court that FM Products had assumed the asbestos liabilities of Pneumo Abex" is similarly misleading. *See* Response, pp. 7-8. Cooper's proof of claim, of which the Bankruptcy Court took judicial notice, quoted from the section of the agreement where FM Products' predecessor, Wagner Electric Corporation, agreed to "assume and become liable for" those liabilities. (A-72.) As stated in Cooper's Opening Brief, the proof of claim is itself prima facie evidence of a valid claim unless the other party presents countervailing evidence. *See* Opening Brief, pp. 24-26. Further, the Bankruptcy Court actually ruled on the Voting Motion at the end of the hearing, and in its ruling it accepted the facts as presented by Cooper. Finally, if the Court would like to examine the 1994 Asset Purchase Agreement to confirm that Cooper quoted it accurately and precisely in its proof of claim, the Appellees attached it to their Motion For Leave to Supplement the Record On Appeal Instanter (D.I. # 10).

THE COURT:  And you step into the shoes of Pneumo by subrogation.
And that's how you get to have—yourself and the debtor having liability
to the same claimant.

(December 2, 2004 Hearing Transcript ("Dec. 2 Tr.") 24:23-29:18; 27:6-28:18; 28:24-

29:19; 33:9-16; A-177-A-186).

After Cooper finished its presentation to the Bankruptcy Court on December 2,

2004, the Appellees had their opportunity to address the Bankruptcy Court.  During their

presentation, however, they focused their efforts on arguing that Cooper had waived its

vote and that Cooper's effort to enforce the Bankruptcy Court's voting procedures was

untimely.[12]  (See Dec. 2 Tr. 35:2 -51:22; A-188–A-204.)  The Bankruptcy Court rejected

these contentions.  And as the Appellees themselves acknowledge in their Response, at

no time did the Appellees raise any of the arguments they now raise in their Appellees'

Brief with respect to Cooper's subrogation rights.

The Bankruptcy Court stated point blank that it understood Cooper's subrogation

argument, and it even repeated it.  (Dec. 2 Tr. 33:9-16; A-186.)  Prior to issuing its bench

ruling, however, the Bankruptcy Court did not question Cooper's counsel on whether a

party could legally subrogate itself to another party's subrogation rights.  Even so, at the

end of the December 2, 2004 hearing, the Bankruptcy Court ruled that Cooper could not,

as a matter of law, do so.  Consequently, the Bankruptcy Court's ruling makes it plain that

------------------------------------------------

12  The Appellees claim that "any argument at the hearing from the Appellees concerning
subrogation would have been unnecessary (and impossible)" because the Bankruptcy
Court ruled in favor of the Appellees on that point.  Response, p. 5.  This suggests
that the Bankruptcy Court ruled before allowing the Appellees to respond, which is
not the case.  The Appellees made their arguments to the Bankruptcy Court after
Cooper's counsel explained its subrogation theory and before the Bankruptcy Court
issued its ruling.

it considered, and based its ruling on, the very legal position that Cooper presented on this appeal in its Opening Brief:

> As to how many claims, I believe that Cooper should be allowed to vote one claim in each of the four cases. And for several reasons. I do believe there was technical noncompliance with Rule 3005. I also believe that 3005 does not apply here because the transactions that have been described to me don't put Cooper and any of the debtors into a situation where Cooper and the debtor are liable to the same injured claimant. . . .
>
> *And I don't believe that the Rule would countenance Cooper's subrogation claim at this point that because Cooper has paid claims that were asserted against Pneumo Abex, that Cooper's entitled to step into the shoes of Pneumo Abex, who may have had a direct liability to a personal injury claimant.* So I don't think Cooper can shoehorn itself under Rule 3005 into 48,000 individual claims to be counted. So I'm going to allow Cooper one vote in each of the four cases.

(Dec. 2 Tr. 54:17-54:24; 56:1-56:9; A-207-A-209 (emphasis added).).

Thus, the eleven discrete items that the Appellees enumerate on page 6 of their Response and argue were not contained in Cooper's "pleadings,"[13] were in fact encompassed in the argument presented to the Bankruptcy Court on December 2, 2004 when Cooper argued that it was subrogated to Pneumo's subrogation rights.[14] Further, the Bankruptcy Court plainly "considered" this legal position because it specifically ruled that Cooper could not, as a matter of law, subrogate itself to Pneumo's subrogation rights.

---

[13] The Appellees repeatedly assert that Cooper did not emphasize its subrogation arguments in its "pleadings", but even they must ultimately admit that Cooper "asserted a subrogation argument in connection with the Motion [at] the hearing on the Motion . . . ." Response, p. 6. However, they try to minimize that by stating that the discussion was "only in response to a question directed to Cooper's counsel regarding whether Cooper had any direct liability to the asbestos claimants." Response, p. 5. This simply proves Cooper's point that this issue was directly presented to and considered by the Bankruptcy Court.

[14] Further, many were also included in Cooper's pleadings as well.

14

Thus, the Appellees' argument that Cooper has taken a new and different legal position in its Opening Brief that was not urged or considered below should be rejected.

**C.    The Appellees Have Forever Waived the Arguments that They Did Not Adequately Present Below, So Such Issues Should Not Be Remanded.**

In the final section of their Response, the Appellees argue that if the Court determines that the Appellees' new legal issues and factual contentions are not appropriate for appellate review, it should "remand the issues to the Bankruptcy Court for consideration in the first instance." *See* Response, p. 10. In other words, the Appellees want two bites at the apple even though nothing prevented them from raising these issues below. This is not appropriate.

An appellate court can remand an issue that requires further factual development because of an error in the trial court, but should only do so if the party requesting remand actually presented (or tried to present) the question to the trial court. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 176-77 (3d Cir. 1992) (refusing to find waiver "either in bankruptcy court or on appeal" where issue "was before the [trial] court," even if not presented in clearest fashion, and remanding issue for further factual development.). In contrast, however, courts have refused to remand issues that were not presented in any manner to the trial court. *See, e.g., Y.J. Sons & Co., Inc. v. Anemone, Inc. (In re Y.J. Sons & Co., Inc.)*, 212 B.R. 793, 807 (D.N.J. 1997) ("Remand of the instant appeals to the Bankruptcy Court for consideration of Appellants' ability to pay is not warranted. The issue was not raised before the Bankruptcy Court and is raised only in the most conclusory fashion on appeal."); *Damian Servs. Corp. v. Freedom Pers., Inc.*, 188 B.R. 107, 110 (N.D.N.Y. 1995) ("[I]t would be an improper burden on the Bankruptcy Court to remand the case for trial of matters that should have been raised in the first instance.");

15

*Energrey Enter., Inc. v. Oak Creek Energy Sys., Inc.*, 119 B.R. 739, 749 (E.D. Cal. 1990)

(refusing to remand "an issue that apparently was never raised or tried below.");

*Wildflower, Inc. v. Executive Air Servs. Inc. (In re Executive Air Servs.)*, 62 B.R. 474,

479 (D. Utah. 1986) ("[I]t appears such information [concerning equitable claims] was

never presented to the court below, and in the absence of showing of error committed at

the trial court, this court has no basis upon which to remand appellant's equitable

claims.").[15]

     Here, the Appellees can show no error on the part of the Bankruptcy Court that

prevented them from raising the various new issues that they have now interjected on

appeal.  Further, the Appellees' new contentions are not based solely on legal arguments.

Instead, the Appellees' new arguments depend on factual issues that were not developed

---

[15] The Appellees have cited three cases for the proposition that an appellate court can remand an issue that is first raised on appeal.  *See* Response pp. 10-11, *citing Baker v. District of Columbia*, 356 U.S. App. D.C. 47, 53 (D.C. Cir. 2003); *Thomas v. Namba (In re Shari)*, 287 B.R. 782, 786 (9th Cir. B.A.P. 2002); *U.S. v. Greene (In re Greene)*, 145 B.R. 714, 717-18 (S.D. Ga. 1992).  In fact, each case involved a situation where the issue involved was either not a necessary part of the earlier proceeding, or could not have been raised earlier.  *See Thomas v. Namba*, 287 B.R. at 785 (remanding issue of whether purchaser's good faith mooted appeal from a sale under 11 U.S.C. § 363(b) because "an actual finding of 'good faith' is not an essential element for approval of a sale under § 363(b)."); *U.S. v. Greene*, 145 B.R. at 717-18 (allowing remand of issue raised by IRS on appeal because it did not receive notice of proceeding resulting in the order that it appealed, and therefore IRS had not appeared below); *Baker v. District of Columbia*, 326 F.3d 1302, 1307-08 (D.C. Cir. 2003) (remanding issue of collateral estoppel because allegedly preclusive "Virginia judgments were rendered after [appellant's] complaint had been dismissed and while his appeal was pending").  None of these cases apply to the instant situation where the new arguments that Appellees have asserted are defenses to an issue Cooper squarely raised below.

in the Bankruptcy Court and that are disputed.[16]  As a result, the Appellees have forever waived those issues and this Court should not remand those matters to the Bankruptcy Court.

## III.
## CONCLUSION

The record demonstrates that Cooper's legal position concerning its ability to subrogate itself to Pneumo's subrogation rights was both raised before, and considered by, the Bankruptcy Court.  But the same cannot be said of the Appellees' efforts on appeal to restrict Cooper's subrogation rights.  Because such contentions were not raised below, and they are not in fact responses to new arguments made by Cooper, the Appellees have forever waived them and they should be stricken from the Appellees' Brief.

---

[16]  In sharp contrast is *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527,531 (3d Cir. 1999), which is cited in the Appellees' Response for the proposition that an appellate court can consider an issue not considered by the trial court.  There the Court noted:  "The underlying order in this case does not indicate whether the District Court considered Calpine's standing. Because the facts of this case are not in dispute, however, it is appropriate for us to address this issue in the first instance."  *Id.*

DATED:  March 23, 2005

Respectfully submitted,

**MORRIS, JAMES, HITCHENS
& WILLIAMS LLP**

*Thomas M. Horan*

Stephen M. Miller (Bar No. 2610)
Carl N. Kunz, III (Bar No. 3201)
Thomas M. Horan (Bar No. 4641)
222 Delaware Avenue
Wilmington, DE  19801
Telephone:  (302) 888-6800
Telecopy:  (302) 571-1750
Email:  smiller@morrisjames.com
Email:  ckunz@morrisjames.com
Email:  thoran@morrisjames.com

AND

**GIBSON, DUNN & CRUTCHER LLP**
Michael A. Rosenthal
Aaron G. York
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone:  (214) 698-3100
Telecopy:  (214) 698-3400
Email:  mrosenthal@gibsondunn.com
Email:  ayork@gibsondunn.com

Attorneys for Cooper Industries, LLC

50203881_4.DOC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | |
| FEDERAL-MOGUL GLOBAL, INC., ) | |
| et al., ) | |
| ) | |
| Debtor. ) | |
| _____) | |
| COOPER INDUSTRIES, INC., ) | |
| ) | |
| Appellant, ) | Civil Action No. 05-41 JHR |
| ) | |
| v. ) | |
| ) | Bankruptcy Case 01-10578 |
| FEDERAL-MOGUL GLOBAL, INC., et al.,) | |
| ) | |
| Appellees. ) | |
| _____) | |

## AFFIDAVIT OF KIM RAULSOME, PARALEGAL

STATE OF DELAWARE    :
                     : SS
NEW CASTLE COUNTY    :

    I, Kim Raulsome, certify that I am, and at all times during the service, have been an employee of Morris, James, Hitchens & Williams LLP, not less than 18 years of age and not a party to the matter concerning which service was made. I certify further that on March 23, 2005, I caused service of the following:

**APPELLANT COOPER INDUSTRIES, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF APPELLEES' BRIEF THAT (I) ARE NOT SUPPORTED BY THE APPELLATE RECORD AND/OR (II) ASSERT ARGUMENTS NOT RAISED IN THE BANKRUPTCY COURT BELOW**

    Service was completed upon the parties on the attached list in the manner indicated thereon.

Date:    March 23, 2005

                                     _____
                                     Kim Raulsome

SWORN AND SUBSCRIBED before me this 23rd day of March, 2005.

NOTARY

My commission expires: _____

ELLEN J. ZICKEFOOSE
Notary Public - State of Delaware
My Comm. Expires Feb. 21, 2007

**VIA HAND DELIVERY**
Laura Davis Jones, Esq.
James E. O'Neill, Esq.
PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19801
*(Counsel for the Debtors and Debtors-In-Possession)*

Frank Perch, Esq.
Office of the U.S. Trustee
844 King Street
Suite 2313, Lockbox 35
Wilmington, DE 19801
*(U.S. Trustee)*

Mark D. Collins, Esq.
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
*(Counsel for JP Morgan Chase Bank, as Administrative Agent)*

Charlene D. Davis, Esq.
Eric Sutty, Esq.
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
*(Counsel to the Creditors' Committee)*

Marla Eskin, Esq.
Kathleen Campbell, Esq.
CAMPBELL & LEVINE LLC
800 North King Street, Suite 300
Wilmington, DE 19801
*(Counsel for Official Committee of Asbestos Claimants)*

**VIA HAND DELIVERY**
Theodore J. Tacconelli, Esq.
Rick S. Miller, Esq.
FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
*(Counsel for the Official Committee of Asbestos Property Damage Claimants)*

James L. Patton, Jr., Esq.
Edwin J. Harron, Esq.
Maribeth L. Minella, Esq.
YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 10900-0391
*(Counsel for Eric D. Green, the Futures Representative)*

**VIA FIRST CLASS MAIL**
Larry J. Nyhan, Esq.
James F. Conlan, Esq.
Kevin T. Lantry, Esq.
Kenneth P. Kansa, Esq.
SIDLEY AUSTIN BROWN & WOOD
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603
Facsimile: (312) 853-7036
*(Counsel for the Debtors and Debtors-In-Possession)*

Catherine L. Cooksey, Esq.
Richard T. Peters, Esq.
Kevin T. Lantry, Esq.
SIDLEY AUSTIN BROWN & WOOD
555 West 5th Street, Suite 4000
Los Angeles, CA 90013
Facsimile: (213) 896-6600
*(Counsel for the Debtors)*

**VIA FIRST CLASS MAIL**
Steven M. Fuhrman, Esq.
SIMPSON, THACHER & BARTLETT
425 Lexington Avenue
New York, N.Y. 10017-3954
Facsimile: (212) 455-2502
*(Counsel for JP Morgan Chase Bank, as*
*Administrative Agent)*

Gregory D. Willard, Esq.
BRYAN CAVE LLP
211 North Broadway
St. Louis, MO 63102
Facsimile: (314) 259-2020
(Counsel to the Agent for the Debtors'
*Prepetition Secured Lenders and Counsel to*
*the Agent for the Debtors' Postpetition*
*Lenders)*

Peter D. Wolfson, Esq.
John A. Bicks, Esq.
SONNENSCHEIN, NATH &
ROSENTHAL LLP
1221 Avenue of the Americas
24th Floor
New York, N.Y. 10020
Facsimile: (212) 768-6800
*(Counsel to the Creditors' Committee)*

Robert B. Millner, Esq.
Thomas A. Labuda, Jr., Esq.
SONNENSCHEIN, NATH &
ROSENTHAL LLP
8000 Sears Tower
Chicago, IL 60606
Facsimile: (312) 876-7934
*(Counsel to the Creditors' Committee)*

**VIA FIRST CLASS MAIL**
Michael Yetnikoff, Esq.
David Heroy, Esq.
BELL, BOYD & LLOYD LLC
70 West Madison Street
Three First National Plaza
Suite 3300
Chicago, IL 60602
Facsimile: (312) 827-8000
*(Counsel to Equity Committee)*

Peter Van N. Lockwood, Esq.
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, DC 20005
Facsimile: (202) 429-3301
*(Counsel for Official Committee of Asbestos*
*Claimants)*

Elihu Inselbuch, Esq.
CAPLIN & DRYSDALE, CHARTERED
399 Park Avenue
New York, N.Y. 10022
Facsimile: (212) 644-6755
*(Counsel for Official Committee of Asbestos*
*Claimants)*

Martin J. Bienenstock, Esq.
Michael P. Kessler, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Facsimile: (212) 310-8007
*(Counsel for the Official Committee of*
*Asbestos Property Damage Claimants)*

Ian Connor Bifferato, Esq.
Megan N. Harper, Esq.
BIFFERATO BIFFERATO &
GENTILOTTI
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165
*(Counsel to Equity Committee)*