**EXHIBIT A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:

FEDERAL MOGUL ET AL.,

Debtors.

COOPER INDUSTRIES,

Appellant,

v.                                              CIVIL ACTION NO. 05-41 JHR

                                                Bankruptcy Case 01-10578

FEDERAL MOGUL GLOBAL ET AL.,

Appellees.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
HONORABLE RAYMOND T. LYONS

## SUPPLEMENTAL BRIEF OF APPELLANT COOPER INDUSTRIES, LLC
## CONCERNING BANKRUPTCY CODE SECTION 509(b)(2)

Stephen M. Miller (DE Bar No. 2610)
MORRIS, JAMES, HITCHENS & WILLIAMS
LLP
222 Delaware Avenue
Wilmington, DE 19801
Telephone: (302) 888-6853
Telecopy: (302) 571-1750

Michael A. Rosenthal
Aaron G. York
GIBSON DUNN & CRUTCHER LLP
2100 McKinney Ave., Suite 1100
Dallas, TX 75201
Telephone: (214) 698-3100
Telecopy: (214) 698-3400

ATTORNEYS FOR APPELLANT
COOPER INDUSTRIES, LLC

DATED: June 9, 2005

## TABLE OF CONTENTS

Page

INTRODUCTION..................................................................................................................1

ARGUMENT ......................................................................................................................1

1204917

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Celotex Corp. v. Allstate Ins. Co. (In re Celotex Corp.)*,
   289 B.R. 460 (Bankr. M.D. Fla. 2003) ........................................................................ 7

*Cooper v. Cooper (In re Cooper)*,
   83 B.R. 544 (Bankr. C.D. Ill. 1988) ................................................................. 4, 5, 6

*In re Fiesole Trading Corp.*,
   315 B.R. 198 (Bankr. D. Mass. 2004) ................................................................. 2, 3

*In re Trasks' Charolais*,
   84 B.R. 646 (Bankr. D.S.D. 1988) ................................................................. 3, 4, 6, 7

*Mason v. Pa. Dept. of Revenue (In re Davis)*,
   145 B.R. 499 (Bankr. W.D. Pa. 1992) ...................................................................... 3

*Pandora Indus., Inc. v. Paramount Communications, Inc. (In re Wingspread Corp.)*,
   145 B.R. 784 (S.D.N.Y. 1992), *aff'd*, 992 F.2d 319 (2d Cir. 1993) .......................... 3, 4, 5

*Patterson v. Yeargin (In re Yeargin)*,
   116 B.R. 621 (Bankr. M.D. Tenn. 1990) .................................................................. 3

*Robbins Int'l v. Robbins MBW Corp. (In re Robbins Int'l, Inc.)*,
   275 B.R. 456 (S.D.N.Y. 2002) .................................................................................. 5

*Rubenstien v. Ball Bros. (In re New England Fish Co.)*,
   749 F.2d 1277 (9th Cir. 1984) .................................................................................. 5

## Statutes

11 U.S.C. § 509(a) .......................................................................................... 2, 5

11 U.S.C. § 509(b)(2) ............................................................................... passim

## INTRODUCTION

Appellant Cooper Industries, LLC (successor by merger to Cooper Industries, Inc.) ("Cooper") submits this supplemental brief to address the application of section 509(b)(2) of the Bankruptcy Code to Cooper's ability to subrogate itself, through Pneumo Abex Corporation ("Pneumo"), to the rights of the asbestos tort plaintiffs to vote in this case. As the Court will recall, the Appellees raised section 509(b)(2) for the first time at the oral argument on June 6, 2005. This supplemental brief demonstrates that section 509(b)(2) of the Bankruptcy Code does not preclude Pneumo from subrogating itself to the votes of the asbestos tort plaintiffs against debtor Federal-Mogul Products, Inc. ("FM Products") because FM Products, rather than Pneumo, is the entity "ultimately liable" for the costs associated with the asbestos tort plaintiffs. Because Pneumo can subrogate itself to the tort plaintiffs rights, and Cooper is subrogated to Pneumo's rights, Cooper was entitled to cast votes on behalf of the asbestos tort plaintiffs in this case.

## ARGUMENT

Section 509(b)(2) of the Bankruptcy Code states: "[An] entity is not subrogated to the rights of [a] creditor to the extent that—*as between the debtor and such entity*, such entity received the consideration for the claim held by such creditor." 11 U.S.C. § 509(b)(2) (emphasis added). At first glance, it is difficult to interpret this language, especially in the context of a case like this that involves the assertion of subrogation rights related to the claims of tort plaintiffs who, although allegedly injured, provided no consideration to FM Products, Cooper or Pneumo, rather than, for example, the more typical case that involves the assertion of subrogation claims by a surety/guarantor who pays off the debtor/borrower's obligation for a loan received from a lender. However, as described herein, courts interpreting this section have adopted a test that focuses on which party, as between the

1

debtor and the party claiming subrogation, is ultimately responsible for payment of the costs associated with the underlying claim.  In this case, FM Products is the party that must ultimately pay, because FM Products not only assumed direct liability to the asbestos tort plaintiffs, but it also agreed to indemnify Pneumo from any costs related to those claimants.

Section 509(b)(2) plainly does not prohibit a party from exercising a right of subrogation just because it is directly liable to the underlying creditor.  In fact, an entity's direct liability "with the debtor on . . . a claim of a creditor against the debtor" is a prerequisite to the exercise of subrogation rights under section 509(a).  Thus, courts have interpreted section 509(b)(2) only to proscribe subrogation by the party that is "ultimately liable" on the debt.  *See, e.g., In re Fiesole Trading Corp.*, 315 B.R. 198, 202 n.6 (Bankr. D. Mass. 2004).  In fact, the legislative history says exactly that.  *See* 124 Cong. Rec. H. 11095 (Sept. 28, 1978); S. 17411-12 (Oct. 6, 1978) ("Section 509(b)(2) reiterates the well-known rule that prevents a debtor that is ultimately liable on the debt from recovering from a surety or co-debtor.").

As the court explained in *In re Fiesole*:

> To say that an entity has 'received the consideration for the claim' or has discharged only its primary liability simply because it pays on a debt for which it has some personal obligation would render § 509 meaningless.  Entities are required to have some sort of personal obligation to pay the claim before subrogation will be available; even guarantors have 'personal liability' for the amounts they promise to pay.  Discharging one's liability, therefore, cannot alone be a bar to subrogation.

315 B.R. at 207 n. 14.  Instead, section 509(b)(2) "looks to compare the obligations of the subrogee to those of the debtor—'as between the debtor and such entity,'" and denies subrogation only when, as between the debtor and the party claiming subrogation, the party claiming subrogation is the party that should ultimately bear the loss related to the claim.  *Id*.  Therefore, in evaluating whether section 509(b)(2) bars subrogation here, the

2

Court must determine, as between the debtor (here, FM Products) and the alleged

subrogee (here, Pneumo, because Cooper is subrogating itself to Pneumo's own

subrogation right), which entity has "ultimate" liability[1] to bear the costs related to the

asbestos tort claimants.  *See id.*[2]

      There is no question that, as between FM Products and Pneumo, FM Products is

ultimately liable to bear the costs related to the asbestos tort plaintiffs because FM

Products expressly assumed that liability from Pneumo and agreed to indemnify Pneumo

from any claims related thereto.  *See, e.g., In re Trasks' Charolais*, 84 B.R. 646, 649

(Bankr. D.S.D. 1988).  In *Trasks' Charolais*, Milton Trask claimed a right of subrogation

under section 509(a) of the Bankruptcy Code for amounts he had to pay a third party

under a contract for deed.  84 B.R. at 647.  Milton Trask was the original party to this

---

[1] Some courts that lean too heavily on the term "primary liability" rather than employ the term "ultimate liability" appear to have reached incorrect results by refusing to allow parties that have direct liability to a third party from subrogating themselves to that party's rights.  *See e.g., Mason v. Pa. Dept. of Revenue (In re Davis)*, 145 B.R. 499, 501 (Bankr. W.D. Pa. 1992) (refusing to allow subrogation because the alleged subrogee satisfied "their personal liability for the taxes").  A case cited by the Appellees at oral argument appears to be one of these.  *See Patterson v. Yeargin (In re Yeargin)*, 116 B.R. 621, 623 (Bankr. M.D. Tenn. 1990) (refusing to allow subrogation where a party discharged a tax liability of debtor corporation because he was also directly liable for it).  Again, if this analysis were correct, it would "render § 509 meaningless" because section 509 requires co-liability.  *In re Fiesole*, 315 B.R. at 207 n. 14.  Thus, the proper focus is on who has "ultimate" liability as between the debtor and the party claiming subrogation.

[2] *See also Pandora Indus., Inc. v. Paramount Communications, Inc. (In re Wingspread Corp.)*, 145 B.R. 784 789-90 (S.D.N.Y. 1992), *aff'd*, 992 F.2d 319 (2d Cir. 1993).  In *Pandora*, the Court explained the analysis as follows:  "But the relevant question in the subrogation context is not simply whether the party is directly liable, but rather whether its payments was used to satisfy *another's* obligation.  The question is sometimes conceived as one of 'ultimate' liability—a question that can be answered by determining which of the liable parties received the consideration."  *Id.* at 790.

contract for deed, but he assigned it to four of his younger relatives and the relatives assumed the liability under it. *Id*. at 649. When the relatives failed to make the payments on the contract for deed, Milton Trask made the payments and claimed his subrogation right for doing so. *Id*. at 648. Another party objected and claimed that subrogation was not allowed because Milton Trask was allegedly "primarily" liable on the contract for deed. *Id*. at 647.

The court disagreed, finding that the relatives that assumed the liability under the contract for deed were primarily (or ultimately) liable, and Milton Trask was merely a surety as the assignor. First, the court articulated a basic principle: "'[W]here one party to a contract, as part of the agreement, assumes an indebtedness owing by the other to a third person, the one assuming the indebtedness becomes the principal, the former debtor a surety . . . .'" *Id*. at 649, *quoting* 72 C.J.S. Principal and Surety § 40 at 532 (1951). Because, under the assignment related to the contract for deed, "the younger Trasks agreed to assume the duties and obligations of the contract," the Court concluded that "Milton Trask is not primarily liable on the contract." *Id*. Instead, "when he [Milton Trask] assigned his interest to the younger Trasks, he became a surety for their performance of the contract." *Id*. Thus, Milton Trask should not bear the costs and he was entitled to subrogation for payments he made on the contract for deed. *Id*.

The court reached the same conclusion in *Cooper v. Cooper (In re Cooper)*, 83 B.R. 544, 548 (Bankr. C.D. Ill. 1988). In that case, a husband agreed in a separation agreement with his wife that he would be obligated to pay the taxes owed by the couple. *Id*. at 545. Later, the former wife was forced to "pay a number of debts [the former husband] *had assumed* under the divorce decree" including the taxes owed to the IRS. *Id*.

4

(emphasis added). Thus, when the former husband filed for bankruptcy, the former wife

claimed that she could be subrogated, under section 509(a), to the IRS's rights to have the

taxes determined to be nondischargeable in bankruptcy. *Id.* The former husband

objected, claiming section 509(b)(2) applied because the former wife was jointly and

severally liable for the taxes, and she received consideration in the form of a release of

her obligations from the IRS. The Court rejected this argument because the husband had

agreed to pay the taxes when he assumed the liability in the divorce decree:

> This argument is without merit. The statute looks to the relationship
> between the debtor and the codebtor in terms of which one received the
> consideration giving rise to the obligation. Here, there is no doubt that
> [the former husband], not [the former wife], received the consideration
> resulting from [the former wife's] payment, since the payment was in
> satisfaction of [the former husband's] obligation under the divorce decree
> to pay the full amount of the taxes.

*Id.* at 547. As a result, the Court concluded: "The result is clear. [The former husband]

owes [the former wife] for her payment of the obligation *he was to assume* under the

divorce decree" and the Court held that the former wife "is subrogated to the claim of the

IRS." *Id.* at 548 (emphasis added).[3]

---

[3] Even a case cited by the Appellees at the oral argument makes clear that a party that
assumes direct liability to a claimant becomes ultimately liable to that claimant. *See
Rubenstien v. Ball Bros. (In re New England Fish Co.),* 749 F.2d 1277, 1282 (9th Cir.
1984) (denying subrogation because the alleged subrogee "did not pay a debt for which
[debtors] were primarily liable" because the debtors "did not intend to assume direct
obligations" to the creditor). This further shows that a party that *does* intend to assume a
direct obligation to a creditor becomes ultimately liable to that creditor. *See id.; see also
Robbins Int'l v. Robbins MBW Corp. (In re Robbins Int'l, Inc.),* 275 B.R. 456, 472
(S.D.N.Y. 2002) (noting that the Debtor was not "the ultimate obligor [concerning certain
lease obligations] because there is no evidence that the Debtor assumed contractual
liability for the lease obligations . . ."), *aff'd,* 2003 WL 431584 (2d Cir. 2003); *In re*

[Footnote continued on next page]

1204917

The same result applies in this case. Here, FM Products agreed, in the 1994 Asset Purchase Agreement with Pneumo, that FM Products would "assume and become liable for, and . . . pay, perform and discharge as and when due" the liabilities to the asbestos tort claimants involved here. (*See* Appendix to Opening Brief of Appellant Cooper Industries, LLC ("Appendix") at page A-72-74). In addition, FM Products agreed to indemnify Pneumo from those claims. (*Id.*). Thus, there can be no doubt that, as between Pneumo and FM Products, FM Products has ultimate liability to bear the costs associated with the claims of the asbestos creditors. *See, e.g., In re Trasks' Charolais*, 84 B.R. at 649; *In re Cooper*, 83 B.R. at 548.

Indeed, the fact that FM Products is ultimately liable to bear the costs associated with the asbestos tort plaintiffs' claims becomes crystal clear if one considers what would have happened if *Pneumo* had filed for bankruptcy rather than FM Products. If that had occurred, and the asbestos claimants asserted their direct claims against FM Products, FM Products certainly would have had *no ability to assert any claim whatsoever* against Pneumo for payment of those claims by FM Products. That is true because FM Products became responsible for such claims when, in the 1994 Asset Purchase Agreement, it assumed them from Pneumo and agreed to indemnify and hold Pneumo harmless from them. Thus, as between Pneumo and FM Products (which is the test that section 509(b)(2) requires be applied), FM Products is clearly the party that has the "ultimate" responsibility to bear the costs associated with the asbestos plaintiffs' claims.

---

[Footnote continued from previous page]
*Pandora*, 145 B.R. at 790 ("[A]s between the assignee and the lessee, the assignee bears the primary liability for rent accruing subsequent to the assignment.") (citation omitted).

This is also the fair result because, to the extent that ownership of the assets that give rise to the tort plaintiffs' claims equals "receipt of the consideration" referenced in section 509(b)(2), FM Products has received the consideration related to the asbestos plaintiffs' claims. Specifically, FM Products assumed the asbestos liabilities in connection with receiving, from Pneumo, all of the assets related to the friction products business that allegedly caused the asbestos-related injuries. (Appendix, A-72). Thus, FM Products not only has the ultimate liability to pay the claims of the asbestos tort plaintiffs, it even has the business and assets that allegedly caused their injuries.[4] Thus, FM Products plainly received the consideration that gives rise to the asbestos tort plaintiffs' claims.

Again, FM Products specifically agreed to assume direct liability to the asbestos creditors when it purchased the friction products division from Pneumo. Furthermore,

---

[4] Indeed, counsel for the Asbestos Claimants Committee even stated, at the June 6, 2005 oral argument, that Pneumo is actually *not* the tortfeasor: "Pneumo Abex was not the original tort-feasor, Abex Corporation was the tort-feasor and Abex transferred its assets to Pneumo Abex, which assumed them, and then Pneumo Abex transferred its assets to this predecessor of Federal-Mogul Products . . . ." June 6, 2005 Hearing Transcript, p. 37:3-7. So Pneumo certainly has no moral culpability here that would demand that it pay these asbestos tort claimants rather than FM Products. Instead, it appears that the claims that are asserted against Pneumo by the asbestos tort plaintiffs are actually the same type as those that can be asserted against FM Products in that both are based on the mere assumption of that liability. The essential difference, as between Pneumo and FM Products however, is that FM Products assumed that liability from Pneumo, and indemnified Pneumo against the liability. Thus, as between FM Products and Pneumo, FM Products is the principal and Pneumo is the surety. *See, e.g., In re Trasks' Charolais*, 84 B.R. at 649. Thus, FM Products is ultimately responsible to bear the costs of these claims. These factors distinguish this situation from a case like *Celotex Corp. v. Allstate Ins. Co. (In re Celotex Corp.)*, 289 B.R. 460 (Bankr. M.D. Fla. 2003), where the court refused to allow the party that had actually injured the tort plaintiffs to subrogate itself to their funds. *See id.* at 473. In addition, in *Celotex*, there was no agreement (as there is here) among the joint defendants that one would indemnify the other with respect to the tort claims.

FM Products agreed to indemnify Pneumo from those same claims. Thus, FM Products is the ultimate obligor with respect to those liabilities, and it has the assets that should be subject to their claims. That is why Pneumo can assert the asbestos tort plaintiffs' rights against FM Products upon satisfying those claims on FM Products' behalf by calling on Cooper's Guaranty. In turn, by paying on the Cooper Guaranty, Cooper is subrogated to Pneumo's rights. The net effect of these transactions and legal rights is that Cooper is subrogated to Pneumo's rights as subrogee to the asbestos tort plaintiffs' rights. Therefore, Cooper is entitled to vote the claims on behalf of the asbestos tort plaintiffs.

Dated: June 9, 2005.

Respectfully submitted,

**MORRIS, JAMES, HITCHENS**
**& WILLIAMS LLP**

Stephen M. Miller (DE Bar No. 2610)
222 Delaware Avenue
Wilmington, DE 19801
Telephone: (302) 888-6853
Telecopy: (302) 571-1750
Email: smiller@morrisjames.com

AND

**GIBSON, DUNN & CRUTCHER LLP**
Michael A. Rosenthal
Aaron G. York
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone: (214) 698-3100
Telecopy: (214) 698-3400
Email: mrosenthal@gibsondunn.com
Email: ayork@gibsondunn.com

Attorneys for Cooper Industries, LLC

8