IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FEDERAL-MOGUL GLOBAL INC.,<br>T&N LIMITED, *et al.*,[1]<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 01-10578 (RTL)<br>Jointly Administered |
| COOPER INDUSTRIES, INC.,<br><br>　　　　Appellant,<br><br>　　v.<br><br>OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS, OFFICIAL COMMITTEE OF UNSECURED CREDITORS, LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS CLAIMANTS, JPMORGAN CHASE BANK, as Administrative Agent, OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS, FEDERAL-MOGUL GLOBAL INC., T&N LIMITED, et al.,<br><br>　　　　Appellees. | Appeal No. 04-142<br><br>Civil Action No. 05-41 (JHR)<br><br>**[Related to Docket No. 22]** |

**APPELLEES' (I) OPPOSITION TO APPELLANT COOPER INDUSTRIES, LLC'S MOTION FOR PROCEDURAL ORDER AUTHORIZING FILING OF SUPPLEMENTAL BRIEF, AND (II) REPLY TO SUPPLEMENTAL BRIEF**

Federal-Mogul Global Inc., T&N Limited et al. (collectively and as identified in footnote 1 hereto, the "Debtors"), the Official Committee of Asbestos Claimants, the Legal Representative for Future Asbestos Claimants, the Official Committee of Unsecured Creditors, JPMorgan Chase Bank, as Administrative Agent, and the Official Committee of Equity Security

---

[1] The Debtors are listed in the Appellees' Designation of Record on Appeal.

Holders (collectively, the "Appellees") hereby respond to Cooper Industries, LLC's ("Appellant" or "Cooper") (i) Motion for Procedural Order Authorizing the Filing of Supplemental Brief Concerning Bankruptcy Code Section 509(b)(2) (the "Motion"), and (ii) Supplemental Brief of Appellant Concerning Bankruptcy Code Section 509(b)(2) (the "Supplemental Brief").[2] As discussed below, the Court should not consider the arguments raised in the Supplemental Brief because the Bankruptcy Court considered the legal requirements for subrogation at the hearing in the court below, and the Bankruptcy Court based its ruling, in part, on Cooper's failure to establish *at the hearing or in its moving and reply papers,* any right to be subrogated to the claims of the underlying asbestos personal injury claimants. As such, the arguments related to Pneumo Abex's primary liability and section 509(b)(2) are not "new" arguments requiring additional briefing.

If, however, the Court is willing to entertain additional briefing on the subject of primary liability and the proper application of section 509(b)(2), Appellees submit the following points and authorities in reply to Cooper's Supplemental Brief and the arguments set forth therein. As discussed below, the arguments raised by Cooper in the Supplemental Brief fail on two grounds: (i) Cooper's "double subrogation" theory runs counter to the plain language of subsections 509(a) and (b)(2), and (ii) even if Cooper's theory otherwise satisfied the statute, Pneumo Abex is a primarily liable party on the asbestos personal injury claims filed against it; as such, Pneumo Abex would be precluded from subrogating itself to the asbestos personal injury claimants' rights against FM Products and similarly Cooper cannot do so by stepping into the shoes of Pneumo Abex.

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Appellees' Brief.

Because the legal arguments set forth in Cooper's Supplemental Brief are without merit, the Motion itself should be denied.

I. **THE MOTION SHOULD BE DENIED BECAUSE COOPER ELECTED TO ADVANCE AND ARGUE ITS SUBROGATION THEORY BEFORE THE BANKRUPTCY COURT WITHOUT RAISING THE LEGAL ARGUMENTS IT NOW SEEKS TO ADDRESS IN THE SUPPLEMENTAL BRIEF.**

The Motion requests that this Court grant Appellant Cooper leave to file the Supplemental Brief because Appellees allegedly presented "new" arguments at the June 6 appellate hearing concerning section 509(b)(2) and the primary liability issue. This assertion, however, was already considered and rejected by this Court at oral argument on June 6. Specifically, this Court observed that Cooper made whatever arguments it sought to advance concerning the legal requirements for subrogation at the hearing before Bankruptcy Judge Lyons, and, on the basis of the record presented by Cooper, Judge Lyons specifically rejected Cooper's "double subrogation" theory, finding that Cooper could not "shoehorn" its way into the claims of the asbestos personal injury tort claimants. *See* Tr. 6/6/05, at 30-36. Cooper cannot now assert that the "whole question of subrogation" was somehow raised for the first time at the June 6 oral argument before this Court. In sum, Cooper was afforded a full opportunity to present its case on subrogation before Judge Lyons; and even if Cooper's new arguments had merit (which, as Appellees demonstrate below, they do not) it would be inappropriate to now set aside Judge Lyons's Order on the basis of legal authority that Cooper failed to bring to Judge Lyons's attention in the court below. Accordingly, this Court need not – and should not – consider Cooper's arguments in the Supplemental Brief.

## II. THE BANKRUPTCY COURT'S DECISION SHOULD BE AFFIRMED BECAUSE "DOUBLE SUBROGATION" IS IMPERMISSIBLE UNDER THE PLAIN LANGUAGE OF SUBSECTIONS 509(a) AND (b)(2) OF THE BANKRUPTCY CODE.

Should the Court wish to consider Cooper's "double subrogation" theory further, however, Appellees note once again the simple, controlling point of law on that issue; namely, that "double subrogation" as sought by Cooper is not permitted under the plain language of section 509 of the Bankruptcy Code. That section explicitly provides that the right of subrogation is only available to those entities who are co-liable with the debtor on a "claim of a creditor against the debtor." *See* 11 U.S.C. § 509(a). In other words, under the express language of the controlling statute, for Cooper to be subrogated to the claims of asbestos personal injury claimants against FM Products, both Cooper and FM Products must be liable to those same asbestos personal injury claimants "'at the same time on the same debt.'" Greenfield, Stein & Senior, LLP v. Daley (In re Daley), 222 B.R. 44, 47 (Bankr. S.D.N.Y. 1998) (quoting In re Topgallant Lines, Inc., 154 B.R. 368, 381 n. 12); *see also* Photo Mechanical Servs. v. E.I. Dupont De Nemours & Co. (In re Photo Mechanical Servs.), 179 B.R. 604, 619 (Bankr. D. Minn. 1995).

Cooper has, however, admitted on several occasions that, at the outset, it is nowhere co-liable with FM Products on the claims of the asbestos personal injury claimants. *See, e.g.*, Tr. 6/6/05, at 13 (counsel for Cooper stating, "And Cooper's not liable to the Asbestos Claimants, we admit that . . . ."). Because Cooper is not co-liable with the Debtor for the asbestos personal injury claims to which it seeks to be subrogated, it fails to satisfy a

fundamental requirement of section 509(a).[3]  Cooper's subrogation arguments should be rejected on that basis alone.

### III. ADDITIONALLY, SECTIONS 509(a) AND 509(b)(2) PRECLUDE THE RELIEF THAT COOPER SEEKS BECAUSE PNEUMO ABEX IS PRIMARILY LIABLE TO ITS OWN ASBESTOS PERSONAL INJURY CLAIMANTS.

Even if Cooper could meet the threshold legal requirement of co-liability with the Debtor on the underlying asbestos claims, a point which Cooper failed to establish in the trial court, Cooper's arguments in the Supplemental Brief must still be rejected because Cooper, standing in the shoes of Pneumo Abex, cannot subrogate itself to the rights of the individual asbestos claimants.[4]  Under the common law doctrine of equitable subrogation, a party is not permitted to subrogate itself to a claim for which it is primarily liable. *See, e.g.*, Rubenstein v. Ball Bros., Inc. (In re New England Fish Co.), 749 F.2d 1277, 1282 (9th Cir. 1984) (noting that under the doctrine of equitable subrogation "[o]ne cannot seek subrogation for paying one's own debt"); In re Celotex Corp., 289 B.R. 460, 467 (Bankr. M.D. Fla. 2003) (stating the criteria for equitable subrogation as including the requirement that "the payment must satisfy a debt for which the co-debtor was not primarily liable"); In re Russell, 101 B.R. 62, 64 (Bankr. W.D. Ark. 1989) ("Subrogation arises where a party having liability pays a debt of a party who is primarily liable on the debt and who, in equity, should pay."). Courts have found that this requirement is

---

[3] Cooper claims to achieve the status of a "co-debtor" solely by virtue of the first prong of its double subrogation theory – i.e., that Cooper paid on a guaranty in favor of Abex and Pneumo Abex, and, therefore, it stands in the shoes of Pneumo Abex. On the basis of the record presented by Cooper in the Bankruptcy Court, however, Judge Lyons found that Cooper had failed to establish co-liability with FM Products on the underlying asbestos claims against Pneumo Abex. Implicit in the Court's ruling was the fact that Cooper had not clearly established that when it made payments pursuant to its guaranty, that such payments were made on account of a direct obligation owing to the asbestos claimants, as opposed to a guaranty of Wagner's indemnity obligation in favor of Pneumo Abex. Stated alternatively, Cooper guaranteed payment *to Pneumo Abex*, Cooper did *not* guaranty payment to any asbestos claimants. In contrast, in the typical guaranty scenario, the guarantor seeking subrogation has guaranteed the bank lender (here, the asbestos claimants), not the borrower (here, Pneumo Abex).

[4] As noted by counsel for the Debtors at the June 6 hearing, in evaluating the "double" subrogation theory under section 509(b)(2) the "entity" in question under the statute is Pneumo Abex, not Cooper.

manifested in two ways in section 509 of the Bankruptcy Code. First, "the § 509(a) requirement that the claimant be liable with the debtor should be interpreted to mean the claimant must be secondarily liable with the debtor in order to meet the first prong of the § 509 subrogation test." In re Celotex Corp., 289 B.R. 460, 472 (Bankr. M.D. Fla. 2003). Second, courts have additionally found that section 509(b)(2) also "'embodies the general principle that subrogation is not available to a party who satisfies a debt for which that party was primarily obligated.'" *Id.* (*quoting* In re Cornmesser's, Inc., 264 B.R. 159, 163 (Bankr. W.D. Pa. 2001)).

Pneumo Abex is, on its face, primarily liable on the claims of its own asbestos personal injury claimants even if it is assumed for the sake of argument – which Cooper has not established – that FM Products contractually assumed Pneumo Abex's asbestos liability as part of the 1994 Asset Purchase Agreement.[5] Grant-Howard Assoc. v. Gen'l Housewares Corp., 63 N.Y.2d 291, 297 (N.Y. App. 1984) ("A sale of assets does not vitiate the original company's liability. . . . [T]he injured party can elect to proceed against the defunct corporation, the successor corporation, or both. This right of election cannot be altered per se by the corporation. The companies can regulate how such liability will be allocated among themselves, but they cannot affect the rights of a stranger to their contract."). Pneumo Abex is the entity that manufactured asbestos-containing products, placed those products into the stream of commerce,

---

[5] At the June 6 hearing, Cooper's counsel recognized that Pneumo Abex remains liable to the asbestos claimants: "We have a situation in which because -- Pneumo Abex is liable to the Asbestos Creditors because it originally owned the Brake Products assets that caused their injuries. Okay? So the Asbestos Claimants can continue to sue Pneumo, which is what they've generally done." Tr. 6/6/05, at 12. In addition, Cooper's citation to the Trasks' Charolais case for the proposition that an assuming party becomes the primary obligor is unpersuasive, particularly in light of the fact that the section of the authoritative treatise cited by the Trasks' Charolais court does not support such a bald assertion. Instead, the treatise states that a "creditor is not bound to recognize the changed relationship unless he assents thereto" or, in some instances, "when the facts of the changed relationship are known to him." 72 C.J.S. Principal and Surety § 40 (2004). In contrast to the typical guarantor situation, here there is no evidence in the record that Pneumo Abex's asbestos claimants either consented to, or even knew about, the purported assumption of liability by Wagner (now FM Products) in 1994.

and realized the profits from the manufacture and sale of those products.[6] It was only the sale of the assets of Pneumo Abex's friction products business – not the stock thereof – to Wagner in 1994 and the subsequent sale of the stock of Moog Automotive (Wagner's successor by merger) to Federal-Mogul and the affiliated buyers in 1998 that have led to FM Products' alleged liability to Pneumo Abex's asbestos personal injury claimants. Contrary to the more typical three-party contract scenario, the underlying creditors (here, the asbestos claimants) were not party to the 1994 transaction involving the sale of Pneumo Abex's assets to Wagner, and it has not been established even that the asbestos claimants had knowledge that any party other than Pneumo Abex was liable on their claims.

Cooper tries to confuse this issue by citing a variety of cases for the proposition that under section 509(b)(2) only a party with "ultimate" liability on the claim can be denied subrogation as having received the consideration for the creditor's claim. Even if the legal analysis in those cases is accurate, however, they are readily distinguishable on the present facts.[7] As Cooper notes in the Supplemental Brief, the "more typical case" under section 509(b)(2) "involves the assertion of subrogation claims by a surety/guarantor who pays off the debtor/borrower's obligation for a loan received from a lender." Supplemental Brief, at 1. The interpretation of section 509(b)(2) in that context, however, involves far different considerations than the application of section 509(b)(2) to the rights of personal injury tort plaintiffs, whose claims are entitled to unique protections under several provisions of Title 11, United States Code,

---

[6] In fact, contrary to assertions by Cooper in the Supplemental Brief, Pneumo Abex is the tortfeasor that caused the injury giving rise to the asbestos claims at issue. Pneumo Abex and Abex were combined in a full and complete merger.

[7] The cases cited by Cooper arise in the "more typical" scenario—as described by the Supplemental Brief—and do not address the ability of a party to subrogate itself to the rights of a personal injury tort claimant. Furthermore, In re Cooper, cited by the Appellant, actually notes that under equitable subrogation principles, the former spouse arguably could not have asserted a right of subrogation because she was primarily liable on the debt. Cooper v. Cooper (In re Cooper), 83 B.R. 544, 547 n.11 (Bankr. C.D. Ill. 1988).

and related jurisdictional provisions.[8] In fact, Cooper has not cited to any opinion in the personal injury tort context finding that the original tortfeasor did not retain primary or even "ultimate" liability to asbestos tort victims for its own actions (even where such liabilities were purportedly assumed by another party).

Indeed, the only case located by Appellees examining section 509(b)(2) in the context of asbestos personal injury claims determined that the original tortfeasor could <u>not</u> subrogate itself to the claims of the asbestos personal injury claimants. *See* <u>In re Celotex Corp.</u>, 289 B.R. 460 (Bankr. M.D. Fla. 2003). Among the decisional law on this issue, <u>In re Celotex Corp.</u> is the most factually similar to the current case and therefore should control over the analysis of other courts conducted in the context of the "more typical" contractual guaranty scenario. As with certain of the Federal-Mogul Debtors, Celotex filed a chapter 11 petition to address mass asbestos personal injury claims asserted against it relating to products that had been manufactured and sold by Celotex. Fibreboard Corporation, a co-judgment debtor with Celotex in several prepetition asbestos bodily injury lawsuits imposing joint and several liability on both parties, purchased and obtained assignments of bodily injury judgments against itself and Celotex. *See id.* at 464. Based upon these actions, Fibreboard sought to be subrogated to the rights of the asbestos bodily injury claimants to pursue certain recoveries in Celotex's bankruptcy case. The Celotex Court rejected this attempt, finding that:

> either under § 509 or a Florida theory of equitable subrogation, Fibreboard is not entitled to subrogation. Fibreboard is primarily liable with Celotex and, under each theory, it cannot be subrogated for paying its own debts. Further, this Court finds that to allow

---

[8] <u>See</u> 28 U.S.C. § 157(b)(2)(B) (providing that liquidation or estimation of personal injury or wrongful death claims is not a core matter within the jurisdiction of the Bankruptcy Court); 28 U.S.C. § 157(b)(5) (requiring that wrongful death and personal injury claims be tried in the District Court); 11 U.S.C. § 524(g) (providing a multitude of protections for present and future asbestos personal injury claimants under the Bankruptcy Code).

> Fibreboard to be subrogated to funds specifically segregated for bodily injury claimants it was found to have injured would be unjust.

*Id.* at 473. The instant case is strikingly similar to *Celotex*. As in *Celotex*, Pneumo Abex is the party which caused the alleged injuries of the asbestos bodily injury claimants, and Pneumo Abex is the entity that "received the consideration" for such claims. Based on this fact alone, Pneumo Abex (and Cooper as the purported subrogee to Pneumo Abex) is prohibited from asserting a right of subrogation under both the common law and section 509(b)(2). Moreover, even if Cooper had established that FM Products had legally "assumed" the asbestos claims as part of the 1994 Asset Purchase Transaction (a matter which Cooper has not established and is disputed), the situation would then be similar to two joint tortfeasors being jointly and severally liable for the entirety of each personal injury claim – a scenario in which there is no right of subrogation, only rights of contribution and indemnity in favor of the joint tortfeasor who paid the debt.

Moreover, section 509(b)(2) would still bar Cooper from asserting a right of subrogation even if the Court were to (i) accept Cooper's contention that FM Products assumed Pneumo Abex's asbestos liabilities *and* (ii) conclude that Pneumo Abex is not precluded from subrogation under section 509 even though it is primarily liable on the asbestos personal injury claims. The plain language of section 509(b)(2) precludes a party from asserting a right of subrogation relating to a particular claim if "as between the debtor and such entity, such entity received the consideration for the claim." 11 U.S.C. § 509(b)(2); *see* In re Yeargin, 116 B.R. 621, 622 (Bankr. M.D. Tenn. 19990) ("Section 509(b)(2) limits subrogation to the extent that the party asserting the right received consideration for the claim held by the creditor."). A natural reading of section 509(b)(2) leads to the conclusion that Pneumo Abex received the original

consideration for the asbestos personal injury claims when it placed asbestos-containing products into the stream of commerce and profited from the sale of those products. While Cooper attempts to argue that FM Products received the consideration for the asbestos claims because FM Products purchased the assets related to Pneumo Abex's friction products business, this tortures both the language of the statute and undermines the fairness of its operation. To adopt Cooper's theory, the Court would have to read the statute as providing that as between FM Products and Pneumo Abex, FM Products received the profits from the asbestos-containing products that ultimately gave rise to the asbestos claims. FM Products simply had no involvement in the action or the consideration that gave rise to the asbestos bodily injury claims.

In In re Russell, 101 B.R. 62 (Bankr. W.D. Ark. 1989), the Bankruptcy Court likewise addressed a factual scenario analogous to that alleged by Cooper and concluded that section 509(b)(2) prevented a party from seeking a right of subrogation because he had received the consideration for the claim to which he sought to be subrogated. In *Russell*, as is alleged by Cooper in the instant case, the debtor assumed a portion of the liability of a third party, Gibson, pursuant to a promissory note in favor of the National Bank of Commerce of Pine Bluff ("NBC"). Gibson and another party originally had borrowed $988,000 from NBC so they could purchase 5,261 shares of stock in Citizens First National Bank of Arkadelphia. Gibson later sold 2,000 shares of his stock to the debtor and the debtor agreed, among other things, to assume a portion of Gibson's liability to NBC. When the debtor ceased making payments on the loan from NBC, Gibson, as the original obligor, paid the debtor's assumed obligations under the promissory note. Later, Gibson attempted to assert a right of subrogation to the bank's claims against the debtor in the debtor's bankruptcy proceedings. Although the court found that Gibson was no longer primarily liable for the obligation after the debtor's assumption, the court

nonetheless concluded that Gibson could not assert a right of subrogation because Gibson received the original consideration for the indebtedness. *Id.* at 65 ("Gibson is not entitled to assert a right of subrogation in this bankruptcy case for the $34,144.51 he paid NBC on behalf of the debtor because the stock he received was the consideration for this portion of the indebtedness to NBC."). Of course, while Gibson could not assert a right of subrogation, Gibson could still assert an indemnity claim, as in the instant case, under its written contract with the debtor. *Id.*

Finally, the Court should reject Cooper's strained interpretation of section 509(b)(2) on policy grounds. Section 524(g) of the Bankruptcy Code creates a delicate balance between the interests of the reorganizing debtor and the interests of present and future asbestos claimants. One of the major protections for the asbestos community is the requirement of super-majority voting, namely that a class of asbestos claimants must accept the plan "by at least 75 percent of [claimants] voting, in favor of the plan." 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb). Conversely, a negative vote of only 25% of claimants voting is sufficient to block confirmation of a plan in an asbestos case. *Compare* 11 U.S.C. § 1126(c) (at least two-thirds in amount and more than one-half in number of claims voting necessary for acceptance of plan). The more stringent voting requirement for a class of asbestos claims is designed to protect the interests of asbestos claimants given the extraordinary powers otherwise available to the plan proponents under section 524(g). Therefore, permitting an *indirect or derivative* asbestos claimant such as Cooper to acquire a sufficient number of claims and attendant voting rights of asbestos claimants through subrogation, for the purpose of casting a blocking vote on the Plan which is acceptable to the Asbestos Claimants Committee, the Future Claimants Representative and the overwhelming majority of asbestos claimants, would undermine the policy, purposes and

structure of section 524(g). "Subrogation is an equitable remedy designed to prevent unjust enrichment... Subrogation is not a matter of absolute right which a party paying a debt of another may enforce at will." In re Russell, 101 B.R. 62, 64. Appellees submit that in addition to all of the other reasons why Cooper's Motion should be denied, the Court should interpret and apply the provisions of subsections 509(a) and (b)(2) within the context of and consistent with the provisions of section 524(g). For this additional reason, Cooper should not be permitted to subrogate itself to the claims and attendant voting rights of Pneumo Abex's asbestos personal injury claimants.

## IV.  **CONCLUSION**

For the reasons set forth herein and in the Appellees' other pleadings before this Court, Cooper is not entitled to the "double subrogation" that it seeks. Furthermore, if Cooper's contention were true – that FM Products did assume the asbestos liability of Pneumo Abex – then FM Products and Pneumo Abex would effectively share the position of joint tortfeasors with respect to such claims. Granting a joint tortfeasor the right of subrogation would run counter to well-established legal principles, which only provide such parties contribution or indemnification claims, not subrogation rights. Perhaps more importantly, such a ruling would place every single co-defendant in the multitude of asbestos personal injury lawsuits in a position to vote on the reorganization plans of their counter-parties and block confirmation of those plans. This result would undermine the special protections afforded by section 524(g) of the Bankruptcy Code and create an unwarranted and an unjustified result detrimental to the interests of asbestos claimants, asbestos debtors, and all other assenting creditors.

WHEREFORE, for all of the reasons stated herein, the Appellees respectfully request that the Court deny the Motion, affirm the judgment of Judge Lyons, and grant such other relief as may be just and warranted.

Dated: June 15, 2005

SIDLEY AUSTIN BROWN & WOOD LLP
James F. Conlan
Larry J. Nyhan
Richard T. Peters
Kevin T. Lantry
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

-and-

*/s/ James E. O'Neill*
PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Attorneys for Debtors and Debtors-in-Possession

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
399 Park Avenue
New York, New York 10022
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

-and-

CAPLIN & DRYSDALE, CHARTERED
Peter Van N. Lockwood
Julie Davis
One Thomas Circle, N.W.
Washington, DC 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

-and-

*/s/ [signature]*

CAMPBELL & LEVINE, LLC
Marla R. Eskin
Kathleen Campbell
800 North King Street, Suite 300
Wilmington, Delaware 19801
Telephone: (302) 426-1900
Facsimile: (302) 426-9947

Attorneys for Official Committee of
Asbestos Claimants

*[signature]*

YOUNG CONAWAY STARGATT &
TAYLOR LLP
James L. Patton, Jr.
Edwin J. Harron
Maribeth L. Minella
1100 North Market Street, 11th Floor
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Attorneys for Legal Representative for
Future Asbestos Claimants


*[signature]*

THE BAYARD FIRM
Charlene D. Davis
Eric M. Sutty
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

Attorneys for the Official Committee of
Unsecured Creditors

YOUNG CONAWAY STARGATT &
TAYLOR LLP
James L. Patton, Jr.
Edwin J. Harron
Maribeth L. Minella
1100 North Market Street, 11th Floor
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Attorneys for Legal Representative for
Future Asbestos Claimants

THE BAYARD FIRM
Charlene D. Davis
Eric M. Sutty
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

Attorneys for the Official Committee of
Unsecured Creditors

SIMPSON THACHER & BARTLETT LLP
Steven M. Fuhrman
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

-and-

*/s/ (No. 3854)*

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 658-6548

Attorneys for JPMorgan Chase Bank, as
Administrative Agent

---

BELL BOYD & LLOYD, LLC
David F. Heroy
Robert V. Shannon
70 West Madison Street
Three First National Plaza
Suite 3300
Chicago, Illinois 60602
Telephone: (312) 807-4315
Facsimile: (312) 827-8010

Attorneys for Official Committee of Equity
Security Holders

SIMPSON THACHER & BARTLETT LLP
Steven M. Fuhrman
Richard Douglas
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

-and-

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 658-6548

Attorneys for JPMorgan Chase Bank, as Administrative Agent

*Robert V. Shannon (p/o w/permission)*

BELL BOYD & LLOYD, LLC
David F. Heroy
Robert V. Shannon
70 West Madison Street
Three First National Plaza
Suite 3300
Chicago, Illinois 60602
Telephone: (312) 807-4315
Facsimile: (312) 827-8010

Attorneys for Official Committee of Equity Security Holders