IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FEDERAL MOGUL ET AL.,<br><br>Debtors.<br><br>COOPER INDUSTRIES,<br><br>Appellant,<br><br>v.<br><br>FEDERAL MOGUL GLOBAL ET AL.,<br><br>Appellees. | CIVIL ACTION NO. 05-41 JHR<br><br>Bankruptcy Case 01-10578 |

**APPELLANT COOPER INDUSTRIES, LLC'S REPLY IN SUPPORT OF
MOTION FOR PROCEDURAL ORDER AUTHORIZING THE FILING
OF SUPPLEMENTAL BRIEF CONCERNING
<u>BANKRUPTCY CODE SECTION 509(b)(2)</u>**

Appellant Cooper Industries, LLC (successor by merger to Cooper Industries, Inc.) ("Cooper") hereby submits this reply to Appellees' (I) Opposition to Appellant Cooper Industries, LLC's Motion for Procedural Order Authorizing Filing of Supplemental Brief, and (II) Reply to Supplemental Brief (the "Opposition") (D.I. # 24). In support hereof, Cooper states as follows:

I.  **If the Court Considers the Appellees' New Defense Under Section 509(b)(2),
Then It Should Consider Cooper's Supplemental Brief On that Section.**

Cooper's ability to subrogate itself, through Pneumo Abex Corporation ("Pneumo"), to the rights of the asbestos tort plaintiffs against debtor FM Products, Inc. ("FM Products") was squarely presented to the Bankruptcy Court below. Cooper proved all of the elements of its

1233591/2

subrogation claim in the proof of claim before the Bankruptcy Court. Specifically, "[s]ubrogation under § 509(a) requires three basic elements. Under the Bankruptcy Code, a guarantor or surety is subrogated to the rights of a creditor if it: (1) 'is liable with the debtor on' (or has secured); (2) 'a claim of a creditor against the debtor;' and (3) 'pays such claim.'" *In re Medicine Shoppe*, 210 B.R. 310, 313 (Bankr. N.D. Ill. 1997) (citation omitted); *see also Cornmesser v. Swope (In re Cornmesser's Inc.)*, 264 B.R. 159, 162 (Bankr. W.D. Pa. 2001) (describing same three elements). As Cooper demonstrated in the Opening Brief of Appellant Cooper Industries, LLC (D.I. No. 7), Cooper's proof of claim demonstrated that Cooper met all the elements to be subrogated to Pneumo's rights, and Pneumo met all the elements to be subrogated to the asbestos tort plaintiffs' rights. Thus, Cooper met its burden to present the facts and arguments necessary to support its subrogation claim.

If the Appellees had defenses to Cooper's subrogation claim, the time for raising them was in the trial court. The Appellees never raised a defense under section 509(b)(2) in the Bankruptcy Court, and they did not present any facts to support such a defense. The burden to do so was on the Appellees. That is clear by the fact that the elements that a claimant must prove to have a subrogation claim under section 509(a), as described above, do not include section 509(b)(2). Further, as Cooper has already stated, Cooper's proof of claim itself constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). To overcome this presumption of validity, the burden is on the objecting party to produce evidence rebutting the claim. *See In re Hemingway Transp., Inc.*, 993 F.2d 915, 925 (1st Cir. 1993) ("The interposition of an objection does not deprive the proof of claim of presumptive validity . . . ."); *In re Fid. Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988) (stating that to overcome presumption "objecting party must then produce evidence rebutting the claimant or else the

claimant will prevail."). Here, the Appellees did not even file a substantive objection to Cooper's proof of claim, and they certainly did not produce any evidence—much less evidence showing the applicability of section 509(b)(2)—to rebut Cooper's subrogation claim. There was absolutely *no* mention of section 509(b)(2) in the pleadings or at the hearing in the Bankruptcy Court below. Thus, the only thing properly before this Court is the legal issue of whether a subrogee can subrogate itself to another party's subrogation rights, which is the issue that was presented to and considered by the Bankruptcy Court.

Despite this, the Appellees raised other new defenses to Cooper's subrogation claim in their appellate brief filed in this Court. Because these defenses were not presented to or considered by the Bankruptcy Court, Cooper filed Appellant Cooper Industries, LLC's Motion to Strike Portions of Appellees' Brief That (I) Are Not Supported By the Appellate Record and/or (II) Assert Arguments Not Raised in the Bankruptcy Court Below (D.I. No. 12) (the "Motion To Strike"). The Motion to Strike is still pending. But the Appellees' new section 509(b)(2) defense was *not* even among these new theories that the Appellees raised in their appellate brief. Instead, the Appellees tried to surprise Cooper with this new defense in the *middle of oral argument* on June 6, 2005. It was bad enough that the Appellees raised new defensive theories not presented to or considered by the Bankruptcy Court in their appellate brief, but to try to do so in oral argument is completely unfair.

As a result, for the same reasons Cooper articulated in Cooper's Motion to Strike, the Appellees have waived their section 509(b)(2) defense to Cooper's right to subrogate itself, through Pneumo, to the asbestos plaintiffs' rights. Thus, this Court need not consider that new defense. As Cooper made clear in its present Motion, if the Court elects not to consider the Appellees' new, belated defensive theory under section 509(b)(2), then the Court need not

consider Cooper's Supplemental Brief. But if the Court does elect to consider the Appellees' section 509(b)(2) defense, then fairness requires that Cooper's Supplemental Brief on this new defense also be considered.

II. **As Between FM Products and Pneumo, FM Products is Ultimately (or Primarily) Liable to the Asbestos Tort Plaintiffs**

The Appellees' Opposition also contained a purported "reply" to the Supplemental Brief Cooper requested permission to file in the present Motion. As the appellant here, Cooper should be entitled to submit a reply to what is actually a response brief.

Pursuant to the 1994 Asset Purchase Agreement with Pneumo, FM Products became the ultimate obligor with respect to the claims of the asbestos tort plaintiffs and indemnified Pneumo with respect to their claims. Nonetheless, the Appellees continue to assert that Pneumo (rather than FM Products) is the entity that is ultimately responsible for payment. The Appellees' analysis suffers from several fundamental flaws. Most significantly, it confuses Pneumo's "direct" liability to the asbestos claimants with the proper question; namely, *as between Pneumo and FM Products*, which entity is primarily (or ultimately) responsible for the claims of the asbestos tort plaintiffs, and which entity is merely secondarily liable? The answer is clear; FM Products is ultimately responsible.

The Appellees first try to confuse this issue by citing cases dealing with the "the common law doctrine of equitable subordination." *See* Opposition, p. 5. Under this state law doctrine, apparently, a party sometimes cannot be subrogated when it pays a debt on which it is directly liable. But here, Cooper is asserting rights under section 509(a) of the Bankruptcy Code, which is separate and distinct from state law equitable subrogation. *See, e.g., In re Fiesole Trading Corp.*, 315 B.R. 198, 204 (Bankr. D. Mass. 2004) ("Because § 509 clearly delineates the requirements for and exceptions to subrogation, this Court will not superimpose state law

4

doctrines to expand or contract the right to subrogation provided for under the Bankruptcy Code."); *Cornmesser v. Swope (In re Cornmesser's Inc.)*, 264 B.R. 159, 162 (Bankr. W.D. Pa. 2001) ("Equitable subrogation, a creation of state law, is distinct from subrogation under § 509(a)."); *Cooper v. Cooper (In re Cooper)*, 83 B.R. 544, 547 n. 11 (Bankr. C.D. Ill. 1988) (same). Section 509(a) *requires* that the subrogee have co-liability on the debt it pays. Because "[e]ntities are required to have some sort of personal obligation to pay the claim before subrogation will be available" paying a direct liability "cannot alone be a bar to subrogation." *In re Fiesole*, 315 B.R. at 207 n.14. Thus, those state law equitable subrogation principles that arguably do not permit subrogation for paying a direct liability are irrelevant. *See Cooper*, 83 B.R. 544, 547 n. 11 (refusing to consider argument, under Illinois equitable subrogation principles, that party paying debt for which she was jointly and severally liable precluded equitable subrogation).

Next, the Appellees cite a case to show that Pneumo's sale of assets to FM Products' predecessor did "not vitiate the original company's liability." *See* Opposition at p. 6 (*quoting Grant-Howard Assoc. v. Gen'l Housewares Corp.*, 63 N.Y.2d 291, 297 (N.Y. 1984)). Again, this just shows that Pneumo is still directly liable for the claims of the asbestos tort plaintiffs. This is *required* under section 509(a). This case does nothing to answer the critical question demanded by section 509(b)(2), which is "as between the debtor and such [subrogee] entity," who is ultimately responsible for the claims? Here, that is plainly FM Products because it is the entity that assumed liability to those claimants and agreed to hold Pneumo harmless from them. Again, "where one party to a contract, as part of the agreement, assumes an indebtedness owing by the other to a third person, the one assuming the indebtedness becomes the principal, the former debtor a surety . . ." *In re Trasks' Charolais*, 84 B.R. 646, 649 (Bankr. D.S.D. 1988) (*quoting* 72

C.J.S. Principal and Surety § 40 at 532 (1951)). "[A]s between the debtor and such [subrogee] entity," this is true regardless of whether the underlying creditor consented to or knew about the assumption. *See id.* (noting that, as between the original obligor and the party assuming the liability, the party assuming liability is ultimately liable even where the underlying party has not agreed "to accept the responsibility of the other party's assignee in place of that of the assignor").

The Appellees' reliance on *In re Celotex Corp.*, 289 B.R. 460 (Bankr. M.D. Fla. 2003) is also misplaced. In fact, Cooper already distinguished that case in its proposed Supplemental Brief. *See* Supplemental Brief, p. 7 n. 4. To reiterate, in sharp contrast to the facts here, the debtor in *Celotex* had not agreed to assume the tort liabilities in question, and had certainly not agreed to indemnify the other party from such claims. Thus, there was nothing in *Celotex* to indicate that "as between the debtor and such [subrogee] entity, " the debtor should be the one to bear the cost of the claims. Here, however, FM Products expressly agreed with Pneumo that FM Products would bear the costs of those claims. This renders *Celotex* inapposite.[1]

The Appellees' assertion that, as between Pneumo and FM Products, Pneumo received the consideration for purposes of section 509(b)(2) is legally and factually incorrect.[2] In a case

---

[1] Although it is sometimes considered under state law, whether subrogation would be "unjust" is not a consideration under section 509(a) of the Bankruptcy Code. *See* 11 U.S.C. § 509(a). In any event, it is not unjust to allow Pneumo to subrogate itself to the asbestos claimants' rights against FM Products in this case because FM Products *expressly agreed* to be responsible for their claims. That simply was not the case in *Celotex*.

[2] The case the Appellees cite in this portion of their argument actually supports Cooper. *In re Russell*, 101 B.R. 62 (Bankr. W.D. Ark. 1989) stands for the proposition that Cooper has been stating: A party that assumes a liability becomes ultimately liable for it, and the original liable party becomes a surety. *See id.* at 65 ("When Gibson sold 2,000 shares of his stock to the debtor and the debtor assumed a portion of Gibson's primary debt to NBC, *the debtor became the principal as between the debtor and Gibson*.") (*citing In re Trasks' Charolais*, 84 B.R. 646, 649 (Bankr. D.S.D. 1988)) (emphasis added).

6

involving tort claims, what is deemed to be the "consideration" is not clear. The only reasonable interpretation is to view the party that has agreed to accept ultimate responsibility for such claims as being the one receiving the consideration. This is the test courts have typically utilized under section 509(b)(2). Alternatively, one could view the ownership of the assets or business that allegedly caused the injuries as the consideration for the claims in this case.[3] Either way, it is undisputed that FM Products both owns such assets and is ultimately responsible for the claims of the asbestos tort claimants.

Finally, the Appellees' policy arguments—that section 509(b)(2) should not permit a party to subrogate itself to asbestos voting rights—are simply a re-hash of arguments they have already made. As Cooper has stated, section 509(a) makes it clear that a subrogee gets *all* the rights of the party that it pays. The Bankruptcy Code does not prohibit this in the case of a party seeking to exercise another party's subrogation rights. Building in such an exception, to the extent warranted, which we do not believe to be the case, is for Congress, not the courts. In addition, the Appellees completely overstate their argument that an indirect claimant should not be able to exercise subrogation rights for fear that the claimant would use them "for the purpose of casting a blocking vote on the Plan." *See* Opposition, p. 11. Section 1126(e) of the Bankruptcy Code would prohibit a claimant from doing this in bad faith because that section allows the Bankruptcy Court to "designate any entity whose acceptance or rejection of such plan was not in good faith" which has the effect of invalidating the vote that was cast in bad faith. *See* 11 U.S.C. § 1126(e). Of course, the Appellees could never successfully invoke this section

---

[3] Although Pneumo is the successor to Abex Corporation, the company that actually sold the asbestos-containing products, Pneumo did not become the successor until 1990, several years after Abex Corporation stopped selling asbestos-containing products.

against Cooper (or the Pneumo-related asbestos claimants on whose behalf Cooper is voting) because the Appellees have already admitted that the FM Products' plan does not contain anything for such claimants. Cooper's votes on behalf of the Pneumo-related asbestos claimants actually support their interests, and are clearly not in bad faith. Instead, the parties demonstrating bad faith are the ones that have constructed a plan of reorganization that intentionally leaves out Cooper and the Pneumo-related asbestos creditors.

DATED: June 22, 2005               Respectfully submitted,

**MORRIS, JAMES, HITCHENS & WILLIAMS LLP**

*/s/ M. Miller*
Stephen M. Miller (No. 2610)
Thomas M. Horan (No. 4641)
222 Delaware Avenue
Wilmington, DE 19801
Telephone: (302) 888-6853
Telecopy: (302) 571-1750
E-mail: smiller@morrisjames.com
E-mail: thoran@morrisjames.com

AND

**GIBSON, DUNN & CRUTCHER LLP**
Michael A. Rosenthal
Aaron G. York
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone: (214) 698-3100
Telecopy: (214) 698-3400
Email: mrosenthal@gibsondunn.com
Email: ayork@gibsondunn.com

Attorneys for Cooper Industries, LLC

50206484_6.DOC

8

1233591/2