<u>NOT FOR PUBLICATION</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COOPER INDUSTRIES, INC., | : | Hon. Joseph H. Rodriguez |
| | : | |
| Appellant, | : | Civil Action No. 05-41 |
| v. | : | |
| | : | On Appeal from an Order of the |
| FEDERAL-MOGUL GLOBAL INC., *et al.*, | : | United States Bankruptcy Court |
| | : | for the District of Delaware in |
| Appellees. | : | Bankruptcy Case No. 01-10578 |
| | : | |
| _____ | : | **OPINION** |

This matter comes before the Court on Appeal from the United States Bankruptcy

Court for the District of Delaware's (the "Bankruptcy Court") Order of December 14,

2004 (the "December 14 Order"), which granted in-part and denied in-part Cooper

Industries, Inc.'s ("Cooper") Motion (I) To enforce the Voting Procedures Order, or (II)

For an order pursuant to Fed. R. Bank. P. 3018(a) temporarily allowing its claims for

voting purposes (the "Voting Motion").  This appeal was brought by Cooper alleging that

Bankruptcy Court erroneously ruled that the dollar amount of Cooper's claims for voting

purposes should be at least the liquidated amounts specified in Cooper's proof of claim on

file as of June 11, 2004.  (<u>See</u> Dec. 14, 2004 Order ¶ 5.)  Further, Cooper appeals the

Bankruptcy Court Order that stated that Cooper was entitled to only one vote, rather than

the 47,774 votes it claims it is entitled to under section 509 of the Bankruptcy Code and

Rule 3005.  (Apt. Br. at 3.)  Cooper seeks a reversal of the Bankruptcy Court's December

14, 2004 Order, and urges this Court to remand the matter to the Bankruptcy Court to determine the proper number of votes that Cooper can assert through subrogation.  In addition, Appellee has filed a Motion for Leave to Supplement Record on Appeal Instanter and Appellee's Brief, and Appellant has filed a Motion to Strike Portions of Appellees' Brief.

On June 6, 2005 the Court heard oral argument from the parties.  Subsequently, Cooper has filed a Motion for Procedural Order Authorizing the Filing of Supplemental Brief Concerning Bankruptcy Code Section 509(b)(2).  On June 15, 2005, Cooper filed an Opposition Brief to that Motion.

For the reasons discussed herein, and based upon the submissions and argument concerning the Bankruptcy Court's December 14th Order, the submissions and oral argument made in this appeal, and the briefs submitted in support of the three (3) motions concerning this appeal, the Court will affirm the December 14, 2004 Order.  Also, the Court will deny as moot Appellees' Motion for Leave to Supplement Record on Appeal Instanter and Appellant's Motion to Strike Portions of Appellant's Brief.  In addition, Cooper's Motion for Procedural Order Authorizing the Filing of Supplemental Brief Concerning Bankruptcy Code Section 509(b)(2) will be denied.

## I.  Factual and Procedural Background

### A.    Transaction History

In 1998, Federal-Mogul Corporation and certain affiliates (collectively, the "Federal-Mogul Purchasers") acquired the stock of Moog Automotive Products, Inc.

("Moog") from Cooper pursuant to a Purchase and Sale Agreement (as amended, the "1998 Stock Purchase Agreement" or "SPA").  (See Attachments to Cooper's and Affiliates Proof of Claim November 1, 2004; Appellant Appendix A-74-A-75).[1]  The Federal-Mogul Purchasers changed Moog's name to Federal-Mogul Products, Inc.  ("FM Products").  (Id.)  Section 9.5 of the 1998 Stock Purchase Agreement, set forth the Federal-Mogul Purchasers indemnification obligations to Cooper and its affiliates for the seller's obligations.  (Id. at A-77.)  After the 1998 SPA, and until October 1, 2001 (the "Petition Date"), FM Products performed its indemnity obligations on an after insurance basis in favor of Pneumo Abex.  (Id.)  Following the Petition Date, FM Products ceased performing its obligations.  (Id.)

As a result and due to a previous Guaranty, Cooper has allegedly expended well over $100 million in settling these asbestos claims.  (Id.)  Cooper asserts breach of the Stock Purchase Agreement, and for contribution, indemnification and reimbursement, against the Federal-Mogul Purchasers and Federal-Mogul Products because of its obligations under the Guaranty.  Cooper, therefore, argues that its holds substantial claims against FM Products, and other Federal Mogul Purchasers.  It is necessary, however, due to the substance of this appeal, to trace the history of the various transactions and obligations that are impacted by the asbestos personal injury claims in the underlying bankruptcy.

---

[1]  References to A-_____ are exhibits in Appellant's Appendix.

In 1985, Cooper acquired McGraw-Edison Company ("McGraw-Edison") by a cash/tender merger. (Id. at A-72.) When Cooper acquired McGraw-Edison, McGraw-Edison owned a subsidiary named Wagner Electric Corporation ("Wagner"), thereby making Wagner an indirect subsidiary of Cooper. (Id.) In 1994, Wagner contractually assumed certain asbestos liabilities pursuant to an Asset Purchase Agreement (the "Asset Purchase Agreement") with Pneumo Abex Corporation ("Pneumo Abex"), whereby Wagner purchased certain of Pneumo Abex's assets and assumed certain liabilities. (Id.) Wagner expressly agreed to "assume and become liable for" certain Penumo liabilities, including certain Pneumo asbestos related liabilities (the "Assumed Asbestos Liabilities") (see id. at A-72-A-73.). Also, Wagner agreed to "indemnify, defend, and hold harmless" Pneumo regarding the Assumed Asbestos Liabilities. (Id. at A-74.) Appellees assert that the intent of the parties to the 1994 Asset Purchase Agreement, was that Wagner was to indemnify Pneumo on an after-insurance basis so that Cooper would retain the benefit of approximately $1.2 billion in asbestos liability. Although Cooper alleges that Wagner assumed the asbestos-related liability, Cooper's Proof of Claim only asserts an after-insurance indemnity claim.

In addition, Cooper entered into a Mutual Guaranty Agreement (the "Guaranty") pursuant to which it guaranteed to Pneumo Abex and its parent Abex, Inc., performance of Wagner's obligations under the 1994 Asset Purchase Agreement. (Id.) Subsequent to purchasing Pneumo Abex, in 1996, Wagner merged with Moog Automotive Products, Inc. ("Moog"), with Moog being the surviving entity. (Id.)

-4-

In 1998, the Federal-Mogul Purchasers purchased 100% stock of Moog from Cooper under the 1998 SPA, and thereby expressly assumed and contractually indemnified Cooper and its affiliates with respect to Cooper's Guaranty to Pneumo and its parent company in connection with Wagner's Assumed Asbestos Liabilities. (Id. at A-74-A-77.) As a result of Debtors' Chapter 11 cases, FM Products ceased defending and paying the Assumed Asbestos Liabilities on behalf of Pneumo. (Id. at A-77.) Pneumo has called upon Cooper to honor FM Products' obligations under the Guaranty, and Cooper has done so. (Id.) Cooper claims that it has paid over 47,774 individual asbestos claimants more than $100 million dollars or Assumed Asbestos Liabilities. Consequently, Cooper argues that FM Products is responsible for these claims.

**B.    Bar Date Order**

Relevant to this appeal is Judge Newsome's, Judge Lyons's predecessor, August 30, 2002 Order (the "Bar Date Order"), which established March 3, 2003 as the "Bar Date." The Bar Date is the deadline for filling all "general claims" against the U.S. Debtors, with the exception of direct asbestos personal injury claims against the debtors. (See Appellee Exh. C.) The Bar Date Order required all claimants to file by the General Bar Date, March 3, 2003

> [w]hether in the nature of or sounding in tort, contract, warranty, restitution, conspiracy, contribution, guarantee, indemnity, subrogation, or any other theory of law, equity, or admiralty . . .of any kind whatsoever ("Derivative Asbestos Claims")[2] . . .

---

[2] "Derivative Asbestos Claims" are also referred to as "Indirect Personal Injury Claims."

(Appellee, Exh. C at 3.)  No bar date has been set with respect to the Direct Asbestos Personal Injury Claims, and therefore, these claimants have not yet been required to file a proof of claim on these cases.  (Appellee Br. at 9.)

As it will be discussed below, Cooper filed its Proof of Claim before the General Bar Date.  As the amounts of these claims increased, Cooper filed an Amended Proof of Claim, instead of filing a Claims Voting Motion.  Judge Lyons determined that the burden fell on Cooper to prove that this procedure was appropriate under the Bankruptcy Code or Bar Date Order.  (See A-204.)  In its Reply Brief, Cooper argues that "because Cooper was subrogated to those claimants' rights, Cooper was not required by the Bar Date Order to submit 47,774 separate proof of claim on their behalf."  (Reply at 16.)  Cooper, however, did not address this timeliness issue.  It is nevertheless important to note that Cooper's claims, even under a subrogation theory, are General Claims and not Direct Asbestos Personal Injury Claims.  Thus, the procedures and deadlines in the Bar Date Order apply here.

### C.    Cooper's Proof of Claim

On March 1, 2003 Cooper filed a Proof of Claim ("Original Proof of Claim") against FM Products and certain other Debtors on Official Form 10.  (See Proof of Claim against FM Products, A-18; Proof of Claim against Federal-Mogul Corp., A-1.)  The proof of claim against Federal-Mogul Corp. incorporated a lengthy narrative and multiple

exhibits exceeding 500 pages.[3]  In the box labeled "Name of Creditor," Cooper listed

"Cooper Industries, Inc., Cooper Industries (Canada) Inc. and "Affiliates" (as defined in

the Attachment).  (Appellant App. A-18).  The Original Proof of Claim was executed by

James R. Deen, Associate General Counsel, Cooper Industries; however, the face of the

Original Proof of Claim does not indicate that the claim was filed on behalf of Pneumo

Abex.  (Id.)  Also, in ¶ 2 of the Original Proof of Claim, it is stated that,

> Cooper submits this proof of claim on behalf of itself and all of its affiliated
> entities, directors, officers, employees and assigns (collectively, the
> "Affiliates") for all amounts owing to Cooper and its Affiliates under the
> [1998] Stock Purchase Agreement.

(Id. at A3.)

The most substantial claim was titled "Asbestos Claims," in which Cooper

identified the amount of its actual out-of-pocket defense, indemnity, and other costs

related to FM Products' Assumed Asbestos Liabilities (Id. at A-10.)  Cooper stated that it

"continues to be subject to such claims at present and expects to continue to be subject to

such claims, for which it is entitled to be indemnified from the [Federal-Mogul

Purchasers], and the other entities that they have caused to indemnify Cooper and its

Affiliates, in the future.  (Id.)  In the Proof of Claim's Exhibit B, Cooper submitted a list

of individuals who had settled and were paid asbestos-related claims.  (Id. at A-15-A-17).

In addition, Cooper stated:

> Pursuant to Rule 3005 of the Federal Rules of Bankruptcy Procedure, to the

---

[3]  The attachments to Cooper's Federal-Mogul Products proof of claim, as well as the
other cases directed the parties to the attachment filed in the Federal Mogul Corp. case.

> extent necessary to preserve their rights, Cooper and its Affiliates submit
> this proof of claim in their own names, and in the name of each of the
> plaintiffs reflected or represented [in] Exhibit B, as well as in the name of
> Pneumo Abex.

(Id. at A-11.)  Contrary to Appellees contention, see Appellee Br. at 11, Cooper does

make reference to Pneumo Abex, Bankruptcy Rule 3005, and its right of subrogation

under the "Asbestos Claims" category.

Cooper submitted two amended Proofs of Claim against FM Products on July 12,

2004 (the "First Amended Proof of Claim"), see Appellant Exh. G, and on November 2,

2004 (the "Second Amended Proof of Claim"), see Exh. I (the Amended Proof of Claim,

collectively with the Original Proof of Claim, the "Proof of Claim.")  The face of each the

First and Second Amended Proof of Claim contained the identical names in the "Name of

Creditor" box on Official Form No. 10.  The First Amended Proof of Claim incorporated

by reference the Attachments in the Original Proof of Claim.  (See A-68.)  The Second

Amended Proof of Claim contained more substantial Attachments, in which Cooper

stated:

> Cooper and its Affiliates submit this amended proof of claim in their own
> names, and in the name of each of the 47,774 plaintiffs reflected or
> represented on Exhibit A1 and/or Exhibit B, as well as in the name of
> Pneumo Abex.

(See Second Amended Proof of Claim ¶ 20; A-79.)

## II.  Jurisdiction and Appellate Review

Jurisdiction to hear this appeal exists pursuant to 28 U.S.C. § 158(a)(1), as the

December 14 Order was a final order of a bankruptcy court.  In reviewing the decisions of

a bankruptcy court, a district court applies a clearly erroneous standard to findings of fact,

conducts plenary review of conclusions of law, and must break down mixed questions of

law and fact, applying the appropriate standard to each component.  In re Woskob, 305

F.3d 177, 181 (3d Cir. 2002); Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir.

1992).  Upon a determination that the bankruptcy court's factual findings are not clearly

erroneous, the district court must examine whether the factual findings are legally

sufficient to support the bankruptcy court's conclusions of law.  See Universal Minerals,

Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir. 1981).  The [district] court reviews

mixed questions of law and fact under a mixed standard, affording a clearly erroneous

standard to integral facts, but exercising plenary review of the [bankruptcy] court's

interpretation and application of those facts to legal precepts.  In re Top Grade Sausage,

Inc., 227 F.3d 123, 125 (3d Cir. 2000).  Thus, the law of the Circuit requires the Court to

employ a piecemeal review of the Bankruptcy Court's analysis, not simply a *de novo*

review of mixed questions of law and fact.  Cf., In re Gulfstar Indus., 236 B.R. 75 (M.D.

Fla. 1999) (applying de novo review to mixed questions of law and fact).

        The standard of review in a bankruptcy appeal is of critical importance.  In their

respective briefs the parties dispute the standard of review that this Court should apply to

the December 14 Order.  Nevertheless, at the June 6, 2005 hearing Cooper stated that the

sole issue on appeal was whether Judge Lyons' legal conclusion was correct.  (See June

6, 2005 Tr. at 36.)  The reviewing court will exercise plenary review over the proper

-9-

interpretation of a statute.  See In re McDonald, 205 F.3d 606, 609 (3d Cir. 2000).

However, it could also be said that Judge Lyon's *temporary* allowance of claims for

voting purposes pursuant to Fed. R. Bankr. P. § 3018(a) is reviewed under an abuse of

discretion standard.  See In re Armstrong, 292 B.R. 678, 684 (B.A.P. 10th Cir. 2003.)

(citing In re Marin Town Ctr., 142 B.R. 374, 379 (N.D. Cal. 1992); see also, United

States v. Owens, 84 B.R. 361, 363 (E.D. Pa. 1988) (holding that the allowance or denial

of an amended proof of claim is discretionary, our review in this case is under an abuse of

discretion standard).  Because the focus of this appeal is Judge Lyon's interpretation of

Rule 3005 and § 509, and whether Cooper is entitled to more voting rights under the

Bankruptcy Code, a plenary review is appropriate.

## III.  Analysis

Cooper asserts that the Bankruptcy Court erroneously ruled that it was not entitled

to vote claims for each of the 47,774 claimants on three grounds.  (Appellant Br. at 18.)

First, Cooper argues, contrary to the December 14 Order, that it did comply with the

technical requirements of Fed. R. Bank. P. 3005.  (Id. at 19-26.)  Second, Cooper attacks

Judge Lyon's determination that Cooper could not subrogate itself to the rights of

asbestos tort plaintiffs under section 509 of the Bankruptcy Code.  Lastly, Cooper argues

that the equities and policies surrounding section 509 require that Cooper be permitted to

vote on behalf of all of the asbestos claimants.  (Id. at 37-38.)

Appellees have filed a Motion for Leave to Supplement Record on Appeal

Instanter, and Appellant has filed a Motion to Strike Portions of Appellees' Brief.  These

motions were not argued at the June 6, 2005 hearing.  Nevertheless, Cooper filed a

Motion for Procedural Order Authorizing the Filing of Supplemental Brief Concerning

Bankruptcy Code Section 509(b)(2), which essentially reargues the same points proffered

in its Motion to Strike.  The arguments raised in these motions go to the scope of the

Court's review as it relates to the December 14 Order.  Thus, the merit of these arguments

will be addressed first.

### A.    Motion for Leave to Supplement Record on Appeal Instanter

On February 25, 2005, Debtors filed a Motion for Leave to Supplement Record on

Appeal Instanter and Appellees' Brief (hereinafter the "Supplemental Motion"), and

attached as Exhibit A a Proof of Claim filed by Pneumo-Abex against Federal-Mogul

Products, Inc (the "Pneumo POC").  Cooper argues that the Supplemental Motion should

be denied because Fed. R. Bankr. P. 8006 does not allow for an untimely supplemental

designation.  (Opp. Br. to Supp. Mot. at 1.)[4]  In addition, Cooper argues that the Pneumo

POC should not be allowed on this appeal because it does not assert the same liquidated

claims upon which Cooper is basing its right to vote.


Appellees concede that under the Federal Rules of Bankruptcy Procedure the

Pneumo POC was untimely submitted for this appeal.  (See Appellees Br. at 2.)  Under

---

[4]  Interestingly, on this issue, Cooper advocates technical compliance with the Fed. R. Bankr. P. 8006; yet, on appeal, Cooper asserts that this Court should disagree with Judge Lyon's determination that Cooper did not technically comply with Fed. R. Bankr. P. 3005.  Debtors also make converse arguments as to these two issues.

Fed. R. Bankr. P. 8006, an appellant must file a "designation of the items to be included in the record on appeal and a statement of the issues to be presented" within ten (10) days of filing a notice appeal of a Bankruptcy Court decision.  Fed. R. Bankr. P. 8006.  Within ten (10) days of the filing of this statement, the appellee must file a cross-designation of additional items to be included in the record, and, if the appellee wishes to cross appeal, a statement of issues.  Id.  Here, Appellees did not file a cross-appeal; hence, Appellees had ten (10) days to "file a cross-designation of additional items to be included on the *record*," which they failed to do.

In a non-precedential case, the Third Circuit held that "Rule 8006 plainly states that the cross-appellee must file its designation of additional items within 10 days of service of the cross appellant's statement," and therefore, an untimely submission is a bar to the appellate record  See Abrahams v. Kindred Healthcare Inc. (In re Vencor Inc.), Case No 03-2670, 2004 WL 843283 at *3 (3d Cir. April 21, 2004).  Without mention of In re Vencor Inc. in its Motion, Apellees argue that the case should not be considered because it is non-precedential and its holding is limited to *issues* on appeal, rather than additional *items* to be included on the record.  (See Reply to Motion to Supp. at 3.)[5]

_____

[5] Appellees' argument is without merit on both counts.  First, although unpublished opinions lack precedential value, citation to unpublished opinions is not prohibited under the Third Circuit Local Appellate Rules, and therefore, such opinions may serve as persuasive authority.  See L.A.R. 28.3(a) (3d Cir. 2003); I.O.P. § 5.3 (3d Cir. 2005).  Notably, the Third Circuit has cited to unpublished opinions from other Circuits.  See City of Newark v. Department of Labor, 2 F.3d 31, 33 n.3 (3d Cir. 1993) ("although we recognize that this unpublished opinion lacks precedential authority, we nonetheless consider persuasive its evaluation of a factual scenario identical to the one before us in this case").  If the opportunity arose here, it is likely that the Third Circuit would find highly persuasive an unpublished opinion from its own bench.  See United States v. Polan, 970 F.2d 1280, 1283 (3d Cir. 1992) (citing an unpublished Third

The language in Fed. R. Bankr. P. 8006 is unambiguous. However, <u>Vencor</u>

applies to *entirely new* items to the litigation in which the party tries to include in the

appellate record, and not those items that were reviewed by the bankruptcy court as part

of the matter being appealed and not included in the appellate record, or items filed with

the bankruptcy court as part of the debtor's Chapter 11 proceeding and not included in the

appellate record. Consequently, the Third Circuit has affirmed a district court ruling that

found it immaterial whether the bankruptcy court had actually considered any of these

documents because they had all been available to the bankruptcy court for its

consideration [of the matter being appealed]. <u>Nantucket Investors II v. California Fed.</u>

<u>Bank</u> (<u>In re Indian Palms Assoc.</u>), 61 F.3d 197, 201 (3d Cir. 1995). Thus, because the

contested items were already filed in the bankruptcy case record, the Circuit held that

they were part of the relevant record in this contested matter, and accordingly affirmed

the district court's denial of a motion to strike. <u>Id.</u> at 203.

Here, not only was the Pneumo POC in the bankruptcy record, but it was also

submitted to the Bankruptcy Court in the matter contested on this appeal. The

Bankruptcy Court took judicial notice of all "documents on file in these cases." (<u>See</u>

December 14 Order at 1.) This is not a designation of *additional* items like <u>Vencor</u>, but

rather, an attempt by the Appellees to proffer a document that was submitted to the

Bankruptcy Court, yet left out of the Appellant's Appendix. Pursuant to <u>In re Indian</u>

_____

Circuit disposition). Also, because Fed. R. Bankr. P. 8006 also plainly speaks of "items to be included on the record" the argument that <u>Vencor</u> only apples to *issues* is unavailing.

Palms, it makes little difference that no party specifically referenced the Pneumo POC in the contested matter, or that the Bankruptcy Court did not expressly rely on the document in making its decision. Therefore, the Pneumo POC can be considered by the reviewing district court. This decision is further buttressed by the bankruptcy rule allowing a district court to suspend requirements of Rule 8006 "in the interest of expediting decision or for other good cause." Fed. R. Bankr. P. 8019; see, e.g., In re Beck-Rumbaugh Associates, Inc., 80 B.R. 306, 307 (E.D. Pa. 1987). Therefore, the Pneumo POC was not untimely submitted, despite its characterization as such.

The relevance of the Pneumo POC to the present appeal is vigorously attacked by Cooper. Part III.C, infra, will determine that the existence of a proof of claim filed by Pneumo Abex is irrelevant to this Court's review of Judge Lyon's December 14th Order. Unlike Cooper's subrogation claims, Cooper is correct in asserting that Pneumo's POC asserts entirely different liquidated claims , which are not based upon paying asbestos claimants themselves. (Cooper Opp. Br. to Debtors Supp. Mot. at 5-6.) Also, Pneumo asserts many unliquidated claims, which are separate and apart from the costs Cooper has already borne. (See Pneumo POC, ¶ 25.) As such, the mere fact that Pneumo filed a POC does not impact Cooper's ability to make claims in accordance with its Guaranty with Pneumo Abex. Accordingly, Debtors' Motion for Leave to Supplement Record on Appeal Instanter and Appellees' Brief, as it relates to the Pneumo POC, will be denied as moot.

### B.    Motion to Strike Portions of Appellees' Brief

-14-

Cooper has filed a motion to strike those portions of the Appellees' Brief that (i) are not supported by the appellate record; and/or (ii) raise legal arguments that were not presented to the Bankruptcy Court below. (Cooper Mot. at 1.) Appellees assert that it was necessary to make the arguments on appeal, and reference facts not on the appellate record, in order to respond the Cooper's right of subrogation theory that was first raised in Appellant's Opening Brief. (Appellee's Br. at 3-5.)

As a general rule a party may not raise a new issue on appeal. <u>Barrett v. Commonwealth Fed. Sav. & Loan Ass'n</u>, 939 F.2d 20, 25-26 (3d Cir. 1991) (citing <u>Bethlehem Mines Corp. v. United Mine Workers of America</u>, 494 F.2d 726, 735 (3d Cir. 1974)). Ordinarily, an issue not raised by the pleadings *or otherwise* in the District Court will not be heard on appeal absent "extraordinary circumstances." <u>Id.</u> (emphasis added). Here, however, Appellant is arguing that Appellees raised new issues in their Brief; yet, Appellees assert that these new issues were first raised in the Opening Brief, and therefore, Appellees were merely responding to the Appellant's arguments. The Third Circuit has not specifically addressed whether a reviewing district court is permitted to address either party's new argument.

The theory articulated in its Opening Brief was that Cooper should be able to subrogate itself to those asbestos claims that Cooper has paid on behalf of Pneumo Abex. Appellees note that Cooper proffered no less than eleven (11) new arguments in its Opening Brief in support of its subrogation theory. (<u>See</u> Appellees' Resp. to Mot. to Strike at 6.) These arguments were not asserted by Cooper in its Motion to Enforce the

Voting Procedures Order, the subject of this appeal, or in its Reply to the Plan

Proponents' Objection.  (See Appellees' Reply to Mot. to Strike at 4.)  Logic, coupled

with fairness, necessitates that a reviewing court confronted with this issue has one of two

options on appeal: it can *disallow both arguments* as it relates to Cooper's subrogation

theory, or the Court can evoke its discretion and *consider both arguments*.

    Nevertheless, it is questionable that the subrogation theory raised here, is even a

"new issue" on appeal.  It is undisputed that the theory was not briefed to the Bankruptcy

Court, however, subrogation matter was raised at the oral hearing.[6]  This would satisfy the

"or otherwise" language of <u>Barrett</u>, 939 F.2d at 25-26, and therefore, would not implicate

the general rule that bars new issues being raised on appeal.  Hence, it would be

---

    [6]  The subrogation theory was asserted by Cooper's attorney, Mr. York, as evidenced in
the following colloquy:

> MR. YORK:  Because Federal Mogul assumed the same the same
> liability.  So they can sue both.  Once Cooper pays Pneumo Abex, because
> Pneumo Abex can look to either Federal Mogul Products or Cooper, once
> Cooper pays Pneumo Abex, Cooper then steps into the shoes on Pneumo
> Abex . . . . [d]o you understand that point?
> THE COURT: Yes.
> MR. YORK: It's a subrogation.
> THE COURT: Subrogation.  Right.

(A-182.)

Later, Judge Lyons stated:

> THE COURT: And I don't believe that the Rule [Rule 3005]
> would countenance Cooper's subrogation claim at this point that
> because Cooper has paid claims that were asserted against Pneumo
> Abex, that Cooper's entitled to step into the shoes of Pneumo
> Abex, who may have direct liability to a personal injury claimant.

(A-209.)

appropriate to deny Cooper's Motion to Strike because it seeks to limit the admission of this theory that is not really a "new theory."  Moreover, it would be unfair to strike those portions of Appellees brief when they are made in response to arguments raised in Appellant's Opening Brief.

Similar to the analysis conducted in Part III.A, supra, the arguments for or against the admission of those facts relating to the Pneumo POC are not relevant to the Court's review of the December 14 Order.  Consequently, Appellant's Motion to Strike will be dismissed as moot.

C.      **Motion for Procedural Order Authorizing the Filing of Supplemental Brief Concerning Bankruptcy Code Section 509(b)(2)**

Cooper asserts that during the oral argument held June 6, 2005, Debtors based the entirity of its argument on a new theory; that is, Debors argued that section 509(b)(2) of the Bankruptcy Code precluded Pneumo (through whom Cooper is claiming rights) from subrogating itself to the rights of the asbestos tort plaintiffs because Debtors allegedly never raised this theory to the Bankruptcy Court, or in the briefs submitted to the District Court.  (Mot. for Proc. Order at 1.).  Cooper therefore requests leave to file a supplemental brief.

Based upon the discussions in Part III.A and III.B, supra, the grounds for this motion are also without merit.  The Court will not consider the arguments raised in Cooper's Supplemental Brief because the Bankruptcy Court considered the legal requirments for subrogation and based its ruling, in part, on Cooper's failure to establish

-17-

at the hearing or in its moving and reply papers, any right to be subrogated to the rights of the asbestos personal injury claimants.  Hence, arguments related to the various subrogation theories under § 509 have been fully briefed and advocated in the submissions and the June 6 oral hearing.  As such, they are not "new" arguments and Cooper's motion will be denied as to this claim.

### D.    Technical Compliance with Fed. R. Bank. P. 3005

At the December 2, 2004 hearing, Judge Lyons made several statements about Cooper's technical compliance with Rule 3005(a).  First, he stated that it was Cooper's responsibility to come forward immediately if it discovered its ballots were incorrect, due to the fact that the claims agent did not do the "right thing."  (See A-203)  Second, he determined that the burden fell on Cooper to file a Claims Voting Motion, in the event the amount was wrong, not an amended proof of claim during the vote solicitation period. (See A-204.)  Judge Lyons, however, did not base his decision on these technicalities, but rather stated, "[t]here are procedural deficiencies, I think, that can be attributable to both sides.  And this result shouldn't turn on procedural deficiencies because it is too important." (A-206-07.)  Judge Lyons's sentiments were further elaborated on when he stated to Cooper's counsel, "I'm trying to do justice for your client despite the fact that I think that the lawyers dropped the ball."  (See A-213.)

Thus, it is clear that Judge Lyons did not base his December 14 Order on procedural technicalities.  Moreover, at the June 6, 2005 appellate argument it was agreed that Judge Lyons did not base his decision on the technical aspects of the proof of claim.

(See June 6, 2005 Tr. at 17.)  Much has been made in this litigation concerning what was and what was not decided by the various courts.  Judge Lyons's statements, regarding Cooper's technical compliance of Rule 3005, support his ultimate decision.  Cooper appeals those findings in its papers submitted in this appeal.  It is therefore appropriate to consider these agruments here.

Bankruptcy Rule 3005, entitled "Filing of Claim, Acceptance, or Rejection By Guarantor, Surety, Indorser, or Other Codebtor" is implicated here because Cooper was a guarantor of FM Products' obligations to Pneumo.  Rule 3005 provides, in relevant part:

> If a creditor has not filed a proof of claim pursuant to Rule 3002 . . ., an entity that is or may be liable with the debtor to that creditor, . . . may, within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) . . ., execute and file a proof of claim *in the name of the creditor, if known, or if unknown, in the entity's own name*.

Fed. R. Bankr. P. 3005(a) (emphasis added).  There is substantial disagreement over what technicalities are at issue.  In its Appeal, Cooper argues that under Rule 3005, it is not required to file 47,774 separate proof of claim; that is, 47,774 actual pieces of paper (ballots).[7]  This point, however, does not appear in controversy on appeal and Appellees concede as much.  (See Appellees' Br. at 36.)  Judge Lyons's focus was whether Cooper complied with the *substantive* requirements, not the actual quantity of ballots, for casting votes on behalf of 47,774 individual asbestos torts claimants.  (Id.)

A proof of claim filed pursuant to Rule 3005 should conform to the requirements

---

[7]  Also, Appellees state that the Attachment to Cooper's Second Amended Proof of Claim only contains the names of approximately 2,000 named individuals–the remaining claimants are unnamed.  (See Appellees' Br. at 33 n.7.)

of Bankruptcy Rule 3001, which states:

> Form and content. A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.

Here, Cooper is allegedly asserting a Proof of Claim on behalf of Pneumo Abex, yet Cooper did not include any reference to Pneumo Abex or Rule 3005 *on the face* of Official Form No. 10., as it relates to Federal-Mogul Products. Instead, Cooper included this information on page 10 of the Appendix that accompanied Federal-Mogul Corp.'s proof of claim. (See A-11 at ¶ 18; see, supra, note 3.) Also, Cooper included in its Appendix the names of the asbestos plaintiffs, or the name of the lead plaintiff, where Cooper had allegedly satisfied these claims. (See A-57, A-79.). Lest there be any confusion here, Cooper's compliance *in form* with the Bankruptcy Rules is less than ideal, but is nonetheless sufficient to notify the debtor and the bankruptcy court the substance of its claims. The viability of these claims will be addressed below; yet, the reasoning of Adair v. Bartholow, 107 B.R. 116 (N.D. Tex. 1989) ("In re Great Western Cities, Inc. of New Mexico") is highly persuasive in that

> Neither section 501 nor Rule 3001 prohibits an agent with authority from filing claims on behalf of a large group of individuals. The court finds no support for the absurd practice that would flow from a contrary rule, pursuant to which the bankruptcy court and clerk would be inundated by 2,500 separate proof of claim rather than one or more documents that expressly identify each creditor.

Id. at 119.[8] Rightfully, Judge Lyons did not premise his December 14 Order on these

---

[8] The court in In re Great Western Cities, Inc. of New Mexico, explained the difference between group claims, at issue here, and class action claims brought in accordance with Fed. R.

technicalities, and stated, "[t]his result shouldn't turn on procedural deficiencies because it's too important." (A-206-207.) Indeed, Judge Lyons observed there "are sins of omission on both sides." (A-206.) Further, principles of equity dictate "that substance will not give way to form [and] that technical considerations will not prevent substantial justice from being done." Pepper v. Litton, 308 U.S. 295, 305 (1939). As such, it is not necessary to address Appellees' waiver argument under Fed. R. Civ. P. 60(b). (See Appellees' Br. at 34.)[9] Because Judge Lyons did not base his decision on these technical requirements, it is difficult to comprehend why they are being appealed. Tentatively, it is determined that Cooper's technical compliance with Rule 3005 was adequate, and the question of whether Cooper has a substantive claim will be addressed in Part III.D, infra. In any event, a decision based upon technicalities makes little difference on this appeal because like Judge Lyons, this Court finds Cooper's claims untenable under Rule 3005.

### D.    Cooper's Subrogation Claim under Rule 3005

The crux of Judge Lyon's decision was that Cooper had an indemnification claim, and not a right of subrogation as to the Asbestos Personal Injury Claimants. Federal-

---

Civ. P. 23 in the context of a bankruptcy case. Thus, the asbestos personal injury claimants are not a "class" within the meaning of Fed. R. Civ. P. 23. In re Great Western Cities, Inc. of New Mexico, 107 B.R. at 118. Consequently, the requirements that Appellees speak of regarding class certification do not apply. (See Appellees' Br. at 33.) Also, contrary to Appellees argument, see id. at 34, the verified statement submitted by *an agent* under Rule 2019 does not apply here for the simple fact that Rule 3001(b) does not require an attorney acting as agent for a group of creditors to produce proof of agency until evidence controverting the agency has been presented. See Rule 3001(b).

[9] Appellees contend that Cooper has waived its ability to challenge the Bar Date Order filed August 20, 2002.

Mogul seeks to affirm that decision on the grounds that a creditor, such as Cooper, is

barred by the Bankruptcy Code from pursuing a remedy in subrogation *and* a right for

reimbursement.[10]  Cooper, however, argues that its subrogation rights do not overlap its

indemnity claims.  (Cooper Reply at 3.)

Judge Lyons first determined that Cooper had a contractual right to

indemnification against each of the four cases.[11]  (A207.)  As to the number of claims,

Judge Lyons stated that:

> [Rule] 3005 does not apply here because the transactions that have been
> described to me don't put Cooper and any of the debtors into a situation
> where Cooper and the debtor are liable to the same injured claimant.

(Id.)  Judge Lyons looked to the language of Rule 3005, and determined that "creditor" in

the Rule referred to the asbestos personal injury claimant.  (See id.)  "The only debtor,"

opined Judge Lyons, "that seems to me is directly exposed to personal injury claims from

asbestos personal injury claimants relating to the old Wagner business, is Federal Mogul

Products, the successor to that company."  (Id.)  Or stated differently, Cooper is not a

"creditor" under Rule 3005 because it is not directly liable to any asbestos personal injury

---

[10]  The doctrine of subrogation enables one who pays the debt of another to "stand in the shoes" of the latter party and assert whatever rights that party held.  Pearlman v. Reliance Ins. Co., 371 U.S. 132, 137 (1962).  It applies where a party pays a debt or discharges an obligation for some type of liability rather than voluntarily.  See Miller v. Concord-Liberty Savings & Loan Assoc. (In re Miller), 72 Bankr. 352, 353 (Bankr. W.D. Pa. 1987).  Whereas, contribution is the right that gives one of several persons who are liable on a common debt the ability to recover ratably from each of the others when that one person discharges the debt for the benefit of all. Black's Law Dictionary, at 329 (7th ed. 1999).

[11]  That is, the buyers that were named in the stock purchase agreement with Cooper: Federal-Mogul Corporation, Federal-Mogul Products, FMUK Holding Limited, and FM International, LLC.

claimant. Rather, Cooper merely guaranteed Wagner's assumption and indemnity to

Pneumo Abex. (Id.) In addition, Judge Lyons determined that Rule 3005 concerns an

entity who has secured that creditor, and "creditor" here refers to the personal injury

claimant. (Id.) Thus, Judge Lyons held that Cooper has not secured or guaranteed any

claim to any personal injury claimant. (Id.)

Next, Judge Lyons determined that Rule 3005 would not countenance Cooper's

subrogation claim just because Cooper had paid claims that were asserted against Pneumo

Abex. (A-209.) Hence, he stated that Cooper could not "shoehorn" itself under Rule

3005 into 48,000 individual claims, and held that Cooper was entitled to only one vote in

each of the four cases. (Id.)

Regarding the class of votes, Judge Lyons reasoned that Cooper's liquidated

indirect asbestos claims could be counted as "Class J" because it is the class for asbestos

personal injury claims. (Id.) To the extent that Cooper has a liquidated amount that is not

an indirect asbestos claim, Judge Lyons stated that it should be counted as Class H, the

class for general unsecured creditors. (Id.) Then, Judge Lyon's looked to the Voting

Procedures Order, and observed that the Voting Record Date [June 11, 2004] "is the date

that counts" regarding the identification of a particular claimant and the amount of that

claim. (A-209-210.) He then stated that the burden should be on Cooper to demonstrate

that the amount was wrong after the Voting Record Date. (A-210.)

Nevertheless, Judge Lyons determined that the Voting Procedures Order did not

create a specific deadline that actually addresses the circumstances here; that is, a

partially liquidated claim, and a partially unliquidated claim.  (See id.)  Judge Lyons

stated that in order to "do substantial justice," Cooper would have to have the opportunity

to show how its claims should be increased.  (Id.)  Thus, he determined that the *liquidated*

amounts in the March 1, 2003 proof of claim should be one vote in each of the four cases,

and the amount of such Class J votes, would not make a difference.  (A-210-211.)[12]

Judge Lyons, however, did acknowledge that if it was demonstrated that it would make a

difference, there might be a need for a future hearing. (See A-213.)[13]

    After the hearing, the December 14, 2004 Order Granting in part and Denying in

part Cooper Industries, Inc.'s Motion (I) To Enforce Voting Procedures Order, or (II) For

an Order Pursuant to Fed. R. Bankr. P. 3018(a) Temporarily Allowing its Claims for

Voting Purposes determined that:

> Cooper's ballots to reject the Debtors' Third Amended Joint Plan of
> Reorganization (the "Plan") for each Federal-Mogul Corporation and
> Federal-Mogul Products, Inc. shall be tabulated as follows: (a) 1 Class H
> vote with a total dollar amount of $924,436.98 and (b) 1 Class J vote with a
> total dollar amount of $16,861,613.90.

---

[12]  Cooper claims that the Voting Agent erroneously pre-printed each of Cooper's
liquidated, noncontingent ballots with a voting amount of $1.00. (A-111.)  One dollar is the
amount the Voting Procedures strictly reserved for claims that are "wholly unliquidated,
contingent and/or disputed."  See Voting Procedures, § V(a)(ii)(6) (emphasis added).  Cooper
amended these ballots by hand to reflect the amount it has claimed.  (A-111.)

[13]  The December 14 Order stated:

> [e]ven if the Court were to increase Cooper's voting amounts in Class J under the
> Plan . . . to the full $132,656,807.62 requested, such increase would not cause
> Class J to reject the plans for either Federal-Mogul Corporation or Federal-Mogul
> Products, Inc. . . . .

(Dec. 14 Order ¶ 5.)

(Dec. 14 Order ¶ 6.)  In the next paragraph, the Order stated:

> Because FM UK Holding Limited and FM International LCC did not have a
> Class J ascribed to them under the Plan, Cooper is entitled to vote the entire
> amount of its claims against those debtors in Class H under the Plan.
> Accordingly . . . Cooper's ballots to reject the Plan for each of FM UK
> Holding Limited and FM International LLC shall be tabulated as follows: 1
> Class H vote with a total dollar amount of $17,786,050.88.

(Id. ¶ 7.)

The reviewing court will exercise plenary review over the legal question of the

proper interpretation of a statute.  See In re McDonald, 205 F.3d 606, 609 (3d Cir. 2000).

However, Judge Lyon's allowance of claims for voting purposes pursuant to Fed. R.

Bank. P. § 3018(a) is reviewed under an abuse of discretion standard.  See In re

Armstrong, 292 B.R. 678, 684 (B.A.P. 10th Cir. 2003) (citation omitted).

Appellant argues that the Bankruptcy Court's ruling that Cooper could not

subrogate itself to Pneumo's own subrogation rights is contrary to section 509 of the

Bankruptcy Code.  Appellees, however, assert that the threshold issue is whether a

guarantor can initially elect an indemnification right, and then assert a subrogation right.

Thus, the relationship of sections 502 and 509 are of critical importance.  Section

502(e)(1)(C) requires the court to disallow any claim for reimbursement or contribution

of an entity that is liable with the debtor on or has secured the claim of a creditor, to the

extent that "such entity asserts a right of subrogation to the rights of such creditor under

section 509" of the Bankruptcy Code.  11 U.S.C. § 502(e)(1)(C); see 11 U.S.C. § 509.

Thus, a codebtor's claim for reimbursement or contribution, to the extent allowed, is

subordinate to the underlying creditor's claim until such time as the codebtor has paid the

-25-

underlying creditor in full.  <u>Leavell v. Karnes</u>, 143 B.R. 212 (S.D. Ill. 1990).

As such, a codebtor, guarantor or surety must elect a claim for reimbursement or contribution under section 502 or subrogation under section 509.  <u>See</u> 124 Cong. Rec. H11,094 (daily ed. Sept. 28, 1978).  A codebtor's proof of claim is evidence of its election between sections 502 and 509.  <u>See, e.g.</u>, <u>Fisher v. Outlet Co. (In re Denby Stores, Inc.</u>), 86 B.R. 768, 773-76 (Bankr. S.D.N.Y. 1988) ; <u>see also</u> <u>In re Microwave Prods. of Am., Inc.</u>, 23 C.B.C.2d 1065, 118 B.R. 566 (Bankr. W.D. Tenn. 1990) ; H.R. Rep No. 595, 95th Cong., 1st Sess. 358-59 (1977) ("The right that applies in a particular situation will depend on the agreement between the debtor and the codebtor, and on whether and how payment was made by the codebtor to the creditor."); S. Rep. No. 989, 95th Cong., 2d Sess. 73-4 (1978) (same).  Rule 3005 requires an entity which seeks subrogation to file a claim in the creditor's name, if known.  But if the creditor is unknown, the rule permits filing in the entity's own name.  Hence, these provisions taken together insure that only one creditor will be entitled to satisfy its claim for the same debt from the estate.

The last paragraph of the "Asbestos Claims" section in Cooper's Proof of Claim states: "such filing is not intended at this time to be an election of remedies as between section 502 or 509 of the Bankruptcy Code."  (A-57.)  The proof of claim sought indemnification *or* subrogation: yet, under the Bankruptcy Code the same claim cannot be both.  This fact was not lost on Judge Lyons, who remarked to Cooper's counsel, "In your pleadings you describe everything as an assumption of liabilities and an indemnification . . . the plan proponents, on the other hand, talk only about indemnification and guarantee."

-26-

(A-162-163.)  Later, in the colloquy, it was determined that the Federal-Mogul Purchasers

of Moog agreed to *indemnify* for Cooper's guarantee obligation to Pneumo and that

Federal-Mogul Purchasers *assumed* the liability of Cooper's obligations related to Moog

[formerly Wagner].  (A-164-165.)  Under the dictates of the Bankruptcy Code, Cooper

cannot then straddle sections 502 and 509, and then choose the most advantageous section

once it has filed its proof of claim.

        Under § 509, in order for Cooper to be subrogated to the claims of asbestos

personal injury claimants against FM Products, both Cooper and FM Products must be

liable to those same asbestos personal injury claimants "at the same time on the same

debt."  Greenfield, Stein & Senior, LLP v. Daley (In re Daley), 222 B.R. 44, 47 (Bankr.

S.D.N.Y. 1998) (quotations omitted).  This conforms to principles of equitable

subrogation, which prohibits parties from subrogating itself to claims for which it is not

primarily liable.  See Rubenstein v. Ball Bros., Inc. (In re New England Fish Co.), 749.

F.2d 1277, 1282 (9th cir. 1984) (stating that under equitable subordination, one cannot

seek subrogation rights for paying one 's own debt).

        The Court agrees with Judge Lyons's determination that Cooper is not a "creditor"

within the meaning of Fed. R. Bankr. P. 3005.  In the Disclosure Statement, the

bankruptcy court approved the following description, without objection by Cooper (See

A-190), regarding the nature of Cooper's claim:

> Cooper may assert claims against the Debtors arising out of the 1994 and
> 1998 transaction agreements with respect to asbestos-related claims against
> Pneumo Abex.  Cooper contends that Federal-Mogul agreed to *indemnify* it
> against asbestos-related claims against Debtors with respect to these claims.

Thus, it is apparent that Cooper is not in a situation where it and the debtor are liable to the same injured claimant as a codebtor. The creditor, under Rule 3005, is not Pneumo Abex, but rather, the asbestos personal injury claimants. There is no clean link between Cooper and the creditors, Cooper merely guaranteed Wagner's assumption and indemnity to Pneumo Abex. The plain reading of Rule 3005 necessarily requires a direct shot between the creditor and the debtor. Also, and without caselaw indicating otherwise, the fact that Cooper paid claims asserted by these creditors, would not, by itself, trigger the Rule. Indeed, Judge Lyons noted that Cooper didn't guarantee anybody's liability to an injured party, and stated, "[i]sn't that crucial for 3005? It has to be either a party that's liable together with the debtor to a claimant, or someone who has guaranteed liability to a claimant." (A-179.) Later, Judge Lyons stated that,

> I don't see how you get to the [Federal Mogul Purchasers] as being potentionally debtors against whom you can file a claims on behalf of each individual personal injury claim, (A-185), . . . I understand your argument with regards to Federal Mogul Products because you are saying Federal Mogul products has primary liability to these injured parties. . . . And you [Cooper] step into the shoes of Pneumo by subrogation, (A-186). . . .

But, Judge Lyons could not see how Cooper and Federal-Mogul Products became liable to the same claimant by virtue of the Federal Mogul Purchasers indemnity to Pneumo Abex, (id.).

The June 6, 2005 hearing added clarity to this distinction. Cooper gave a Guaranty to Pnuemo Abex and it did not undertake any direct liability to the Asbestos Claimants. (See June 6, 2005 Tr. at 22.) The Guaranty, however, does not run in favor of the Asbestos Claimants. (See id.) Debtor correctly noted that there is nothing in the record

where Cooper gave an Asbestos Claimant of Pnuemo Abex a Guaranty.  (See id.)  Thus,

Cooper was not co-liable on an asbestos claim against the debtors, and therefore, are not

entitled to be subrogated to Pnuemo's rights.  (See id. at 23.)  Pursuant to 509(b)(a), when

a debt that has been paid is a primary liability of the co-debtor, there is no right to

subrogation.  (See id.)  Here, Pnuemo has direct primary liability to the Asbestos

Claimants.  (See id. at 25.)  The Bankruptcy Code does not allow a party such as Pnuemo

Abex the ability to subrogate to a creditor [Cooper] to whom it has primary liability.  (See

id.)

Moreover, Cooper has not established that FM Products contractually assumed

Pnuemo Abex's asbestos liability as part of the 1994 Asset Purchase Agreement.  Unlike

a stock purchase, a sale of assets does not vitiate the original company's liability.  It was

the sale of assets of Pnuemo Abex's friction products business, not the stock, to Wagner

in 1994 and the subsequent sale of stock of Moog Automotive to Federal-Mogul that have

resulted in FM Products' alleged liability to Pneumo Abex's asbestos personal injury

claimants.  The underlying creditors (the Asbestos Claimants) were not party to the 1994

transaction involving the sale Pnuemo Abex's assets to Wagner.

The case of In re Celotex Corp., 289 B.R. 460 (Bankr. M.D. Fla. 2003) speaks

about the atypical subrogation scenarios that often occurs in the asbestos bankruptcy

context, and provides a useful guidepost.  Like certain Federal Mogul debtors, Celotex

filed for chapter 11 protection in light of numerous asbestos personal injury claims.

Fibreboard Corporation, a co-judgment debtor with Celotex in several pre-petition

asbestos personal injury lawsuits imposing joint and several liability on both parties, purchased and obtained assignments of bodily injury judgments against itself and Celotex. See id. at 464. Fibreboard sought to be subrogated to the rights of the asbestos bodily injury claimants to pursue recoveries in Celotex's bankruptcy case. The Celotex court observed that under 509(a), a guarantor or surety "... is subrogated to the rights of [the] creditor if it:(1) is liable with the debtor on'(or has secured); (2) a claim of a creditor against [a] debtor; and (3) 'pays such claim. . Id. at 470 n.14 (quoting § 509(a)). Fibreboard's subrogation theory was rejected, and the court held that

> either under § 509 or a Florida theory of equitable subrogation, Fibreboard is not entitled to subrogation. Fibreboard is primarily liable with Celotex and, under each theory, it cannot be subrogated for paying its own debts. Further, this Court finds that to allow Fibreboard to be subrogated to funds specifically segregated for bodily injury claimants it was found to have injured would be unjust.

Id. at 473.

Like Celotex, Pnuemo Abex is the party that caused the alleged injuries of the Asbestos Claimants, and Pnuemo Abex is the entity that "received the consideration" for such claims. This fact alone means that Pneumo Abex, and Cooper as the purported subrogee to Pnuemo Abex, is prohibited from asserting a right of subrogation under § 509. Additionally, even if Cooper had established that FM Products had legally assumed the asbestos claims as part of the 1994 Asset Purchase Agreement (a claim which is unsupported by the record), the situation would be akin to two joint tortfeasors who were jointly and severally liable. As joint tortfeasors, both would be liable for the *entirety* of the claim; therefore, only the rights of contribution and indemnity would be triggered, not

-30-

rights of subrogation.

Therefore, after a plenary review this Court finds that Judge Lyons was correct to determine that Rule 3005 did not apply here, and that Cooper was relegated to one vote in each of the four bankruptcy cases as it relates to its liquidated claims.

### E.  The Equities Support Affirming the December 14 Order.

The over-arching law implicated by Federal Mogul's Chapter 11 bankruptcy is the channeling provisions of section 524(g).  The Third Circuit recently had opportunity in In re Combustion Eng'g, Inc., 391 F.3d 190 (3d Cir. 2004) to address the goals of section 524(g), a special form of supplemental injunctive relief for an insolvent debtor facing the unique problems and complexities associated with asbestos liability.  It stated

> Channeling asbestos-related claims to a personal injury trust relieves the debtor of the uncertainty of future asbestos liabilities.  This helps achieve the purpose of Chapter 11 by facilitating the reorganization and rehabilitation of the debtor as an economically viable entity.  At the same time, the rehabilitation process served by the channeling injunction supports the equitable resolution of asbestos-related claims.  In theory, a debtor emerging from a Chapter 11 reorganization as a going-concern cleansed of asbestos liability will provide the asbestos personal injury trust with an "evergreen" source of funding to pay future claims.  This unique funding mechanism makes it possible for future asbestos claimants to obtain substantially similar recoveries as current claimants in a manner consistent with due process.

Id. at 234.  Section 524(g) was enacted to give asbestos personal injury claimants significant rights in a Chapter 11 case by requiring that a plan be approved by 75% of the debtor's current asbestos claimants *by number*.  See 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb). (emphasis added).  Thus, each claimant is to receive one vote, regardless of the amount or number of such claims.

This is unlike the general Chapter 11 voting procedures under 11 U.S.C. 1126(c), whereby a plan can be accepted when "more than one-half in number of the allowed *claims* held by creditors . . . that have accepted or rejected such plan."  (emphasis added). Under the section 1126(c) scheme, a single creditor may vote multiple times in a single class if he holds more than one claim.  The Supreme Court has held that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.  Russello v. United States, 464 U.S. 16, 23(1983) (citation and internal quotation marks omitted).  Thus, Congress intended that the vote for plan approval under 524(g) be limited to the actual number of claimants, regardless of the quantum of their claim.

Appellees' equitable argument against Cooper's right to subrogation is compelling because these votes would not be used by asbestos personal injury claimants to reject or accept the plan of reorganization, but rather by Cooper.  (Appellees' Br. at 37-38.)  In keeping with the legislative goals to insulate current and future asbestos personal injury claimants under section 524(g), it is readily apparent that a large corporation such as Cooper would have different considerations from a personal injury victim, and therefore, conflicting motivations for voting for or against the plan.  As such, the equities would not support Cooper wielding 47,774 votes in Class 5J (asbestos claims).

## V.  CONCLUSION

For the foregoing reasons, the United States Bankruptcy Court for the District of

Delaware's Order of December 14, 2004 is affirmed. Appellees' Motion for Leave to

Supplement Record on Appeal Instanter and deny Appellant's Motion to Strike Portions

of Appellant's Brief is denied as moot. In addition, Appellant's Motion for Procedural

Order Authorizing the Filing of Supplemental Brief Concerning Bankruptcy Code Section

509(b)(2) is denied. An appropriate Order will be entered.

/s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
United States District Judge

Dated: June 28, 2005

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COOPER INDUSTRIES, INC., | : | Hon. Joseph H. Rodriguez |
| | : | |
| Appellant, | : | Civil Action No. 05-41 |
| v. | : | |
| | : | On Appeal from an Order of the |
| FEDERAL-MOGUL GLOBAL INC., *et al.*, | : | United States Bankruptcy Court |
| | : | for the District of Delaware in |
| Appellees. | : | Bankruptcy Case No. 01-10578 |
| | : | |
| _____: | | **ORDER** |

For the reasons set forth in the Court's Opinion filed even date,

   **IT IS HEREBY ORDERED** on this 28th day of June, 2005 that the December

14, 2004 Order of the Bankruptcy Court is **AFFIRMED**;

   **IT IS FURTHER ORDERED** that Appellees' Motion for Leave to Supplement

Record on Appeal Instanter [10] and Appellant's Motion to Strike Portions of Appellant's

Brief [12] is **DENIED AS MOOT**;

   **IT IS FURTHER ORDERED** that Appellant's Motion for Procedural Order

Authorizing the Filing of Supplemental Brief Concerning Bankruptcy Code Section

509(b)(2) [22] is **DENIED**.


                                        /S/ Joseph H. Rodriguez
                                        JOSEPH H. RODRIGUEZ
                                        United States District Judge